NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ASYST TECHNOLOGIES, INC., <br><br>　　　　　　Plaintiff, <br><br>　　v. <br><br>EMPAK, INC., et al., <br><br>　　　　　　Defendants. | Case Number C 98-20451 JF (EAI) <br><br>ORDER[1] GRANTING IN PART AND DENYING IN PART ASYST'S MOTION FOR SUMMARY JUDGMENT OF INFRINGEMENT OF CLAIM 2 OF THE '421 PATENT; AND DENYING JENOPTIK'S CROSS-MOTION FOR SUMMARY JUDGMENT OF NONINFRINGEMENT |

　　　The parties have filed cross-motions for summary judgment with respect to infringement of United States Patent No. 5,097,421 ("the '421 patent"). Specifically, Plaintiff Asyst Technologies, Inc. ("Asyst") seeks summary judgment of infringement with respect to claim 2 of the '421 patent (the only remaining independent claim), as well as claims 11-14 (dependent from claim 2). Defendants Jenoptik AG, Jenoptik Infab, Inc., Emtrak, Inc. and Meissner + Wurst GmbH (collectively, "Jenoptik") seek summary judgment of noninfringement with respect to claims 2 and 11-14 of the '421 patent. The Court has considered the parties' papers as well as

---

[1] This disposition is not designated for publication and may not be cited.

Case No. C 98-20451 JF (EAI)
ORDER GRANTING IN PART AND DENYING IN PART ASYST'S MOTION FOR SUMMARY JUDGMENT
(JFLC2)

the oral arguments presented at the hearing on September 23, 2005.  For the reasons discussed below, Asyst's motion will be granted in part and denied in part, and Jenoptik's cross-motion will be denied.

## I. BACKGROUND

During production of integrated circuits, various tools are used to process silicon wafers in multiple stages such that one processed layer is added to the wafer at a time.  The layers of the wafer must be processed in an ultra-clean environment, in a particular sequence.  To maintain the requisite environment, wafer lots are placed in sealed transportable containers that sometimes are referred to as "pods."[2]  Human operators move the transportable containers from tool to tool for the processing of each wafer layer.  The transportable containers do not always travel the same path from tool to tool, because the sequence of tools used is dictated by the particular circuit design.  It is critical that a transportable container be placed at the correct tool at the correct point in time; otherwise, the wafers contained therein may be damaged irreparably.

Asyst's '421 patent claims an "information processing system" and an "inventory management system" designed to increase efficiency and reduce the risk of human error in the production of integrated circuits.  A central feature of the '421 patent is the presence of microcomputers mounted on each container and each wafer processing tool.  These microcomputers communicate with each other by means of communication devices mounted on the containers and tools.  Each tool processes the wafers in a particular container only after the microcomputer on the tool verifies that the particular container is at the correct tool at the correct time in the fabrication sequence.

Asyst filed the instant action on October 28, 1996, alleging that Jenoptik was infringing two of Asyst's patents, the '421 patent and United States Patent Nos. 4,974,166 ("the '166 patent").  This Court granted summary judgment of noninfringement as to both patents in June 2000.  Following appeal by Asyst, the Federal Circuit reversed and remanded for further

---

[2] This order uses the terms "pod," "transportable container" and "container" interchangeably.

proceedings. On August 8, 2002, this Court dismissed the claims and counterclaims relating to the '166 patent pursuant to the stipulation of the parties. This Court subsequently held a claim construction hearing[3] with respect to the '421 patent and on February 28, 2003 issued an order construing the claims of the '421 patent. On October 9, 2003, this Court again granted summary judgment of noninfringement. Following a second appeal by Asyst, the Federal Circuit affirmed the grant of summary judgment with respect to independent claim 1 of the '421 patent and its dependent claims, but reversed and remanded with respect to independent claim 2 of the '421 patent and its dependent claims 11-14.

Independent claim 2 of the '421 patent – the only remaining independent claim at issue in this case – reads in its entirety as follows:

> 2. An inventory management system comprising:
>
> (1) At least one transportable container for transporting articles, said at least one container including mounted thereon,
>
> > (a) first two-way communication means,
> >
> > (b) first microcomputer means for receiving and processing digital information communicated with said first two-way communication means, and
> >
> > (c) storage means for storing digital information processed by said microcomputer means;
>
> (2) a plurality of respective sensing means for sensing the presence of said at least one transportable container, each respective sensing means including respective second two-way communication means adapted for two-way communication with said first two-way communication means;
>
> (3) selection means for selecting between respective sensor means of said plurality;
>
> (4) central processor means coupled to said selection means for receiving digital information from and for providing digital information to respective two-way communication means of respective sensor means of said plurality.

This Court initially granted summary judgment of noninfringement of claim 2 after concluding that the specification does not disclose structure corresponding to the "sensing

---

[3] The Court had not previously held a claim construction hearing, but rather had construed certain terms in connection with the parties' cross-motions for summary judgment.

means" recited in the claim. In reversing on this point, the Federal Circuit noted that after the transportable container is engaged to the workstation, the workstation's microcomputer uses communication means 50-1 to query the data card on the transportable container as to whether it is ready to exchange digital information. The data card responds with a digital message that it is set to exchange digital information. The Federal Circuit held that this communication between the workstation and the card on the transportable container, referred to as the "ready, set" protocol, also operates to "sense" whether or not the transportable container is present on the workstation. Specifically, the Federal Circuit held as follows:

> Although we regard the question as close, we think that communication means 50-1, which performs the "ready, set" protocol, is sufficient corresponding structure to give meaning to claim 2 of the '421 patent. The "set" signal that is returned from the transportable container when it is in place on the workstation indicates its presence; accordingly, a protocol in which the "set" signal is sought and – when the container is in place – obtained can serve as a "means for sensing" the presence of the container.

*Asyst Technologies, Inc. v. Empak, Inc.*, 268 F.3d 1364, 1375-76 (Fed. Cir. 2001). This Court previously had rejected Asyst's argument on this point on the ground that the description of the "ready, set" protocol does not include any step that triggers the sending of the "ready" inquiry. The Federal Circuit responded to this Court's reasoning as follows:

> The absence of a recited triggering mechanism for the "sensing means" is peculiar, to be sure. But the recited function is "sensing," not "initiating a sensing protocol," and it is therefore not necessary to set forth structure that initiates the sensing protocol in order to satisfy the requirement of reciting structure corresponding to the claimed function. Once initiated, the "ready, set" protocol is capable of performing the function of sensing the presence of the container. That is all that is required to identify structure in the patent specification corresponding to the function recited in the claim.

*Id.* at 1376.

Following a claim construction hearing on remand, this Court construed the term "sensing means" as a means-plus-function limitation and found the corresponding structure to be communication means 50-1, which is comprised of a transmitter such as a light-emitting diode and a receiver such as a photosensitive transistor or other photo detector. This Court further held that communication means 50-1 must be capable of performing the "ready, set" protocol, must be located on the storage tray of a workstation and must be capable of operation only when the

1  transportable container is mounted in the recessed region of the storage tray on the workstation.

2        This Court further construed the "sensing means" limitation of claim 2 in the context of
3  the parties' cross-motions for summary judgment. In particular, this Court concluded that the
4  Federal Circuit's reference to the two-way communication between the workstation and the data
5  card on the transportable container contemplated participation not only of communication means
6  50-1 on the workstation but also of local control processor 20 (a microcomputer) on the
7  workstation. This Court concluded that the only language in the specification describing the
8  "ready, set" protocol assumes use of the workstation microcomputer and that the workstation's
9  communication means 50-1 cannot perform the protocol independent of the workstation's
10  microcomputer. This Court concluded that Jenoptik's accused "IridNet System" does not have a
11  local microcomputer 20 or its equivalent and therefore that the IridNet System does not infringe
12  claim 2 of the '421 patent.

13        On Asyst's subsequent appeal, the Federal Circuit held that it had *not* intended to suggest
14  that the structure corresponding to the "sensing means" must perform the "ready, set" protocol.
15  The Federal Circuit clarified that:

> Instead, we merely noted that communication means 50-1, which was shown to effectuate that protocol, is structure that corresponds to the "sensing means" and performs the sensing function. Thus, any structure that is the same as, or equivalent to, communication means 50-1 and performs the function of "sensing the presence of at least one transportable container" infringes the "sensing means" limitation of claim 2, regardless of whether it performs that function by way of something like the "ready, set" protocol or otherwise.

20  *Asyst Technologies, Inc. v. Emtrak, Inc.,* 402 F.3d 1188, 1196 (Fed. Cir. 2005). The Federal
21  Circuit further clarified that:

> Moreover, we do not agree with the district court that the structure corresponding to the "sensing means" of claim 2 necessarily includes local processor 20. It is true that communication means 50-1 is not sufficient, standing alone, to direct the process of detecting the presence of a transportable container or to convert the signal sent by communication means 50-1 into a form that is useable by a system operator. Those functions would appear to be performed in the claimed system by software running on local processor 20. Nonetheless, because communication means 50-1 exchanges signals with the transportable container and generates a signal in response to the presence of a pod, it performs the sensing function, even if later processing of the signal is necessary to make the signal meaningful to a system user.

28  *Id.* at 1096-97. The Federal Circuit noted that Asyst had introduced evidence intended to show

that the accused IridNet system has structure equivalent to the "sensing means" of claim 2 and that, because this Court granted summary judgment on other grounds, this Court did not determine whether this evidence created at least a triable issue of material fact as to whether the IridNet system has structure equivalent to communication means 50-1 that performs the function of sensing the presence of a transportable container.

## II. SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate in a patent case, as in other cases, when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Nike, Inc. v. Wolverine World Wide, Inc.*, 43 F.3d 644, 646 (Fed. Cir. 1994) (citations omitted). Accordingly, summary judgment should be granted if either party demonstrates the absence of a genuine issue of material fact on the issue of infringement. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Summary judgment should not be granted, however, if a reasonable jury could find either way on the issue of infringement. *Anderson*, 477 U.S. at 248-49; *Barlow v. Ground*, 943 F.2d 1132, 1134-36 (9th Cir. 1991).

## III. DISCUSSION

The determination of infringement of a patent is a two-step process. *Lockheed Martin Corp. v. Space Systems/Loral, Inc.*, 324 F.3d 1308, 1318 (Fed. Cir. 2003). The Court first construes the claims of the patent to determine their proper scope. *Id*. The Court then compares the properly construed claims to the accused device. *Id*. To prove infringement, the patentee must show that the accused device meets each claim limitation either literally or under the doctrine of equivalents. *Catalina International Marketing, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 812 (Fed. Cir. 2002). Literal infringement requires that the accused device contain each limitation of the patent claim. *Id*. Infringement under the doctrine of equivalents requires that the accused device contain an equivalent for each limitation not literally satisfied. *Id*.

In the instant case, the there is only one remaining independent claim at issue, claim 2 of the '421 patent. The Court has construed claim 2 and has received guidance from the Federal Circuit with respect to appropriate construction of claim 2. The Court now must compare claim 2, as properly construed, with the accused IridNet System.

A question has arisen as to the appropriate scope of this comparison. In order to obtain summary judgment of infringement, Asyst has the burden of demonstrating that the IridNet System meets each and every limitation of claim 2, either literally or under the doctrine of equivalents. *See Catalina International Marketing,* 289 F.3d at 812. Asyst takes the position that all limitations of claim 2 other than the "sensing means" have been adjudicated to be met by the IridNet System or have been conceded by Jenoptik. Asyst thus focuses its motion solely on the "sensing means" limitation. Jenoptik, on the other hand, takes the position that there has been no adjudication that any limitations of claim 2 are met by the IridNet System, and denies that it has conceded any limitations. Jenoptik presents substantive argument that the IridNet System does not meet the "selection means," "central processor means" and "communication means" limitations of claim 2. Jenoptik also argues that the preamble of claim 2, specifying "[a]n inventory management system," is an additional claim limitation that is not met by the IridNet System.

Determination of the appropriate scope of the cross-motions is critical, because Jenoptik does not dispute that the IridNet System meets the "sensing means" limitation, as that limitation has been clarified by the Federal Circuit. Asyst thus is entitled to summary judgment of infringement if Jenoptik is precluded from arguing that other claim limitations are not met by the IridNet System.

After careful review of the record, the Court concludes that Jenoptik has waived its right to litigate claim limitations other than the "sensing means." As is discussed in detail below, Jenoptik repeatedly failed to disclose an intent to litigate the "selection means" and "central processor means" limitations, despite several plain opportunities to do so during the seven-plus years since this action was filed. Moreover, the Court ruled against Jenoptik with respect to the "communication means" and preamble limitations, and Jenoptik failed to seek reconsideration of those rulings.

**A.     "Selection Means" And "Central Processor Means"**

In 1998, Asyst served interrogatories on Jenoptik, seeking *inter alia* "the factual basis of the allegation in ¶ 30 of Jenoptik's Answer and Counterclaims that 'the products of Jenoptik,

7

Infab, or Emtrak function in a substantially different way from and are substantially different from the patents in suit." Asyst's First Set Of Interrogs, No. 6. Jenoptik's initial response was non-substantive; Jenoptik did state additional objections in its supplemental response, but it also stated that "[f]actual bases for the allegation in ¶ 30 of the Answer and Counterclaims are set forth in particular detail in the declarations accompanying defendants' motion for summary judgment." Jenoptik's Suppl. Resp., No. 6.

Under the Federal Rules of Civil Procedure, Jenoptik's reference to declarations did not constitute adequate notice of Jenoptik's position with respect to any particular claim terms. Rather, Jenoptik was required to respond to each interrogatory "separately and fully" without incorporating other documents. *See* Fed. R. Civ. P. 33(b); Hon. William W. Schwarzer, Hon. A. Wallace Tashima, and Hon. James M. Wagstaffe, *Federal Civil Procedure Before Trial*, ¶ 11:1731 (The Rutter Group 2005).

Even with the referenced declarations, however, Asyst still would not have been on notice of Jenoptik's *current* position with respect to the "selection means" and "central processor means." The summary judgment motion to which the declarations related was Jenoptik's 1998 motion for summary judgment of noninfringement. There were two declarations filed with that motion, the declaration of Ken Van Antwerp and the declaration of William J. Sapone. The Van Antwerp declaration made absolutely no mention of the "selection means" or the "central processor means." The Sapone declaration's discussion of claim 2 of the '421 patent focused almost entirely on the "sensing means" and "communication means." Sapone Decl. ¶¶ 117-129. The Sapone declaration did make passing mention of "containers which are multiplexed," which could have been read to implicate the "selection means," and did state that the IridNet System does not process in the same manner as the "central processor means" of claim 2. *Id.* at ¶¶ 130-31. The Sapone declaration also included a chart listing the "selection means" and the "central processor means" and stating in conclusory fashion that these elements were not present in the

IridNet System.[4]

While Asyst's counsel perhaps could have inferred from the Sapone declaration that Jenoptik might litigate a noninfringement position with respect to the "selection means" and the "central processor means," any such position was far from clear, *especially* in light of the fact that Jenoptik's motion for summary judgment itself made *no* reference to the "selection means" or the "central processor means." This lack of clarity on the part of Jenoptik might not have been prejudicial to Asyst had Jenoptik later supplemented its interrogatory responses to make clear that the "selection means" and "central processor means" were in play. But Jenoptik never supplemented its interrogatory responses and never again referred to the "selection means" or "central processor means" during the subsequent *seven years* of litigation. A party that without substantial justification fails to amend a prior discovery response is precluded from using any information not so disclosed unless the failure to disclose is harmless. Fed. R. Civ. P. 37(c)(1).

As noted above, Jenoptik did not present any argument with respect to the "selection means" or "central processor means" in connection with the 1998 cross-motions for summary judgment. Jenoptik likewise did not present any argument with respect to the "selection means" or "central processor means" in connection with the 2003 cross-motions for summary judgment, even though *Asyst* presented argument and evidence that both of these limitations are met by the IridNet System. In light of Jenoptik's failure to rebut Asyst's argument with respect to these claim terms, Asyst reasonably assumed that Jenoptik conceded these limitations.

Neither the "selection means" nor the "central processor means" is addressed in the reports of Jenoptik's experts. Consequently, review of these reports did not give Asyst notice that these terms were in play. In May 2003, Jenoptik's expert, Dr. Anthony Storace, testified that he did not believe that the "multiplexer" limitation (apparently this is shorthand for the "selection means" limitation) or the "central processor limitation" were met by the IridNet System. Storace Depo, 719:12-14, 724:23 - 725:4. Jenoptik asserts that this deposition testimony put Asyst on

---

[4] Jenoptik's Statement of Undisputed Facts and Amended Statement of Undisputed Facts submitted in connection with the 1998 cross-motions for summary judgment contained similar conclusory statements.

notice of its contentions.  However, Dr. Storace acknowledged that while he disagreed with "a number of things" in the report of Asyst's expert, he (Dr. Storace) did not feel it necessary to address all such disagreements in his own report because some disagreements were not relevant to his opinion regarding infringement. *Id.* at 725:14-24.  Dr. Storace stated expressly that the "central processor means" limitation was unimportant to his opinion regarding infringement. *Id.*  He also testified that he had nothing to add to his expert report. *Id.* at 524:21 - 525:2.

Finally, at the Case Management Conference ("CMC") on June 3, 2005, Jenoptik's counsel appeared to acquiesce in the view that the "sensing means" limitation was the only term still at issue in the litigation.  This Court scheduled the CMC to determine what further proceedings were appropriate following the Federal Circuit's remand.  This Court understood that the "sensing means" was the only limitation still at issue in the case.  The Court began the hearing by stating as follows: "[c]ounsel, I think we could probably resolve this by getting one more brief from each side on the one remaining issue unless you have a different idea." 6/3/05 Hrg. Trans. 2:23 - 3:1.  Counsel for Asyst agreed, stating that in light of the Federal Circuit's clarification on "sensing means," Asyst was confident it could obtain summary judgment of infringement. *Id.* at 3:6-14.  Asyst acknowledged that there would be remaining issues regarding willfulness, damages and Jenoptik's defense of invalidity. *Id.* at 3:15-17.

The Court then asked again whether everyone agreed that it made sense to proceed with cross-motions for summary judgment on the infringement issue. *Id.* at 3:18 - 4:15.  Counsel for Jenoptik agreed, and there was a colloquy regarding scheduling and briefing. *Id.* at 4:16 - 7:2.  Counsel for Jenoptik then asked for clarification as to what was in play, and the following exchange occurred:

> MR. SHVODIAN [COUNSEL FOR JENOPTIK]:  You mentioned revisiting some of the other orders on your summary judgment decision.
> THE COURT:  I think the only thing I have to revisit is what the Federal Circuit said I had to revisit.
> MR. SHVODIAN [COUNSEL FOR JENOPTIK]:  Okay.
> THE COURT:  And it is the one claim and really just one piece of that one claim.
> MR. WOO [COUNSEL FOR ASYST]:  The "sensing means"; right?
> THE COURT:  Right.
> MR. SHVODIAN [COUNSEL FOR JENOPTIK]:  And in conjunction with what the Fed Circuit did, Your Honor, I agree with Mr. Woo's

10

Case No. C 98-20451 JF (EAI)
ORDER GRANTING IN PART AND DENYING IN PART ASYST'S MOTION FOR SUMMARY JUDGMENT
(JFLC2)

1 | characterization that they basically said "sensing means" was now less structure
2 | than what Your Honor previously determined. And in doing that, in changing that
3 | claim construction it now brings some other issues into play in regard to validity
because pieces of prior art that did not disclose those additional structures may
now balance –

*Id.* at 7:6 - 8:1. The Court indicated that it would make more sense to proceed first with the infringement motions and then, depending upon how the issue of infringement was resolved, to move on to the issue of invalidity. *Id.* at 8:2-20. Counsel for Jenoptik acknowledged that if Jenoptik were to prevail on noninfringement, it likely would not pursue invalidity. *Id.* at 8:21-24.

During this entire exchange, Jenoptik never gave any indication that it intended to argue noninfringement based upon the "selection means" or "central processor means." As noted above, Jenoptik did inform the Court that Jenoptik had some arguments with respect to *invalidity*, and engaged in a dialog with the Court regarding the appropriate time to raise such arguments. However, Jenoptik remained silent in the face of express statements by the Court and Asyst that the *only* claim term still in play was the "sensing means," and thus left both the Court and Asyst with the firm impression that the parties' cross-motions for summary judgment would address only that term.

While any one of the above events, standing alone, might provide an insufficient basis for precluding Jenoptik from litigating additional infringement issues now, Jenoptik's repeated failures to inform Asyst (and this Court) of its intent to litigate the "selection means" and "central processor means" limitations has resulted in a fundamental lack of notice of such intent. Allowing Jenoptik to litigate these terms at this late date, with no meaningful prior notice of its intent to do so, would unfairly prejudice Asyst. Discovery has long since closed. Asyst has relied upon Jenoptik's apparent position throughout this litigation and should not be required to restructure its entire litigation strategy almost eight years into the litigation. Accordingly, this Court will not consider Jenoptik's arguments with respect to the "selection means" and "central processor means." *See Cambridge Elec. Corp. v. MGA Elec., Inc.*, 227 F.R.D. 313, 324-25 (C.D. Cal. 2004) (holding that plaintiff was barred from arguing evidence or legal theories not previously disclosed in discovery, and granting summary judgment for defendant).

### B. "Communication Means" And Preamble

Jenoptik did previously argue that the IridNet System does not meet the "communication means" limitation. Jenoptik also argued that the preamble of claim 2 should be viewed as a claim limitation, and that the IridNet System does not meet this limitation. However, the Court expressly rejected both these arguments. In its last order granting summary judgment of noninfringement, the Court held that the IridNet System meets the "first two-way communication means" limitation and the "second two-way communication means" limitation. Order of 10/9/03 at 10. In its claim construction order, the Court expressly held that the preamble of claim 2 is not a claim limitation. Order of 2/28/03 at 15. Jenoptik did not seek reconsideration of these rulings at the time they were issued, and has not articulated any legitimate basis for doing so more than two years later. Under the doctrine of "law of the case," a court's decision on a particular issue generally governs those issues throughout the case. *Christianson v. Colt Industries Operating Corp.*, 486 U.S. 800, 815-816 (1988). "This rule of practice promotes the finality and efficiency of the judicial process by protecting against the agitation of settled issues." *Id.* at 816 (internal quotation marks and citation omitted).

Separate and apart from Jenoptik's failure to provide an adequate explanation of its failure to seek reconsideration of this Court's rulings with respect to the "communication means" limitation and the preamble at an appropriate time, similar notice issues exist with respect to these terms as with respect to the "selection means" and "central processor means." While Jenoptik did litigate the "communication means" limitation and the preamble in 2003, it never gave any indication in the intervening two years that it intended to challenge this Court's rulings. Consequently, even if the Court otherwise were inclined to exercise its discretion to excuse the procedural deficiencies in Jenoptik's belated request for reconsideration, it concludes that doing so under these circumstances would unduly prejudice Asyst.

### C. Section 271(a) and (f)

Asyst seeks summary judgment of liability under 35 U.S.C. § 271(a), (f)(1) and (2). Section 271(a) imposes liability on a person other than the patent holder or its licensee for making, using, selling, or offering to sell any patented invention. As discussed above, the Court

12

1  has concluded that Asyst is entitled to summary judgment that the IridNet System meets each and
2  every element of claim 2 of the '421 patent. Asyst introduces evidence that Jenoptik offered to
3  sell and sold an IridNet System to VLSI Technology, Inc. in San Jose, California. Jenoptik does
4  not offer any opposition to Asyst's motion pursuant to § 271(a), apart from Jenoptik's contention
5  that the IridNet System does not infringe claim 2 of the '421 patent. Accordingly, Asyst is
6  entitled to summary judgment with respect to its claim under § 271(a).

7      Section 271(f)(1) imposes liability on a person for supplying unassembled components in
8  or from the United States where such components later are to be assembled overseas in an
9  infringing manner. A defendant need not have shipped *all* of the components to have violated §
10 271(f)(1), but need only have shipped a "substantial portion" of them. *See Moore v. U.S.A. Inc.*
11 *v. The Standard Register Co.*, 144 F.Supp.2d 188, 195 (W.D.N.Y. 2001). Section 271(f)(2)
12 imposes liability on a person who supplies "any component of a patented invention that is
13 especially made or especially adapted for use in the invention and not a staple article or
14 commodity of commerce suitable for substantial noninfringing use," in or from the United States
15 where such component later is to be combined in an infringing manner. The Court previously
16 found that triable issues of material fact exist with respect to Jenoptik's liability under these
17 provisions. Order of 10/9/03 at 14-16. Asyst does not appear to have presented any new or
18 different evidence in the instant round of cross-motions that would warrant a different finding.
19 The Court notes, however, that the parties devoted the vast majority of their briefing in the
20 instant round to the infringement issues addressed above, and did not address § 271(f) at all
21 during oral argument. Accordingly, the Court will deny Asyst's motion as to § 271(f), but will
22 do so without prejudice to Asyst bringing a renewed motion focused expressly on infringement
23 under this statute.

## IV. ORDER

Asyst's motion for summary judgment of infringement of claim 2 of the '421 patent is GRANTED IN PART AND DENIED IN PART as set forth above; and Jenoptik's cross-motion for summary judgment of noninfringement is DENIED.

DATED:  3/31/06

_____
JEREMY FOGEL
United States District Judge

Copies of this Order have been served upon the following persons:

Counsel for Plaintiff:

Darryl M. Woo
Fenwick & West LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041-2008
Fax: (650) 938-5200

Counsel for Defendants:

Daniel T. Shvodian
James F. Valentine
David L. Bilsker
Howrey LLP
301 Ravenswood Avenue
Menlo Park, CA 94025-3434