1  DARRYL M. WOO (CSB No. 100513)
   E-Mail: dwoo@fenwick.com
2  MICHAEL J. SACKSTEDER (CSB No. 191605)
   E-Mail: msacksteder@fenwick.com
3  DAVID D. SCHUMANN (CSB No. 223936)
   E-Mail: dschumann@fenwick.com
4  FENWICK & WEST LLP
   275 Battery Street
5  San Francisco, CA 94111
   Telephone:  (415) 875-2300
6  Facsimile:  (415) 875-1350

7  Attorneys for Plaintiff and Counterdefendant
   ASYST TECHNOLOGIES, INC.

8

9                    UNITED STATES DISTRICT COURT

10                   NORTHERN DISTRICT OF CALIFORNIA

11                        SAN JOSE DIVISION

12

13  ASYST TECHNOLOGIES, INC.,              Case No.  C-98-20451 JF (EAI)

14              Plaintiff,                 **PLAINTIFF ASYST TECHNOLOGIES,**
                                           **INC.'S TRIAL BRIEF**
15        v.
                                           Trial Date:  December 1, 2006
16  EMPAK, INC.; EMTRAK, INC.;             Time:        9:00 a.m.
    JENOPTIK AG; JENOPTIK INFAB,           Dept:        3, Fifth Floor
17  INC.; and MEISSNER + WURST GmbH,       Judge:       Hon. Jeremy Fogel

18              Defendants.

19

20

21

22

23

24

25

26

27

28

PLAINTIFF ASYST'S TRIAL BRIEF                              C-98-20451 JF (EAI)

# TABLE OF CONTENTS

**Page(s)**

I.   DECIDED ISSUES ................................................................. 1

   A.   Infringement .................................................................. 1

   B.   Invalidity/Unenforceability ............................................ 1

   C.   Antitrust and Unfair Competition .................................. 1

II.  ISSUES TO BE DECIDED ...................................................... 2

III. INFRINGEMENT UNDER 35 U.S.C. § 271 (F) .................... 2

   A.   Infringement Under § 271(f)(1) ..................................... 2

   B.   Substantial Portion of the Components of the Patented Invention ...................... 4

   C.   Contributory Infringement Under § 271(f)(2) ................ 5

IV.  INVALIDITY ......................................................................... 7

   A.   Claims 2 And 11-14 Are Not Anticipated ...................... 7

      1.   Neither Hesser Nor Lemelson Expressly Anticipates The '421 Patent ................ 8

      2.   Hesser Does Not Anticipate Claims 2 And 11-14 By Inherency .............. 8

   B.   Claims 2 And 11-14 Are Not Obvious In Light Of Hesser And The Knowledge Of One Of Ordinary Skill In The Art .............. 11

V.   DOUBLE PATENTING ....................................................... 13

VI.  DAMAGES ............................................................................ 15

   A.   Compliance with 35 U.S.C. § 287 ................................ 16

      1.   Actual Notice of Infringement ............................... 16

      2.   Constructive Notice through Marking .................... 20

   B.   Lost Profits ................................................................... 20

   C.   Price Erosion ................................................................ 22

   D.   Convoyed Sales ............................................................ 23

VII. WILLFULNESS ................................................................... 24

   A.   Intentional Copying ...................................................... 25

   B.   Failure to Investigate and Form a Good Faith Belief ...... 25

   C.   Commercial Conduct ..................................................... 26

   D.   Substantial Defense ....................................................... 26

   E.   Closeness of the Case .................................................... 27

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*3M v. Chemque, Inc.,*
  303 F.3d 1294 (Fed. Cir. 2002)..................................................................... 3, 7

*3M v. Johnson & Johnson Orthopaedics, Inc.,*
  976 F.2d 1559 (Fed. Cir. 1992)......................................................................... 26

*ADC Telecomms., Inc. v. Siecor Corp.,*
  954 F. Supp. 820, 832 (D. Del. 1997)........................................................ 16, 20

*Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.,*
  261 F.3d 1329 (Fed. Cir. 2001)........................................................................... 2

*American Med. Sys., Inc. v. Medical Eng'g Corp.,*
  6 F.3d 1523 (Fed. Cir. 1993)............................................................................. 20

*Amsted Indus. Inc., v. Buckeye Steel Castings Co.,*
  24 F.3d 178 (Fed. Cir. 1994)........................................................................ 16, 19

*Asyst Techs., Inc. v. Empak, Inc.,*
  268 F.3d 1364 (Fed. Cir. 2001)......................................................................... 14

*Asyst Techs., Inc. v. Empak, Inc.,*
  402 F.3d 1188 (Fed. Cir. 2005)......................................................................... 14

*Asyst Techs., Inc. v. Empak, Inc.,*
  No. C 98-20451, 2006 U.S. Dist. LEXIS 20129 (N.D. Cal. Mar. 31, 2006) .................. *passim*

*Asyst Techs., Inc. v. Empak, Inc.,*
  No. C 98-20451, 2006 U.S. Dist. LEXIS 26418(N.D. Cal. Oct. 8, 2003)...................... *passim*

*Asyst Techs., Inc. v. Empak, Inc.,*
  No. C 98-20451, 2006 U.S. Dist. LEXIS 47925 (N.D. Cal. July 5, 2006) ............................. 1

*ATD Corp. v. Lydall, Inc.,*
  159 F.3d 534 (Fed. Cir. 1998)........................................................................... 11

*Atmel Corp. v. Silicon Storage Tech., Inc.,*
  No. 02-1522, 02-1523, 2003 U.S. App. LEXIS 18992 (Fed. Cir. Sept. 12,
  2003) ............................................................................................................. 15

*Atofina v. Great Lakes Chem. Corp.,*
  441 F.3d 991 (Fed. Cir. 2006)............................................................................. 7

*B.F. Goodrich Co. v. Aircraft Braking Sys. Corp.,*
  72 F.3d 1577 (Fed. Cir. 1996)........................................................................... 11

*Beauregard/Logic Ctrls. v. Mega Sys. LLC, No. 6:99cv437, 2001 U.S. Dist.*
  LEXIS 25682 (E.D. Tex. Aug. 31, 2001) ............................................................... 3

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF AUTHORITIES**
(continued)

Page(s)

Bio-Rad Labs., Inc. v. Nicolet Instrument Corp.,
  739 F.2d 604 (Fed. Cir. 1984)................................................................ 21

Boehringer Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.,
  320 F.3d 1339 (Fed. Cir. 2003)............................................................. 11

Bose Corp. v. JBL, Inc.,
  274 F.3d 1354, 1361 (Fed. Cir. 2001).................................................. 23

Bristol-Myers Squibb Co. v. Rhone-Poulene Rorer, Inc.,
  No. 95 Civ. 8833, 2001 U.S. Dist. LEXIS 16895 (S.D.N.Y. Oct. 18, 2001)............................ 3

Ceeco Mach. Mfg. Ltd. v. Intercole, Inc.,
  817 F. Supp. 979  (D. Mass. 1992) ................................................. 17, 20

Chubb Integrated Sys., Inc. v. Nat'l Bank of Washington,
  658 F. Supp. 1043 (D. D.C. 1987) ....................................................... 19

Comark Commc'ns, Inc. v. Harris Corp.,
  156 F.3d 1182 (Fed. Cir. 1998) ............................................................ 26

Continental Can Co. v. Monsanto Co.,
  948 F.2d 1264 (Fed. Cir. 1991)......................................................... 8, 10

Critikon, Inc. v. Becton Dickinson Vascular Access,
  120 F.3d 1253 (Fed. Cir. 1997)........................................................ 25, 26

Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.,
  246 F.3d 1336 (Fed. Cir. 2001)................................................... 21, 24, 27

Datascope Corp. v. SMEC, Inc.,
  879 F.2d 820 (Fed. Cir. 1989)............................................................ 28

Dainippon Screen Mfg Co., Ltd v. CMFT, Inc.
  142 F.3d 1266 (Fed. Cir. 1998)........................................................... 18

Dickey-John Corp. v. Int'l Tapetronics Corp.,
  710 F.2d 329 (7th Cir. 1983)......................................................... 25, 28

Douglas Press v. Arrow Int'l, Inc.,
  No. 95 C 3863, U.S. Dist. LEXIS 9229 (N. D. Ill. June 24, 1997)........................... 20

Dunlap v. Schofield,
  152 U.S. 244 (1894) ............................................................... 16, 17, 19

Dystar Textilfarben GmbH v. C.H. Patrick Co.,
  464 F.3d 1356 (Fed. Cir. 2006)........................................................... 12

Ericsson, Inc. v. Harris Corp.,
  352 F.3d 1369 (Fed. Cir. 2003)....................................................... 21, 22

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

*Fuji Photo Film Co. Ltd. v. Jazz Photo Corp.,*
   394 F.3d 1368 (Fed. Cir. 2005)............................................................................. 3, 4

*Gart v. Logitech,*
   254 F.3d 1334 (Fed. Cir. 2001) ............................................................................... 18

*General Foods Corp. v. Studiengesellschaft Kohle GmbH,*
   972 F.2d 1272 (Fed. Cir. 1992)............................................................................... 13

*Georgia-Pacific Corp. v. U.S. Gypsum Co.,* 195
   195 F.3d 1322 (Fed. Cir. 1999).......................................................................... 13, 14

*Glaxo Group Ltd. v. Apotex, Inc.,*
   376 F.3d 1339 (Fed. Cir. 2004) ................................................................................ 7

*Grain Processing Corp. v. American Maize-Products Co.,*
   840 F.2d 902 (Fed. Cir. 1988)................................................................................. 12

*Gyromat Corp v. Champion Spark Plug Co.,*
   735 F.2d 549 (Fed. Cir. 1984).................................................................................. 21

*Hewlett-Packard Co. v. Bausch & Lomb,*
   909 F.2d 1464 (Fed. Cir. 1990)................................................................................. 6

*Hockerson-Halberstadt, Inc. v. JSP Footware, Inc.,*
   No. 03-1383, 03-1412, 2004 U.S. App. LEXIS 12445 (Fed Cir. June 23, 2004)............ 17, 18

*Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.,*
   166 F. Supp. 2d 1008 (D. Del. 2001) ...................................................................... 22

*Howes v. Med. Components, Inc.,*
   16 U.S.P.Q. 2d 1671 (E.D. PA May 1990) ............................................................... 22

*In re Berg,*
   140 F.3d 1428 (Fed. Cir. 1998).......................................................................... 13, 14

*In re Borah,*
   354 F.2d 1009 (C.C.P.A. 1966) .............................................................................. 14

*In re Braat,*
   937 F.2d 589 (Fed. Cir. 1991)................................................................................. 14

*In re Calvert,*
   97 F.2d 638 (C.C.P.A. 1938) .................................................................................. 14

*In re Emert,*
   124 F.3d 1458 (Fed. Cir. 1997)............................................................................... 13

*In Re Graves,*
   69 F.3d 1147 (Fed. Cir. 1995)................................................................................... 9

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*In re Gurley,*
   27 F.3d 551 (Fed. Cir. 1994)........................................................................... 13

*In re Independent Serv. Orgs. Antitrust Litig.,*
   114 F. Supp. 2d 1070 (D. Kan. 2000) ............................................................ 16

*In re Kahn*
   41 F.3d 977 (Fed. Cir. 2006) ........................................................................... 12

In re Longi,
   59 F.2d 887 (Fed. Cir. 1985) ........................................................................... 13

*In re Mahurkar Patent Litig.,*
   831 F. Supp. 1354 (N.D. Ill. 1993) ................................................................. 12

*In re Peterson,*
   315 F.3d 1325 (Fed. Cir. 2003) ....................................................................... 12

*In re Rouffet,*
   149 F.3d 1350 (Fed. Cir. 1998)................................................................... 11, 12

*In re Vogel,*
   422 F.2d 438 (C.C.P.A. 1970) ......................................................................... 13

*Johns Hopkins Univ. v. CellPro, Inc.,*
   152 F.3d 1342 (Fed. Cir. 1998).................................................................. 27, 28

*Juicy Whip, Inc. v. Orange Bang, Inc.,*
   382 F.3d 1367 (Fed. Cir. 2004) ....................................................................... 23

*Kaufman Co. v. Lantech, Inc.,*
   926 F.2d 1136 (Fed. Cir. 1991).................................................................. 21, 23

*Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.,*
   383 F.3d 1337 (Fed. Cir. 2004).............................................................. 24, 26, 27

*L.A. Gear, Inc. v. Thom McAn Shoe Co.,*
   988 F.2d 1117 (Fed. Cir. 1993) ....................................................................... 25

*Lam, Inc. v. Johns-Manville Corp.,*
   718 F.2d 1056 (Fed. Cir. 1983).............................................................. 15, 16, 21

*Lans v. Digital Equip. Corp.,*
   252 F.3d 1320 (Fed. Cir. 2000) ....................................................................... 17

*Lewmar Marine, Inc. v. Barient, Inc.,*
   827 F.2d 744 (Fed. Cir. 1987)............................................................................ 8

*Livesay Window Co. v. Livesay Indus.,*
   251 F.2d 469 (5th Cir. 1958) ........................................................................... 19

Fenwick & West LLP
Attorneys At Law
San Francisco

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Lubrizol Corp. v. Exxon Corp.,*
  696 F. Supp. 302 (N.D. Ohio 1988) ........................................................................ 10

*Manville Sales Corp. v. Paramount Sys., Inc.,*
  917 F.2d 544 (Fed. Cir. 1990) ................................................................................... 3

*Marsh-McBirney, Inc. v. Gordon Henry Jennings, III*
  No. CV 90-6370, 1991 U.S. Dist. LEXIS 20433 (C.D. Cal. Nov. 8, 1991) ............ 4

*Maxwell v. J. Baker, Inc.,*
  86 F.3d 1098 (Fed. Cir. 1996) ................................................................................. 20

*McGinley v. Franklin Sports, Inc.,*
  262 F.3d 1339 (Fed. Cir. 2001) ............................................................................... 12

*Medtronic Xomed, Inc. v. Gyrus ENT LLC,*
  440 F. Supp. 2d 1300 (M.D. Fla. 2006) .................................................................... 7

*MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.,*
  420 F.3d 1369 (Fed. Cir. 2005) ............................................................................. 3, 4

*Mentor H/S, Inc. v. Medical Device Alliance, Inc,*
  244 F.3d 1365 (Fed. Cir. 2001) ................................................................................. 7

*Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings,*
  370 F.3d 1354 (Fed. Cir. 2004) ............................................................................. 3, 4

*Micro Chem. v. Lextron, Inc.,*
  318 F.3d 1119 (Fed. Cir. 2003) ......................................................................... 15, 16

*Moore U.S.A., Inc. v. The Standard Register Co.,*
  144 F. Supp. 2d 188 (W.D.N.Y. 2001) ...................................................................... 5

*nCube Corp. v. SeaChange Int'l, Inc.,*
  436 F.3d 1317 (Fed. Cir. 2006) ......................................................................... 24, 25

*NeoMagic Corp. v. Trident Microsystems, Inc.,*
  287 F.3d 1062 (Fed. Cir. 2002) ............................................................................... 15

*Nike, Inc. v. Wal-Mart Stores, Inc.,*
  138 F.3d 1437 (Fed. Cir. 1998) ............................................................................... 16

*Ortho Pharm. Corp. v. Smith,*
  959 F.2d 936 (Fed. Cir. 1992) ................................................................................. 26

*Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.,*
  348 F. Supp. 2d 713 (N.D. W. Va. 2004) ................................................................. 8

*Panduit Corp v. Stahlin Bros. Fibre Works, Inc.,*
  575 F.2d 1152 (6th Cir. 1978) ........................................................................... 20, 21

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3   *Paper Converting Mach. Co. v. Magna-Graphics Corp.,*
        785 F.2d 1013 (Fed. Cir. 1986)................................................................................ 26

4

5   *Pentec, Inc. v. Graphic Controls Corp.,*
        776 F.2d 309 (Fed. Cir. 1985)................................................................................ 12

6   *Preemption Devices v. 3M,*
        630 F. Supp. 463 (E.D. Pa. 1985) ........................................................................... 7

7

8   *Preemption Devices v. 3M,*
        803 F.2d 1170 (Fed. Cir. 1986)............................................................................... 7

9   *Rite-Hite Corp. v. Kelley Co.,*
        56 F.3d 1538 (Fed. Cir. 1995)................................................................. 15, 20, 23

10

11  *Rockwell Int'l Corp. v. SDL, Inc.,*
        103 F.Supp. 2d 1202 (N.D. Cal. 2000) ......................................................... 8, 9, 10

12  *Rolls-Royce Ltd. v. GTE Valeron Corp.,*
        800 F.2d 1101 (Fed. Cir. 1986)............................................................................. 26

13

14  *Safety Car Heating & Lighting Co. v. General Elec. Co.,*
        155 F.2d 937 (2d Cir. 1946).................................................................................. 11

15  *Sandisk Corp. v. Lexar Media, Inc.,*
        91 F. Supp. 2d 1327 (N.D. Cal. 2000) .................................................................... 6

16

17  *Saf-Gard Prods., Inc. v. Service Parts, Inc.,*
        491 F. Supp. 996 (D. Ariz. 1980)........................................................................... 22

18  *Schofield v. U.S. Steel Corp.,*
        No. 2:04-CV-520-PRC, 2006 U.S. Dist LEXIS 39605
19      (N.D. Ind. March 31, 2006) ................................................................................... 19

20  *Soverain Software LLC v. Amazon.com, Inc.,*
        383 F. Supp. 2d 904 (E.D. Tex. 2005) ................................................................... 19

21

22  *SRI Int'l v. Advanced Tech. Labs., Inc.,*
        127 F.3d 1462 (Fed. Cir. 1997).............................................................................. 17

23  *Sunrise Med. HHG v. AirStep Corp.,*
        95 F. Supp. 2d 348 (W.D. Pa. 2000) ..................................................................... 12

24

25  *Standard Havens Prods., Inc. v. Gencor Indus., Inc.,*
        953 F.2d 1360 (Fed. Cir. 1991).............................................................................. 23

26  *State Indus., Inc. v. Mor-Flo Indus., Inc.,*
        883 F.2d 1573 (Fed. Cir. 1989).............................................................................. 21

27

28  *Structural Rubber Prods. Co. v. Park Rubber Co.,*
        749 F.2d 707 (Fed. Cir. 1984)............................................................................. 8, 9

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## TABLE OF AUTHORITIES
### (continued)

Page(s)

*Stryker Corp. v. Intermedics Orthopedics,*
  96 F.3d 1409 (Fed. Cir. 1996)..................................................23, 25, 27

*Symbol Techs., Inc. v. Opticon, Inc.,*
  935 F.2d 1569, 1580 (Fed. Cir. 1991)...............................................13, 14

*T.D. Williamson, Inc. v. Laymon, Inc.,*
  723 F. Supp. 587 (N.D. Okla. 1989).......................................................5

*Texas Instruments, Inc. v. U.S. Int'l Trade Comm'n,*
  988 F.2d 1165 (Fed. Cir.1993)............................................................11

*The Read Corp. v. Protec, Inc.,*
  970 F.2d 816  (Fed. Cir. 1992).............................................................24

*Transclean Corp. v. Bridgewood Servs.,*
  290 F.3d 1364 (Fed. Cir. 2002)......................................................10, 15

*Trilogy Comm., Inc. v. Times Fiber Comm., Inc.,*
  109 F.3d 739 (Fed. Cir. 1997).............................................................10

*Trintec Indus., Inc. v. Top-U.S.A. Corp.,*
  295 F.3d 1292 (Fed. Cir. 2002).........................................................8, 9

*Unique Concepts, Inc. v. Brown,*
  939 F.2d 1558 (Fed. Cir. 1991)............................................................11

*W.R. Grace v. Intercat, Inc.,*
  60 F.Supp. 2d 316 (D. Del. 1999).........................................................22

*Water Techs. v. Calco Ltd.,*
  850 F.2d 660 (Fed. Cir. 1988)..............................................................4

*Waymark Corp. v. Porta Sys. Corp.,*
  245 F.3d 1364 (Fed. Cir. 2001).............................................................6

*Wokas v. Dresser,*
  978 F. Supp. 839 (N.D. Ill 1997) ...................................................17, 19

*YBM Magnex, Inc. v. U.S. Int'l Trade Comm'n.,*
  145 F.3d 1317 (Fed. Cir. 1998)......................................................17, 19

*Yeti By Molly v. Deckers Outdoor Corp.,*
  259 F.3d 1101 (9th Cir. 2001).............................................................10

## STATUTES

35 U.S.C. § 103 .......................................................................................11

35 U.S.C. § 112 .......................................................................................1

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

35 U.S.C. § 271 ............................................................................................. *passim*

35 U.S.C. § 282 ............................................................................................. 7

35 U.S.C. § 284 ............................................................................................. 15, 24

35 U.S.C. § 287 ............................................................................................. *passim*

## OTHER AUTHORITIES

Chisum on Patents ......................................................................................... 3, 6

Congressional Record, Oct. 1, 1984, H10525-26 ........................................ 6

Fed. Cir. Bar Model Jury Instructions 8.12.1 .............................................. 4

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

I.    **DECIDED ISSUES**

The following issues have already been decided or otherwise disposed of.

A.    **Infringement**

- Infringement under 35 U.S.C. § 271(a). The Court has ruled that defendants' IridNet system contains each and every element of claims 2 and 11-14 of the '421 patent. Additionally, the Court ruled that defendants' sale of an IridNet system to VLSI Technology, Inc. in San Jose, California infringed claims 2 and 11-14 of the '421 patent under 35 U.S.C § 271(a). *Asyst Techs., Inc. v. Empak, Inc.,* No. C 98-20451, 2006 U.S. Dist. LEXIS 20129, *28 (N.D. Cal. Mar. 31, 2006); No. C 98-20451, 2006 U.S. Dist. LEXIS 47925, *6 (N.D. Cal. July 5, 2006).

- Plaintiff's First Cause of Action – Infringement of '166 patent has been dismissed pursuant to a stipulation which included dismissal of some of the counterclaims of the defendants. August 8, 2002 Order (Dkt. 460).

B.    **Invalidity/Unenforceability**

- Neither the sensing means nor the selection means of claim 2 of the '421 patent is anticipated or obvious in light of U.S. Pat. No. 3,842,889. *Asyst Techs., Inc. v. Empak, Inc.,* No. C-98-20451, 2003 U.S. Dist. LEXIS 26418, *43-44 (N.D. Cal. Oct. 8, 2003).

- U.S. Pat. No. 3,842,889 does not anticipate claims 11-13 of the '421 patent. *Asyst Techs., Inc. v. Empak, Inc.,* C-98-20451, 2003 U.S. Dist. LEXIS 26418, *47-48 (N.D. Cal. Oct. 8, 2003).

- Defendants' affirmative defense of inequitable conduct has been dismissed. *Asyst Techs., Inc. v. Empak, Inc.,* No. C-98-20451, 2003 U.S. Dist. LEXIS 26418, *50-52 (N.D. Cal. Oct. 8, 2003).

- The Court ruled that any alleged misconduct related to the '166 patent is irrelevant to the '421 patent. *Asyst Techs., Inc. v. Empak, Inc.,* No. C-98-20451, 2003 U.S. Dist. LEXIS 26418, *55 (N.D. Cal. Oct. 8, 2003).

- The claims of the '421 patent are not invalid under 35 U.S.C. § 112 for any reason, including for lack of enablement, lack of written description, failure to disclose best mode or indefiniteness. *Asyst Techs., Inc. v. Empak, Inc.,* 2003 U.S. Dist. LEXIS 26418, *58-9 (N.D. Cal. Oct. 8, 2003).

C.    **Antitrust and Unfair Competition**

- Defendants' Second (Sherman Act, §1), Third (Sherman Act, § 2), Fourth [1](Clayton, § 7) and Fifth (BNP § 17200, Unfair Competition) counterclaims were dismissed pursuant to a stipulation which included dismissal of plaintiff's infringement claim regarding the '166 patent. January 6, 1999 Order (Dkt. 333); April 20, 1999 Order (Dkt. 391).

---

[1]   These defenses are subject to the currently pending summary judgment motions which may eliminate one or more of these defenses.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## II.   ISSUES TO BE DECIDED

- Whether defendants are liable for infringement under 35 U.S.C. § 271(b), (c) and (f).

- Whether claims 2 and 11-14 are invalid for anticipation, obviousness and/or double patenting.

- The amount of Asyst's damages.

- Whether defendants' infringement was willful.

## III.   INFRINGEMENT UNDER 35 U.S.C. § 271 (F)

In addition to the infringing sale to VLSI, defendants have sold and installed the infringing IridNet system, including TelTags, IRTs, system controllers and Ridian Servers, in numerous fabs located in foreign countries.  The infringing IridNet system is also, within the meaning of 35 U.S.C. § 271(f), a substantial portion of the components of Asyst's patented invention as claimed by claims 2 and 11-14 of the '421 patent.  Defendants sold the infringing IridNet systems from the United States and assembled them in overseas semiconductor fabs.  Defendants' witnesses will testify that the IridNet system sold and installed in the foreign fabs is the same as the system sold and installed at VLSI, which in turn is the same system that the Court has determined is infringing.

35 U.S.C. § 271(f) prohibits an infringer from selling unassembled components of a patented system from the U.S. and assembling the infringing system overseas.  Asyst must establish infringement under § 271(f) by a preponderance of the evidence.  *Advanced Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 261 F.3d 1329, 1336 (Fed. Cir. 2001).  As discussed above, the Court has already held that the IridNet system infringes claims 2 and 11-14 of the '421 patent, and the facts will show that defendants' sales to foreign fabs infringe, too.

### A.   Infringement Under § 271(f)(1)

Whoever without authority supplies or causes to be supplied in or from the United States all or a substantial portion of the components of a patented invention, where such components are uncombined in whole or in part, in such manner as to actively induce the combination of such components outside of the United States in a manner that would infringe the patent if such combination occurred within the United States, shall be liable as an infringer.

35 U.S.C. § 271(f)(1).

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Infringement under § 271(f)(1) is analyzed by courts using the active inducement standard of 35 U.S.C. § 271(b).  *Bristol-Myers Squibb Co. v. Rhone-Poulene Rorer, Inc.*,  No. 95 Civ. 8833, 2001 U.S. Dist. LEXIS 16895 (S.D.N.Y. Oct. 18, 2001) (the term "actively induce" in 271(f)(1) is drawn from existing subsection 271(b)) (*citing* Congressional Record, October 1, 1984, H10525-26); *see also* Chisum §16.02 ("Active inducement" in 271(f)(1) is governed by standards under the preexisting Section 271(b)).  Asyst will prove active inducement by showing that defendants' affirmative actions induced another's acts that it knew or should have known would cause infringement, and an underlying infringement occurred.  *Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 553 (Fed. Cir. 1990); *Fuji Photo Film Co. Ltd. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005).

Because the Court has already determined that the IridNet system infringes claims 2 and 11-14, the underlying direct infringement has already been established.  Thus, to prove active inducement, Asyst is only required to prove that defendants' acts induced infringement with the requisite knowledge and intent.  This will be supplied by defendants' affirmative actions, which include not only selling the IridNet system to the overseas fabs, but also advertising and installing and providing maintenance for the infringing installations.  *See, e.g., 3M v. Chemque, Inc.*, 303 F.3d 1294, 1304-05 (Fed. Cir. 2002) (supplying components and instructions for infringing use); *Metabolite Labs., Inc. v. Lab. Corp. of Am. Holdings*, 370 F.3d 1354, 1365 (Fed. Cir. 2004) (supplying components and publishing articles describing infringing use); *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005) (supplying component and technical support).  Defendants' intent will be inferred from the circumstantial evidence, including their knowledge of the patent and Asyst's infringement contentions, defendants' efforts to design a product that infringed, and their installation and instructions which when followed led to infringement.  *Id.*

In order to satisfy that requirement, Asyst need not show that defendants have made the "legal determination that the actions induced would rise to the level of infringement." *Beauregard/Logic Ctrls. v. Mega Sys. LLC*, No. 6:99cv437, 2001 U.S. Dist. LEXIS 25682, at *195 (E.D. Tex. Aug. 31, 2001); *Marsh-McBirney, Inc. v. Gordon Henry Jennings, III,* No. CV

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    90-6370, 1991 U.S. Dist. LEXIS 20433, at *11 (C.D. Cal. Nov. 8, 1991) (although plaintiff must

2    show that defendant had knowledge of the facts, plaintiff need not show that defendant was

3    subjectively aware that his or her acts constituted infringement).  Moreover, defendant's

4    subjective belief that the resulting product did not infringe is immaterial.  *Fuji Photo Film Co.*,

5    394 F.3d at 1378 (Federal Circuit upheld verdict of induced infringement although defendant

6    testified that he believed his actions did not have any effect on plaintiff's patent rights); *Water*

7    *Techs. v. Calco Ltd.*, 850 F.2d 660, 668 (Fed. Cir. 1988) (upheld verdict of induced infringement

8    despite defendant's claimed subjective belief that product did not infringe and that defendant "had

9    no way of knowing" whether product avoided infringement).  *See also* Fed. Cir. Bar Model Jury

10   Instructions 8.12.1 ("A person can be an inducer even if he or she thought that what he or she was

11   encouraging or instructing the other person to do was not an infringement").

12          Intent to induce infringement is presumed where the defendant had knowledge of the

13   patent and plaintiff can demonstrate that defendant had intent to induce the specific acts.  *MEMC*,

14   420 F.3d at 1378 n.4 (holding intent may be inferred where defendant knowingly supplied wafers

15   and provided substantial technical support).  Furthermore, supplying potentially infringing

16   products along with instructions for infringing use is sufficient to infer intent.  *3M*, 303 F.3d at

17   1304-05; *Metabolite Labs.*, 370 F.3d at 1365 (supplying product and publishing articles

18   advocating infringing use was sufficient to infer intent).

19          Asyst will show that defendants had knowledge of the patents from at least as early as

20   1993, and in addition to providing user manuals and other information regarding infringing use,

21   actually performed installation of the infringing IridNet systems at the foreign fabs.  Thus,

22   defendants infringe under 35 U.S.C. § 271(f)(1).

23   **B.      Substantial Portion of the Components of the Patented Invention**

24          Defendants' supply of the infringing IridNet system was at least the supply of a

25   substantial portion of components of a system that infringes claims 2 and 11 through 14 of the

26   '421 patent.  While defendants admit to manufacturing and supplying TelTags, IRTs, system

27   controllers and Ridian Servers – the infringing system – from Colorado Springs, defendants claim

28

Fenwick & West LLP
Attorneys at Law
San Francisco

1   they did not supply transportable containers and as a result, they have not supplied "a substantial

2   portion of the components of a patented invention."

3           Defendants' contention is insufficient as a matter of law.  Under 35 U.S.C. § 271(f)(1),

4   defendants are liable even if they did not supply transportable containers because the test is a

5   "substantial portion," not "substantially all."  *Moore U.S.A., Inc. v. The Standard Register Co.,*

6   144 F. Supp. 2d 188, 195 (W.D.N.Y. 2001); *T.D. Williamson, Inc. v. Laymon, Inc.*, 723 F. Supp.

7   587, 592-93 (N.D. Okla. 1989) (finding § 271(f)(1) applied because all but one of the parts of a

8   patented product were produced in the United States and shipped to Venezuela for assembly).  In

9   *Moore*, defendants argued that they were not liable under § 271(f)(1) because they only supplied

10  two out of three physical components required to infringe the patented invention.  *Moore U.S.A.,*

11  144 F. Supp. at 195.  The Court found those two components "a substantial portion" noting that §

12  271 (f)(1) only requires "a substantial portion," not "substantially all," of a patented invention.

13  Additionally, § 271(f)(1) does not permit an infringer to evade liability even if the components

14  are staple articles or commodities of commerce which are also suitable for substantial

15  noninfringing use.  *T.D. Williamson,* 723 F. Supp. at 592-93.

16          Here, defendants have admitted to supplying four out of five components of the patented

17  invention and the Court has already held that the IridNet system as supplied by defendants

18  infringe.  Thus, even if defendants did not supply transportable containers – did not literally

19  supply "all" of the components of claim 2 – there is no requirement that they do so; defendants

20  are liable under 35 U.S.C. § 271(f)(1) for their overseas fab sales because their supply of the

21  infringing IridNet system included at least four out of the five components, transforming a

22  standard fab into an infringing one, and thus constituted a substantial portion of the patented

23  invention of claims 2 and 11-14.

24  **C.      Contributory Infringement Under § 271(f)(2)**

25  Whoever without authority supplies or causes to be supplied in or from the United
    States any component of a patented invention that is especially made or especially
26  adapted for use in the invention and not a staple article of commerce suitable for
    substantial noninfringing use, where such component is uncombined in whole or in
27  part, knowing that such component is so made or adapted and intending that such
    component will be combined outside of the United States in a manner that would

28

Fenwick & West LLP
Attorneys At Law
San Francisco

infringe the patent if such combination occurred within the United States, shall be liable as infringer.

35 U.S.C. § 271 (f)(2).

Under this section, Asyst must prove that (1) defendants had knowledge of the patent, (2) defendants knew the component was especially made or adapted for use in a particular system, (3) defendants intended that the component be combined abroad into the particular system, and (4) the combination of components supplied have no substantial non-infringing uses. *See Asyst Techs., Inc. v. Empak, Inc.*, No. C-98-20451, 2003 U.S. Dist. LEXIS 26418, at *32 (N.D. Cal. Oct. 8, 2003); Congressional Record, Oct. 1, 1984, H10525-26; Chisum on Patents, § 16.02. Under 271(f)(2), Asyst is not required to prove actual combination or assembly of shipped components, but rather only that defendants shipped them with intent that they be combined. *Waymark Corp. v Porta Sys. Corp.*, 245 F.3d 1364 (Fed. Cir. 2001).

The requirement for a component to be "especially adapted" for use in the invention and knowledge thereof are analyzed using the same standard as for contributory infringement under § 271(c).  The Federal Circuit has held that § 271(c) does not require proof of a defendant's intent, but only defendant's knowledge that the component was especially made or adapted for a particular use <u>and</u> of the patent which proscribed the use. *Hewlett-Packard Co. v. Bausch & Lomb*, 909 F.2d 1464, 1469, n4 (Fed. Cir. 1990).  Note that while knowledge of the patent is required, knowledge of infringement is not. *Sandisk Corp. v. Lexar Media, Inc.,* 91 F. Supp. 2d 1327, 1335 (N.D. Cal. 2000) (rejecting the argument that plaintiff must show that defendant subjectively believed that the use of its PC cards in digital cameras infringed).  Defendants designed and developed the components as part of the infringing IridNet system, and thus knew that the components were especially adapted for use in the IridNet system.  Also, as discussed above, defendants were aware of the patent from at least 1993.

In addition to the knowledge requirement analyzed under § 271(c), § 271(f)(2) adds an intent requirement.  The Federal Circuit has held, however, that the intent requirement under § 271(f)(2) requires only that the infringer "intend[] that component will be combined," without requiring any actual combination or assembly. *Waymark Corp.,* 245 F.3d at 1367-68.  Here,

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    defendants not only sold but installed the infringing IridNet system, and thus intended that the

2    components be combined, resulting in a system that contains every element of claims 2 and 11-

3    14.

4           While the components were clearly designed for use in the infringing IridNet system,

5    defendants will likely argue that the components have substantial non-infringing uses because a

6    small quantity of "operator tags" appeared on invoices along with data tags to be mounted on

7    transportable containers.  However, an invoice is insufficient to show "substantial non-infringing

8    use" because substantial non-infringing use must be more than potential or occasional use. *See*

9    *Mentor H/S, Inc. v. Medical Device Alliance, Inc*, 244 F.3d 1365, 1379 (Fed. Cir. 2001)

10   (assertions of potential uses could be rejected by a jury where the record did not indicate any

11   actual noninfringing uses of the device); *Preemption Devices v. 3M*, 630 F. Supp. 463 (E.D. Pa.

12   1985) *aff'd in part*, *vacated in part*, and *remanded*, 803 F.2d 1170 (Fed. Cir. 1986) (finding that

13   occasional and aberrant use of products where they are clearly designed to be used in an

14   infringing system is not a staple of commerce).  For example, sales figures alone are not enough

15   to establish that a use is substantial.  *See Medtronic Xomed, Inc. v. Gyrus ENT LLC*, 440 F. Supp.

16   2d 1300, 1313 (M.D. Fla. 2006) (as a matter of law, sales figures comparing sales for infringing

17   use and non-infringing use did not establish a substantial non-infringing use).

18   **IV.   INVALIDITY**

19          A patent is presumed valid.  35 U.S.C. § 282.  Defendants bear the burden of proving by

20   clear and convincing evidence that a claim is invalid. *Asyst Techs., Inc. v. Empak, Inc.*, No. C-98-

21   20451, 2003 U.S. Dist. LEXIS 26418 (N.D. Cal. Oct. 8, 2003).  "This burden is 'especially

22   difficult' when, as in the present case, the infringer attempts to rely on prior art that was before

23   the patent examiner during prosecution." *Glaxo Group Ltd. v. Apotex, Inc.*, 376 F.3d 1339, 1348

24   (Fed. Cir. 2004).

25          **A.     Claims 2 And 11-14 Are Not Anticipated**

26          Anticipation is a question of fact.  *3M v. Chemque, Inc.*, 303 F.3d 1294, 1301 (Fed. Cir.

27   2002).  There are only two ways to anticipate a patent claim, either expressly or inherently.

28   *Atofina v. Great Lakes Chem. Corp.*, 441 F.3d 991, 999 (Fed. Cir. 2006) ("Anticipation requires a

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  showing that each limitation of a claim is found in a single reference, either expressly or

2  inherently.").

### 1.    Neither Hesser Nor Lemelson Expressly Anticipates The '421 Patent

4      To prove a reference expressly anticipates a patent claim, defendants must show by clear

5  and convincing evidence that the reference expressly contains each and every element of the

6  claim – sometimes called the identity doctrine. *Lewmar Marine, Inc. v. Barient, Inc.*, 827 F.2d

7  744, 747 (Fed. Cir. 1987); *Rockwell Int'l Corp. v. SDL, Inc.*, 103 F. Supp. 2d 1202, 1205 (N.D.

8  Cal. 2000). Defendants must concede that Hesser does not expressly anticipate claims 2 and 11-

9  14 of the '421 patent, because both Asyst's and defendants' experts agree that Hesser is missing

10  one or more elements of claim 2. Additionally, Lemelson has already been held to lack several

11  elements required by claims 2 and 11-14. *See Asyst Techs., Inc. v. Empak, Inc.*, No. 98-20451,

12  2003 U.S. Dist. LEXIS 26418, *42-49 (N.D. Cal. Oct. 8, 2003). Therefore, defendants cannot

13  show that either Hesser or Lemelson expressly anticipates claims 2 and 11-14 of the '421 patent.

### 2.    Hesser Does Not Anticipate Claims 2 And 11-14 By Inherency

15      If a prior art reference does not expressly set forth a particular claim element, the

16  reference may still anticipate if the element in inherently disclosed. *Rockwell*, 103 F. Supp. 2d at

17  1205. Defendants bear the burden of proving by clear and convincing evidence that the missing

18  element in inherently disclosed. *Ortho-McNeil Pharm., Inc. v. Mylan Labs., Inc.*, 348 F. Supp. 2d

19  713, 764 (N.D. W. Va. 2004). "Inherent anticipation requires that the missing descriptive

20  material is 'necessarily present,' not merely probably or possibly present, in the prior art."

21  *Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed. Cir. 2002);. *Continental Can

22  Co. v. Monsanto Co.*, 948 F.2d 1264, 1268 (Fed. Cir. 1991) ("Such evidence must make clear that

23  the missing descriptive matter is necessarily present in the thing described in the reference, and

24  that it would be so recognized by persons of ordinary skill").

25      In inherency analysis, extrinsic evidence cannot be used to fill gaps in the reference, but

26  rather, may only be used to educate the decision-maker as to what the reference means to persons

27  of ordinary skill in the art. *Structural Rubber Prods. Co. v. Park Rubber Co.*, 749 F.2d 707, 716

28  (Fed. Cir. 1984). Anticipation by inherency does not permit missing elements in a reference to be

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   supplied from the knowledge of one of ordinary skill in the art – rather, that is an obviousness

2   analysis. *Id; see also Rockwell,* 103 F. Supp. 2d at 1206.

3        Claim 2 requires a selection means which has been construed by the court to perform the

4   function of selecting between respective sensing means with the corresponding structure of a

5   multiplexer.  Defendants cannot show that Hesser anticipates claims 2 and 11-14 by inherency

6   because Hesser teaches an alternate and non-interchangeable technology, a bus.  Anticipation by

7   inherency does not provide for substitution of one feature already present in the reference (here, a

8   bus) for another (a multiplexer). *Trintec Indus.,* 295 F.3d at 1295-96.  Rather, inherency assumes

9   the presence, given certain conditions, of an element that is ***missing*** from the express text of the

10  reference.  In *Trintec,* for instance, the defendant attempted to show that prior art disclosing a

11  color printer anticipated a claim requiring a color photocopier because, defendant argued, a

12  photocopier is inherently disclosed by reference to the printer.  *Id.*  The Federal Circuit rejected

13  this inherency argument because the question of whether a photocopier could be substituted for

14  the disclosed printer was a one of obviousness, not inherency.  *Id.*  Even assuming that a person

15  of ordinary skill could substitute a multiplexer in place of Hesser's bus, that is an obviousness

16  argument, not anticipation by inherency.  *Id.*

17       Defendants may argue that *In re Graves* supports their erroneous position that missing

18  elements can be supplied by the knowledge of one of ordinary skill in the art, even when they are

19  not either expressly or inherently disclosed.  *See In re Graves,* 69 F.3d 1147 (Fed. Cir. 1995).

20  However, *In re Graves* does not so hold.  Rather, the *In re Graves* court affirmed the Board of

21  Patent Appeals' decision that a reference expressly contained each and every element of a claim.

22  69 F.3d at 1152.  Defendants' position furthermore conflicts with controlling Federal Circuit

23  precedent,[2] such as *Structural Rubber* and *Continental Can* (holding that to be inherent an

24  element must be **necessarily** present), and this Court has since rejected an attempt to rely on *In re*

25  *Graves* for defendants' proposition.  *See Rockwell Int'l Corp. v. SDL, Inc.,* 103 F. Supp. 2d 1202,

---

26  [2]   According to Federal Circuit rules, precedent may only be overruled by an *en banc* decision –
         which *In re Graves* is not.  Where two Federal Circuit cases appear in conflict, the earlier
27       decision is considered precedential.  *YBM Magnex, Inc. v. U.S. Int'l Trade Comm'n.,* 145 F.3d
         1317, 1319 n.2 (Fed. Cir. 1998).  Thus, even if contradictory, *Structural Rubber* and
28       *Continental Can* take precedence over the outlying *In re Graves.*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1207 (N.D. Cal. 2000) ("Thus, as clearly stated in *Structural Rubber*, the common knowledge of

a skilled artisan cannot be used to add an inherent element into a patent claim for the purpose of a

section 102 anticipation analysis. Rather, the Federal Circuit case law dictates that an absent

element is inherently disclosed only if a skilled artisan would recognize that the element is

necessarily practiced by the reference."). Thus, the proper standard for inherency is found in the

established and controlling precedent of *Continental Can* and *Structural Rubber*, which require

for inherency that an element be "necessarily present" in the asserted prior art reference, and

cannot be added through the knowledge of one of ordinary skill in the art.[3]

Defendants also cannot argue that Hesser discloses the sensing means because defendants

have failed to identify the function of the sensing means corresponding to the same or equivalent

sensing means in Hesser.[4] "To anticipate a claim reciting a means-plus-function limitation, the

anticipatory reference must disclose the recited function identically." *Transclean Corp. v.

Bridgewood Servs.*, 290 F.3d 1364, 1372 (Fed. Cir. 2002). Nor can defendants cherry-pick the

sensing function from one embodiment, and the structure from another embodiment. "It is not

permissible to pick and choose only so much of any given reference as will support a given

position and ignore the reference in its totality." *Lubrizol Corp. v. Exxon Corp.*, 696 F. Supp.

302, 322 (N.D. Ohio 1988). Additionally, defendants cannot argue that the construction of the

sensing means element collapses that element into the communication means element because

such an interpretation violates a fundamental principle of claim construction, that each element

---

[3] By contrast, an example of inherency is where a reference expressly discloses A, where A
necessarily consists of elements 1 and 2, but such elements are not expressly stated, e.g. a
reference discloses an ordinary incandescent light bulb, but says nothing about the bulb's
filament. If incandescent bulbs always contain a filament, the filament is inherently present.
That is not the case here, where defendants are trying to substitute a different technology in place
of the disclosed one. If the reference disclosed an incandescent bulb, defendants are trying to
substitute a light emitting diode because it also provides light, but in no way contains an
incandescent filament.

[4] *See Alpert Report* at 6-7, Exh. D at 3; Alpert Depo at 94:8-99:13. Because defendants have not
identified this element in their Rule 26 expert report or at their expert's deposition, they are
precluded from attempting to fulfill it at trial. *Yeti By Molly v. Deckers Outdoor Corp.*, 259 F.3d
1101, 1105-07 (9th Cir. 2001) (affirming exclusion of untimely expert report); *Trilogy Comm.
Inc. v. Times Fiber Comm., Inc.*, 109 F.3d 739, 744-45 (Fed. Cir. 1997) (affirming exclusion of
untimely expert report which contained new opinions and information that did not merely
supplement the original report).

Fenwick & West LLP
Attorneys At Law
San Francisco

1   has meaning and no element may simply be read-out of the claim as mere surplusage. *Unique*

2   *Concepts, Inc. v. Brown*, 939 F.2d 1558, 1562, (Fed. Cir. 1991); *Texas Instruments, Inc. v. U.S.*

3   *Int'l Trade Comm'n*, 988 F.2d 1165, 1171, (Fed. Cir. 1993).  Thus, defendants cannot simply

4   eliminate the sensing means element by stating that it is the same thing as the second two-way

5   communication means; rather, they must – but cannot – identify the identical function in Hesser.

6   **B.    Claims 2 And 11-14 Are Not Obvious In Light Of Hesser And The Knowledge**

7   **Of One Of Ordinary Skill In The Art**

8        A claim is obvious when the differences between the claim and the prior art are "such that

9   the subject matter as a whole would have been obvious at the time of the invention was made to a

10  person having ordinary skill in the art in which the invention was made." 35 U.S.C. §103(a).

11  Obviousness is a question of law based on underlying factual determinations. *Boehringer*

12  *Ingelheim Vetmedica, Inc. v. Schering-Plough Corp.*, 320 F.3d 1339, 1353 (Fed. Cir. 2003).

13  These include determining (1) the scope and content of the prior art; (2) the differences between

14  the claims and the prior art; (3) the level of ordinary skill in the pertinent art; and (4) secondary

15  considerations, if any, of nonobviousness. *Asyst Techs., Inc. v. Empak, Inc.*, No. 98-20451, 2003

16  U.S. Dist. LEXIS 26418, *42 (N.D. Cal. Oct. 8, 2003) quoting *B.F. Goodrich Co. v. Aircraft*

17  *Braking Sys. Corp.*, 72 F.3d 1577, 1582 (Fed. Cir. 1996).  Secondary considerations include

18  evidence of factors tending to show nonobviousness, such as commercial success of the

19  invention, satisfying a long-felt need, failure of others to find a solution to the problem at hand,

20  and copying of the invention by others. *B.F. Goodrich*, 72 F.3d at 1577.

21       When invalidity depends on a combination of prior art references, there must be some

22  teaching, suggestion, or motivation to combine the references.  *In re Rouffet*, 149 F.3d 1350, 1355

23  (Fed. Cir. 1998). "Substantially all inventions are for the combination of old elements; what

24  counts is the selection, out of all their possible permutations, of that new combination which will

25  be serviceable." *Safety Car Heating & Lighting Co. v. General Elec. Co.*, 155 F.2d 937, 939 (2d

26  Cir. 1946).  "Determination of obviousness can not be based on the hindsight combination of

27  components selectively culled from the prior art to fit the parameters of the patented invention."

28  *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 546 (Fed. Cir. 1998); *Grain Processing Corp. v.*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

*American Maize-Products Co.*, 840 F.2d 902, 907 (Fed. Cir. 1988). "[D]ecomposing an invention into its constituent elements, finding each element in the prior art, and then claiming that it is easy to reassemble these elements into the invention, is a forbidden *ex post* analysis." *In re Mahurkar Patent Litig.*, 831 F. Supp. 1354, 1374-1375 (N.D. Ill. 1993); *Pentec, Inc. v. Graphic Controls Corp.*, 776 F.2d 309, 313 (Fed. Cir. 1985) ("[P]rior art may not be gathered with the claimed invention in mind").

Evidence of a motivation to combine can be found in the prior art references themselves, the knowledge of one of ordinary skill in the art, or, in some cases, from the nature of the problem to be solved. *Dystar Textilfarben GmbH v. C.H. Patrick Co.*, 464 F.3d 1356, at *26 (Fed. Cir. 2006). However, bare assertions that the motivation to combine is within the knowledge of one of skill in the art is not sufficient. *In re Rouffet*, 149 F.3d at 1356-57; *In re Kahn,* 441 F.3d 977, 987 (Fed. Cir. 2006). Additionally, the mere fact that a reference is within the same field does not, without more, supply a teaching or motivation to combine. *Sunrise Med. HHG v. AirStep Corp.*, 95 F. Supp. 2d 348, 452 (W.D. Pa. 2000); *In re Kahn,* 441 F.3d at 987 (analogous art, i.e., art from the same general field, is not along sufficient to find a motivation to combine; rather, it is only the starting point to the teaching, suggestion, motivation inquiry). Thus, the fact finder must determine what the prior art teaches, whether it motivates a combination of teachings from different references, and whether it teaches away from the claimed invention. *Dystar*, 2006 U.S. App. LEXIS 24642, at *10.

Hesser's incompatible use of a bus furthermore teaches away from the use of a multiplexer in claim 2. "[A]n applicant may rebut a *prima facie* case of obviousness by showing that the prior art teaches away from the claimed invention in any material respect." *In re Peterson*, 315 F.3d 1325, 1331 (Fed. Cir. 2003); *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1354 (Fed. Cir. 2001) ("We have noted …, as a 'useful general rule,' that references that teach away cannot serve to create a prima facie case of obviousness.").

> A reference may be said to teach away when a person of ordinary skill, upon reading the reference, would be discouraged from following the path set out in the reference, or would be led in a direction divergent from the path that was taken by the applicant … a reference will teach away if it suggests that the line of

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

development flowing from the reference's disclosure is unlikely to be productive of the result sought by the applicant.

*In re Gurley*, 27 F.3d at 553.  Hesser teaches the use of a bus, not a multiplexer, which distinct devices are not interchangeable and thus teach away from using a selection means.

## V.   **DOUBLE PATENTING**[5]

Obviousness-type double patenting is a question of law.  *In re Berg*, 140 F.3d 1428, 1432 (Fed. Cir. 1998);  *Georgia-Pacific Corp. v. U.S. Gypsum Co.*, 195 F.3d 1322, 1326 (Fed. Cir. 1999) ("double patenting is a matter of what is claimed, and therefore is treated like claim construction").  Double patenting is an affirmative defense, which must be proven by clear and convincing evidence – "a heavy and unshifting burden." *Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1580 (Fed. Cir. 1991).  Double patenting "precludes one person from obtaining more than one valid patent for either (a) the 'same invention,' or (b) an 'obvious' modification of the same invention." *In re Longi*, 759 F.2d 887, 892 (Fed. Cir. 1985).  Unless the exact same invention is being claimed twice, the court must determine whether the claim at issue defines merely an obvious variation of an invention claimed in a previously issued patent. *In re Vogel*, 422 F.2d 438, 441 (C.C.P.A. 1970).  In answering this question, the patent disclosure of the first issued patent may not be used as prior art. *Id.*  "Double patenting is altogether a matter of what is claimed." *General Foods Corp. v. Studiengesellschaft Kohle GmbH*, 972 F.2d 1272, 1277 (Fed. Cir. 1992).  "Claims must be read as a whole in analyzing a claim of double patenting. *Id.* at 1278.

There are two tests for obviousness-type double patenting, the one-way test and the two-way test. *See In re Berg*, 140 F.3d at 1432.  The two-way test is used where, as here, the patent office examined the applications out of order with respect to their filing dates, resulting in the later filed patent issuing before the earlier filed patent. *Id.*  The ultimate determination of whether a one-way or two-way analysis is appropriate is a question of law, based on underlying factual findings. *In re Emert*, 124 F.3d 1458, 1460 (Fed. Cir. 1997).

---

[5]   This defense is unpled, and is subject to a pending summary judgment motion which eliminate the defense entirely.

Fenwick & West LLP
Attorneys at Law
San Francisco

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    The two-way obviousness test is required where, as here, applicants first filed for a basic

2    patent then later filed for the system-wide variant, "but, through no fault of the applicants, the

3    PTO decided the applications in reverse order of filing, rejecting the basic application although it

4    would have been allowed if the applications had been decided in the order of their filing." *In re*

5    *Berg*, 140 F.3d at 1432; *see In re Borah*, 354 F.2d 1009 (C.C.P.A. 1966) (allowing earlier filed

6    but later allowed basic patent application to issue without terminal disclaimer where the

7    improvements were not made until after the application for the basic invention had been filed); *In*

8    *re Calvert*, 97 F.2d 638 (C.C.P.A. 1938); *In re Braat*, 937 F.2d 589, 592 (Fed. Cir. 1991).  Under

9    the applicable two-way test, defendants must not only show that the later issued claims are

10   obvious in light of the earlier issued claims, but also that the earlier issued claims are invalid in

11   light of the later issued claim.  *Id.*  Here, defendants' expert has only performed one part of the

12   applicable two-way double patenting test.  As such, they cannot show by clear and convincing

13   evidence that claim 2 is invalid for double patenting because literally half the required analysis is

14   missing.  *Symbol Techs.*, 935 F.2d at 1580; *In re Berg*, 140 F.3d at 1432.

15   An obviousness-type double patenting analysis requires two steps.  The first step is to

16   construe the claims of both the earlier and later patent and determine the differences between the

17   claims.  *Georgia-Pacific Corp. v. U.S. Gypsum Co.*, 195 F.3d 1322, 1326 (Fed. Cir. 1999).  The

18   second step involves the court determining whether the differences between the claims render the

19   claims patentably distinct.  *Id.*  If the claim is patentably distinct, then it is not invalid.  *In re Berg*,

20   140 F.3d at 1431.

21   The Court has yet to construe claims 8 and 11 of the '166 patent.  To construe a means-

22   plus-function claim element, the first step is to identify the function of the claim element to be

23   construed.  *Asyst Techs., Inc. v. Empak, Inc.*, 268 F.3d 1364, 1369 (Fed. Cir. 2001).  As the

24   Federal Circuit has twice found in this case, means plus function claim elements are not to be

25   construed by adding in additional functions, but by finding only those corresponding structures

26   that actually perform the functions recited by the claims.  *Asyst Techs., Inc. v. Empak, Inc.*, 402

27   F.3d 1188, 1195-98 (Fed. Cir. 2005); *Asyst Techs., Inc. v. Empak*, 268 F.3d at 1370.  In order for

28   a means-plus-function element to be literally found in a reference, the reference must contain the

1    *exact* function.  *See Transclean Corp.*, 290 F.3d at 1372.  However, defendants' expert has not

2    performed an independent identification of the functions of the claims 8 and 11 of the '166 patent,

3    but rather referenced functions from claim 2 of the '421 patent that are not recited in the '166

4    claims at all.  *See Alpert Report* at 15-16, Exh. E.  This is akin to construing the asserted claims of

5    a patent using the accused product as a guide, which is, of course, improper.  *NeoMagic Corp. v.*

6    *Trident Microsystems, Inc.*, 287 F.3d 1062, 1074 (Fed. Cir. 2002) ("It is well settled that claims

7    may not be construed by reference to the accused device.").

8            Defendants furthermore cannot prove double patenting under the one way test.  Asyst's

9    points and authorities in this regard are set forth in Asyst Technologies Inc.'s Opposition to

10   Defendants Motion for Summary Judgment of Invalidity, which is incorporated by reference.

## VI.    DAMAGES

12           "[T]he Court shall award the claimant damages adequate to compensate for the

13   infringement, but in no event less than a reasonable royalty for the use made of the inventions by

14   the infringer, together with interest and costs as fixed by the court."  35 U.S.C. § 284.  Whether

15   Asyst is entitled to damages beyond a reasonable royalty is a question of law; the amount of

16   damages is a question of fact.  *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1544 (Fed. Cir. 1995).

17           Asyst will show that it is clearly entitled to damages beyond a reasonable royalty because

18   it made and sold the patented invention, which competed directly with the infringing IridNet

19   system. *Id* at 1545.  Thus, Asyst may recover damages for lost profits due to diverted sales, price

20   erosion, and increased expenditures caused by infringement.  *Atmel Corp. v. Silicon Storage*

21   *Tech., Inc.*, No. 02-1522, 02-1523, 2003 U.S. App. LEXIS 18992 (Fed. Cir. Sept. 12, 2003).

22           Asyst must show by a reasonable probability that, but for the infringement, it would have

23   made the sales that were made by the infringer or that it would have been able to charge and

24   receive a higher price.  *Id*; *Lam, Inc. v. Johns-Manville Corp.*, 718 F.2d 1056, 1065 (Fed. Cir.

25   1983) ("the patent owner's burden of proof is not an absolute one, but rather a burden of

26   reasonable probability").  "A patentee may resort to any method showing, with reasonable

27   probability, entitlement to lost profits 'but for' the infringement."  *Micro Chem. v. Lextron, Inc.*,

28   318 F.3d 1119, 1122 (Fed. Cir. 2003).  In a two-player market, as is the case here, causation may

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   be inferred. *Lam, Inc.,* 718 F.2d at 1065. "Once the patentee establishes the reasonableness of

2   this inference, the burden shifts to the infringer to show that the inference is unreasonable for

3   some or all of the lost profits." *Micro Chem.*, 318 F.3d at 1122. Any doubts regarding the

4   amount of damages must be resolved in favor of Asyst. *Lam, Inc.,* 718 F.2d at 1065.

5       A.      **Compliance with 35 U.S.C. § 287**

6           Defendants may argue that they are not liable for damages prior to the filing of the lawsuit

7   because Asyst failed to properly mark its products or otherwise notify defendants of their

8   infringement. Pursuant to 35 U.S.C. § 287, Asyst must show by a preponderance of the evidence

9   that it notified defendants of their infringement in either of two ways: (1) by giving constructive

10  notice through marking substantially all of its patented products; or (2) by providing actual notice,

11  in which case its damages will be limited to after the notice was given. *ADC Telecomms., Inc. v.*

12  *Siecor Corp.*, 954 F. Supp. 820, 832 (D. Del. 1997); *Nike, Inc. v. Wal-Mart Stores, Inc.,* 138 F.3d

13  1437, 1446 (Fed. Cir. 1998). Compliance with the requirements of § 287 is a question of fact. *Id.*

14  (marking); *In re Independent Serv. Orgs. Antitrust Litig.,* 114 F. Supp. 2d 1070, 1106 (D. Kan.

15  2000) (notice).

16       1.      **Actual Notice of Infringement**

17          Asyst's multiple letters to defendants regarding defendants' infringement are more than

18  sufficient to constitute actual notice of infringement. The plain language of the statute requires

19  only that "the infringer was notified of the infringement." 35 U.S.C. 287(a). The Supreme Court

20  has held that establishing notice of infringement requires only that a plaintiff inform the

21  defendant that he has a patent and that the defendant is infringing it. *Dunlap v. Schofield*, 152

22  U.S. 244, 248, (1894). *Dunlap* is "highly persuasive, if not controlling, on the meaning of the

23  notice requirement of section 287." *Amsted Indus., Inc. v. Buckeye Steel Castings Co.*, 24 F.3d

24  178, 187 (Fed. Cir. 1994). To satisfy Section 287(a), *Amsted* clarified that the actual notice under

25  the statute must be of "the infringement," not merely of the patent's existence or ownership. *Id.*

26  at 187.

27          The Supreme Court's general description of actual notice suggests a liberal approach to

28  recognizing such notice. The Federal Circuit is in accord:

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

It is not controlling whether the patentee threatens suit, demands cessation of infringement, or offers a license under the patent. (Citations omitted). Although there are numerous possible variations in form and content, the purpose of the actual notice requirement is met when the recipient is notified, with sufficient specificity, that the patent holder believes that the recipient of the notice may be an infringer.

*SRI Int'l v. Advanced Tech. Labs., Inc.*, 127 F.3d 1462, 1470 (Fed. Cir. 1997) (rejecting argument that the patentee must make an "unqualified charge of infringement" and threaten the defendant with suit); *see also Wokas v. Dresser Indus.*, 978 F. Supp. 839, 845 (N.D. Ind. 1997) (finding that the notice need not necessarily include the word infringement).

Other courts have also found that the general description of actual notice in *Dunlap* "suggests a less stringent approach" to finding compliance with Section 287(a). *Ceeco Mach. Mfg. Ltd. v. Intercole, Inc.*, 817 F. Supp. 979, 986 (D. Mass. 1992). In *Cecco*, the court addressed whether actual notice of infringement could be found where there was no dispute that the patentee had expressed concerns of infringement to the defendant, but had never cited the specific patent number or provided a copy of the patent. *Id.* at 985. Following *Dunlap*, the court found that the question under the notice statute was "whether the plaintiff has acted affirmatively to notify his adversary of the *essential information*: that the plaintiff had a patent on a given item and that the defendant is infringing that patent." *Id.* at 986 (emphasis added) . Finding that plaintiff had taken sufficient affirmative action under the circumstances, the court held that defendant was "actually notified in a fashion sufficient to satisfy § 287." *Id.* at 987.

Asyst's affirmative actions satisfied the requirement that the patentee's actions, not a third-party's, notified the alleged infringers. *See Lans v. Digital Equip. Corp.*, 252 F.3d 1320, 1327-28 (Fed. Cir. 2000). Even if defendants argue that the some parties were only informed through subsidiaries or sister corporations, the Federal Circuit imputes actual notice to closely related companies. *Hockerson-Halberstadt, Inc. v. JSP Footware, Inc.*, No. 03-1383, 03-1412, 2004 U.S. App. LEXIS 12445, at **7-9 (Fed Cir. June 23, 2004). In *Hockerson*, the court reasoned that to do otherwise would "create a perverse incentive and method to disguise the true identity of an infringing party [and then] several layers of corporate disguise could successfully frustrate adequate notice." *Id.* Although *Hockerson* was issued as an unpublished decision, Asyst

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   brings it to the court's attention because of the similar facts and applicable reasoning. The court

2   applied analogous reasoning in *Dainippon Screen Mfg Co. Ltd v. CMFT, Inc.* to find personal

3   jurisdiction over associated corporations which set up a complicated business structure that

4   allowed it to "threaten its competitors with infringement without fear of being a declaratory

5   judgment defendant, save perhaps in the state of incorporation of the holding company." 142

6   F.3d 1266, 1271 (Fed. Cir. 1998) (finding that such an argument qualifies the defendants for a

7   "chutzpah" award). As in *Hockerson*, Asyst gave effective actual notice which applies to all

8   defendants.

9          To properly consider whether Asyst provided sufficient actual notice of infringement to

10  defendants, the court must review the entirety of relevant communications between the parties.

11  Communications should not be considered separately in isolation, but rather must be considered

12  in conjunction with one another. *Gart v. Logitech*, 254 F.3d 1334, 1346-47 (Fed. Cir. 2001)

13  (considering cumulative contacts between the parties in finding effective actual notice). The key

14  question under Section 287 is whether the patentee had **clearly implied** that it believed defendant

15  infringed. *Id.*

16         In deciding whether the actual notice requirement was met, the *Gart* court considered the

17  entirety of the contacts and communications between the parties. *Id.* at 1337-38. These included

18  the parties' discussions in 1989 regarding licensing of the then-pending application, as well as

19  separate letters sent by the patentee in 1995 and 1996, a phone conference, and defendant's

20  response letters to the patentee, which denied that the patent covered defendant's products. *Id.*

21  Over defendant's argument that the notice letters were only "invitations," the court found that the

22  letters provided sufficient notice, as they identified the patent, the infringing activity, and

23  suggested that a license might be needed. *Id.* at 1346. Accordingly, "from an objective

24  standpoint, the clear inference" of the letters was that the patentee believed that the defendant's

25  activities infringed the patent. *Id.* The Court found that the letter "reasonably suggest[ed]" to

26  defendant that the patentee considered defendant's identified activities to infringe, in part because

27  it would be "rare" that such a letter would not be "considered by its recipient as more than a

28  'mere' invitation to determine for itself whether there was infringement." *Id.*

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Asyst's affirmative communications to defendants in 1992 and 1993, coupled with direct evidence that defendants understood such notices to charge infringement proves that Asyst satisfied Section 287(a). *Wokas*, 978 F. Supp. at 846 (finding that "it would be difficult to conceive of evidence that is more direct" than defendant's written statement admitting it has received notice of infringement). *See also Chubb Integrated Sys., Inc. v. Nat'l Bank of Washington*, 658 F. Supp. 1043, 1051 (D. D.C. 1987) ("when one acknowledges . . . that the adversary is claiming infringement, the law most certainly does not compel the patent owner to repeat it more explicitly.") (quoting *Livesay Window Co. v. Livesay Indus.*, 251 F.2d 469, 475 (5th Cir. 1958)). Additionally, the Supreme Court in *Dunlap* considered the evidence of defendants' denial of notice of infringement, and thus a trial court can consider evidence to the contrary. 152 U.S. at 244. *Dunlap* has been called highly persuasive, if not controlling, on the meaning of the notice requirement. *Amsted*, 24 F.3d at 187. And, in *Amsted*, the Federal Circuit only held that "whether the defendant *knew of the patent* or *knew of his own infringement*" was irrelevant to whether actual notice had been established. *Id (emphasis added).* In other words, *Amsted* merely held that it was not enough that a defendant **on its own** knew of the patent or of its infringement, but rather, it had to have been put on notice by the affirmative act of the patentee, which Asyst has done here. Nothing in *Amsted* held, however, that – as in this case – it would be improper to consider a defendant's admission that it had understood the patentee's communications to have provided notice of infringement. *See also Schofield v. U.S. Steel Corp.*, No. 2:04-CV-520-PRC, 2006 U.S. Dist LEXIS 39605, at *30 (N.D. Ind. Mar. 31, 2006) (finding that verbal communications raised a genuine issue of material fact regarding actual notice where the patent attorney testified that he believed plaintiff was "attempting to convey to him … that [defendant] did not have the right to continue to use" plaintiff's patented products.); *Soverain Software LLC v. Amazon.com, Inc.*, 383 F. Supp. 2d 904, 910-11 (E.D. Tex. 2005) (pointing to defendant's interrogatory responses which acknowledged a meeting with the patentee to discuss purchasing the software but denying that any charge of infringement was made at the meeting).

2.      **Constructive Notice through Marking**

As an alternative to actual notice, 35 U.S.C. § 287(a) provides for constructive notice. Under section 287(a), a patent owner may recover damages from the time it began marking its products in compliance with the statute. *See Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111 (Fed. Cir. 1996); *American Med. Sys., Inc. v. Medical Eng'g Corp.,* 6 F.3d 1523, 1537 (Fed. Cir. 1993). A patentee need not establish compliance with the marking statute exclusively by documentary evidence but can also provide testimony from competent witnesses. *See Ceeco*, 817 F. Supp. at 983; *ADC Telecomms.*, 954 F. Supp. at 832-33 (rejecting defendant's argument that deponent's words conclusively showed no constructive notice prior to the lawsuit in light of the uncontradicted statements by plaintiff's employees regarding a marking policy and compliance). The notice statute requires a label on the patented article with the word "patent" or the abbreviation "pat.," together with the patent number. 35 U.S.C. § 287(a). When, from the character of the patented article, this cannot be done, a similar label may be applied to the package where the products are contained. *Id.* Where a patentee marks the central, critical component of a system, such marking is sufficient to provide constructive notice under section 287(a). *See, e.g., Douglas Press v. Arrow Int'l, Inc.*, No. 95 C 3863, 1997 U.S. Dist. LEXIS 9229 (N. D. Ill. June 24, 1997). So long as the marking of the patented product is "substantially consistent and continuous," the party seeking to enforce the patent may avail itself of the constructive notice provisions of the statute. *American Med. Sys.,* 6 F.3d at 1537.

B.      **Lost Profits**

To recover lost profits, the patentee must show a reasonable probability that, "but for" the infringement, it would have made the sales that were made by the infringer. *Rite Hite*, 56 F.3d at 1545. This "but for" test, however, must be viewed in light of the reasonable limits of liability. Thus, patent damages must be based on "a particular injury that was or should have been reasonably foreseeable by an infringing competitor in the relevant market," unless there is a persuasive reason to the contrary. *Id.* at 1546.

*Panduit Corp v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir. 1978) identified a four-factor test for determining entitlement to lost profits damages and the Federal

1    Circuit has accepted it as an appropriate but non-exclusive way to prove entitlement to lost profits

2    damages. *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1577 (Fed. Cir. 1989). Under

3    the *Panduit* test, the patentee must establish: (1) demand for the patented product; (2) an absence

4    of acceptable noninfringing substitutes; (3) the marketing and manufacturing capability to exploit

5    the demand; and (4) the amount of profit the patentee would have made. 575 F.2d at 1156.

6    Alternatively, a patentee can establish entitlement to lost profits by establishing factors (1), (3),

7    and (4) of the *Panduit* test, and demonstrating proof of its market share in lieu of factor (2). *State

8    Indus.*, 883 F.2d at 1578-1580; *see also Crystal Semiconductor Corp. v. TriTech Microelectronics

9    Int'l, Inc.*, 246 F.3d 1336, 1355-56 (Fed. Cir. 2001); *Ericsson, Inc. v. Harris Corp.*, 352 F.3d

10   1369, 1376-77 (Fed. Cir. 2003).

11       In establishing entitlement to lost profits damages, a patentee need not negate every

12   possibility that a customer might not have bought the patentee's product absent the infringement.

13   *Gyromat Corp v. Champion Spark Plug Co.*, 735 F.2d 549, 554 (Fed. Cir. 1984). Rather, the

14   patentee must only show that there was a reasonable probability that the sales would have been

15   made "but for" the infringement. *Kaufman Co. v. Lantech, Inc.*, 926 F.2d 1136, 1140 (Fed. Cir.

16   1991). Thus, whether a patentee "deserves lost profits damages is not based on a subjective,

17   individualized inquiry, but on an objective standard of 'reasonable probability.'" *Id.*

18       While satisfaction of the *Panduit* factors compels the reasonable inference that a patentee

19   probably would have made the sale but for the infringement, the same inference also can be

20   compelled when the patentee and the infringer are the only suppliers in the market. *Kaufman*,

21   926 F.2d at 1141 (citing *Bio-Rad Labs, Inc. v. Nicolet Instrument Corp.*, 739 F.2d 604, 616 (Fed.

22   Cir. 1984) and *Lam, Inc.*, 718 F.2d at 1065). Indeed, "when the fact situation compels the

23   reasonableness of the inference via both courses, the inference approaches conclusiveness."

24   *Kaufman*, 926 F.2d at 1141. Here, the evidence will show that only Asyst and defendants were

25   selling infrared inventory management systems of the type exemplified by the practicing Asyst

26   Smart Traveler System or the infringing IridNet system.

27       Federal Circuit authorities represent the pervading principle that doubt in ascertaining

28   appropriate damages comes down against the infringer. *Kaufman*, 926 F.2d at 1141.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    Accordingly, when the patentee shows the reasonableness of the inference that it would have

2    made the additional sales, the patentee has met its burden and is entitled to lost profits on all

3    infringing sales. *Id.* at 1141-42. The burden then shifts to the infringer to show that the inference

4    is unreasonable for some or all of the lost sales. *Id.*

5    **C.    Price Erosion**

6    Asyst is also entitled to damages resulting from price erosion due to defendants'

7    extremely aggressive pricing practices because Asyst would have sold integrated SMIF/electronic

8    wafer inventory management products at a higher price but for defendants' infringement.

9    *Ericsson, Inc.*, 352 F.3d at 1378. To recover lost profits due to price erosion, Asyst must show

10   that but for the infringement, Asyst would have sold its products at a higher price. *Id.*

11   In a two-player market, as here, it is presumed that Asyst would have made the sales made

12   by defendants. *W.R. Grace v. Intercat, Inc.*, 60 F.Supp. 2d 316, 324 (D. Del. 1999).

13   Additionally, it is also presumed that the sales would have been made at Asyst's then current

14   pricing. *Id.* In *W.R. Grace,* the defendants used their own pricing as a starting point for assessing

15   the price that the plaintiff/patentee would have received but for defendants' infringement. The

16   Court rejected defendants' attempt to use any price lower than the plaintiff's then-current average

17   selling price because the defendants may not take advantage of any reduction in price caused by

18   their own wrongdoing. *Id. See also, Saf-Gard Prods., Inc. v. Service Parts, Inc.*, 491 F. Supp.

19   996, 1009 (D. Ariz. 1980) (holding that plaintiff's lost profits cannot be based on "any reduced

20   selling price occasioned by the defendant's unlawful competition."). Absent the defendants'

21   infringement, the Court must assume no competition existed and customers were not aware of

22   defendants' products or prices. *Id.*

23   The absence of acceptable non-infringing alternatives for Asyst's patented system

24   (Asyst's STS system or Jenoptik's infringing IridNet system) demonstrates the two-player nature

25   of the market for intelligent wafer carrier tracking equipment. *See Honeywell Int'l, Inc. v.*

26   *Hamilton Sundstrand Corp.*, 166 F. Supp. 2d 1008, 1028 (D. Del. 2001). "[T]he mere existence

27   of a competing device does not necessarily make the device an acceptable substitute . . . a product

28   on the market which lacks the advantages of the patented product can hardly be termed an

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1   [acceptable] substitute." *Stryker Corp. v. Intermedics Orthopedics*, 96 F.3d 1409, 1418 (Fed. Cir.

2   1996) quoting *Standard Havens Prods., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1373 (Fed.

3   Cir. 1991).  An acceptable noninfringing substitute must not have a significantly different price or

4   characteristics from the patented product.  *Kaufman Co.*, 926 F.2d at 1142 ("A technology that

5   was immature and more expensive than the patented technology during the time of infringement

6   cannot have been an acceptable noninfringing substitute").  Because no other alternatives existed

7   that provided similar features to Asyst's patented system, the market was essentially limited to

8   Asyst's STS and Jenoptik's infringing IridNet systems – a two-player market.  Therefore, it must

9   be presumed that absent Jenoptik's infringing products, Asyst would have made the sales at

10  Asyst's then current prices.

11      **D.   Convoyed Sales**

12          Pursuant to the entire market value rule, a patentee is allowed to recover lost profits on

13  unpatented components typically sold with a patented item.  *Rite Hite*, 56 F.3d at 1549-50.

14  Where the traditional rule had been to allow recovery when both the patented and unpatented

15  parts were part of the same machine, "the rule has been extended to allow inclusion of physically

16  separate unpatented components normally sold with the patented components" but only where

17  both were "considered to be components of a single assembly or parts of a complete machine, or

18  they together constituted a functional unit."  *Id.*

19          To apply the *Rite-Hite* "functional unit" test, the Federal Circuit has held that "a

20  functional relationship between a patented device and an unpatented material used with it is not

21  precluded by the fact that the device can be used with other materials or that the unpatented

22  material can be used with other devices."  *Juicy Whip, Inc. v. Orange Bang, Inc.*, 382 F.3d 1367,

23  1372 (Fed. Cir. 2004); *see also Bose Corp. v. JBL, Inc.*, 274 F.3d 1354, 1361 (Fed. Cir. 2001)

24  (affirming reasonable royalty based on the entire value market value rule where the patented

25  invention "inextricably worked with other components" as a single functioning unit).  Here,

26  because the IridNet system is designed to be used, and sold with, other IridNet-compatible SMIF

27  products, Asyst is entitled to damages for lost profits related to sales of the unpatented SMIF

28  products as well.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

## VII.   WILLFULNESS

A person having knowledge of a patent has an affirmative duty to exercise due care to avoid infringement of a presumptively valid and enforceable patent. *nCube Corp. v. SeaChange Int'l, Inc.*, 436 F.3d 1317, 1324 (Fed. Cir. 2006); *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1346 (Fed. Cir. 2004) (citation omitted). The primary consideration is whether the infringer, acting in good faith and upon due inquiry, has sound reason to believe it had the right to act in the manner found to infringe. *SRI Int'l*, 127 F.3d at 1464; *The Read Corp. v. Protec, Inc.,* 970 F.2d 816, 828 (Fed. Cir. 1992) (the question that must first be answered is whether the defendant proceeded with a reasonable belief that it would not be held liable for infringement). Defendants' had notice of the patent from at least 1993 and, therefore, had an affirmative duty of care from that point forward.

Determining liability for willful infringement is a question of fact that turns on considerations of intent, state of mind and culpability. *SRI Int'l.*, 127 F.3d at 1465. To establish willful infringement, a plaintiff must prove by clear and convincing evidence that the infringer acted without a reasonable belief that its action avoided infringement. *Crystal Semiconductor*, 246 F.3d at 1346; *SRI Int'l*, 127 F.3d at 1465. Determination of willfulness is made on consideration of the totality of the circumstances. *Knorr-Bremse*, 383 F.3d at 1342. Precedent provides various factors to consider in the totality analysis, including, but not limited to: whether the infringer intentionally copied; whether the infringer, when it learned of the patent, investigated the scope of the patent and formed a good-faith belief that it was invalid, or unenforceable or not infringed; whether the infringer had a substantial defense to infringement and reasonably believed the defense would be successful if litigated; closeness of the case; and commercial factors that may have affected the infringer's actions. *See Knorr-Bremse*, 383 F.3d at 1343; *SRI Int'l,* 127 F.3d at 1465. The factors are evaluated and weighed by the trier-of-fact because willfulness is a matter of degree which may range from "unknowing, or accidental, to deliberate, or reckless, disregard of a patentee's legal rights." *Knorr-Bremse*, 383 F.3d at 1343. If the trier-of-fact finds willful infringement, the court may exercise its discretion and "increase the damages up to three times the amount found or assessed." 35 U.S.C. § 284.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

A.   **Intentional Copying**

Deliberate copying is strong evidence of willful infringement. *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1127 (Fed. Cir. 1993). The inquiry is whether the infringer "intentionally copied the ideas or design of another" and not whether the infringing product is an "exact copy." *Stryker Corp.*, 96 F.3d at 1414; *see also Read Corp.*, 970 F.2d at 827. Under this analysis, "ideas" and "design" are not limited to the elements of a patent claim, but encompass copying the "commercial embodiment." *Read Corp.*, 970 F.2d at 827 n.7. Evidence exists that defendants intentionally copied the patented system in order to meet commercial requirements or when the IridNet system failed commercially.

B.   **Failure to Investigate and Form a Good Faith Belief**

Failure to investigate the scope of a patent and form a good-faith belief that it is invalid or not infringed is evidence of willful infringement. *Stryker Corp.*, 96 F.3d at 1414; *see also* Model Patent Jury Instructions for N.D. Cal. 3.11 (whether infringer, ***when it learned of the patent, investigated the scope of the patent and formed a good faith belief*** that the patent was invalid or not infringed) (emphasis added). Patent infringement is a continuing tort and federal case law makes clear that the time for assessing an infringer's willfulness begins when the infringer first learned of the patent. *See nCube Corp.*, 436 F.3d at 1324 (willful infringement hinges on when the infringers had actual knowledge of patent and their actions after that time); *SRI Int'l*, 127 F.3d at 1468 (noting that prudent behavior generally requires that competent legal advice was obtained ***before*** the commencement of the infringing activity); *Critikon, Inc. v. Becton Dickinson Vascular Access*, 120 F.3d 1253, 1259-60 (Fed. Cir. 1997) (only opinions obtained before defendant began marketing its product can be considered in determining reasonableness of its actions); *Dickey-John Corp. v. Int'l Tapetronics Corp.*, 710 F.2d 329, 348 (7th Cir. 1983) (only question regarding defendant's good faith was whether ***at the time of infringement*** they had a good faith belief in the invalidity of the patent); *Howes v. Med. Components, Inc.*, 16 U.S.P.Q. 2d 1671, 1673-74 (E.D. PA May 1990). (events which occur after willful infringement begins cannot be used to excuse it; rather, the law requires more than a colorable legal argument for invalidity or non-infringement "***at the point in time when infringement commenced.***") (emphasis added). Therefore, from the

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1  time of notice, each instance of infringement should be evaluated to determine if it was willful.

2  *Paper Converting Mach. Co. v. Magna-Graphics Corp.*, 785 F.2d 1013, 1014 (Fed. Cir. 1986).

3         An infringer may choose to discharge its duty of due care by obtaining an opinion of

4  counsel to ensure that it avoids infringing activities.  *Comark Commc'ns, Inc. v. Harris Corp.*,

5  156 F.3d 1182, 1191 (Fed. Cir. 1998).  During discovery, defendants produced a number of legal

6  opinions.  However, to serve as exculpatory legal advice the legal opinion must be found

7  "competent."  *See id.*; *3M v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1580 (Fed.

8  Cir. 1992) (emphasis must be on whether legal advice is competent).  A competent opinion "must

9  be thorough enough, as combined with other factors, to instill a belief in the infringer that a court

10  might reasonably hold the patent is invalid, not infringed, or unenforceable."  *Ortho Pharm.*

11  *Corp. v. Smith*, 959 F.2d 936, 944 (Fed. Cir. 1992); *SRI Int'l*, 127 F.3d at 1464.  The Federal

12  Circuit has found legal opinions not competent when there is no analysis of specific claims, no

13  interpretation of claim language and no meaningful discussion of the prosecution history.

14  *Critikon, Inc.*, 120 F.3d at 1259-60.

15         The legal opinions produced by defendants here provide only conclusory analysis

16  regarding infringement, do not construe the meaning of the claim terms and do not compare the

17  accused system with the claims.  Such opinions are not competent and should not be given

18  exculpatory value.

19         **C.    Commercial Conduct**

20         The trier-of-fact may consider commercial conduct in determining whether the infringer

21  exercised the due care owed to a patent holder.  *SRI Int'l*, 127 F.3d at 1468.  A lack of due care

22  may be shown where an infringer engages in conduct in order to "fend off" a patent holder and

23  allow its infringing conduct to continue.  *Id.* (defendant deliberately prolonged its dealings with

24  plaintiff and imposed delay after delay).

25         **D.    Substantial Defense**

26         It is well settled that there are no "hard and fast *per se* rules" with respect to willful

27  infringement.  *Knorr-Bremse*, 383 F.3d at 1346 (*citing Rolls-Royce Ltd. v. GTE Valeron Corp.*,

28  800 F.2d 1101, 1110 (Fed. Cir. 1986)).  In *Knorr-Bremse*, the Federal Circuit unequivocally held

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1 that existence of a substantial defense, by itself, cannot defeat liability for willful infringement –

2 it is merely a factor considered among the totality of circumstances. *Id.* at 1347. As noted by the

3 court, precedent stresses the "theme of whether a prudent person would have sound reason to

4 believe that the patent was not infringed or was invalid or unenforceable, and would be so held if

5 litigated." *Id.*

6      Defenses prepared for trial are not equivalent to a competent legal opinion of non-

7 infringement or invalidity that qualifies as "due care" before undertaking any potentially

8 infringing activity[6]. *Crystal Semiconductor Corp.*, 246 F.3d at 1352. In *Crystal Semiconductor*,

9 the Federal Circuit rejected the argument that "a [defendant] that continues its accused infringing

10 activity after a [plaintiff] files suit cannot be guilty of willful infringement as long as that party

11 presents a non-frivolous defense to infringement." *Id.* at 1351. Therefore, in order to support a

12 finding of good faith, a litigation defense must "track defenses" established before the

13 infringement. *See id.*; *Read Corp.*, 970 F.2d at 819-820, 829 (defenses put forth by defendant

14 support good faith belief because they track defenses set forth in two independent legal opinions).

15     **E.**   **Closeness of the Case**

16      Defendants may also argue that the issues were sufficiently close to bar a finding of

17 willful infringement. While closeness of the legal and factual questions is a factor, the proper

18 focus remains on when the infringer formed its good faith belief. For example, the Federal

19 Circuit in *Paper Converting* acknowledged the "closeness of the question as to infringement," but

20 affirmed a finding of willful infringement. 785 F.2d at 1016. The court noted that it is the

21 responsibility of the infringer to "insure that the court can make the requisite comparison – the

22 accused activity with the alleged justification." *Id.* Where "no clear justification" is

23 demonstrated for infringing conduct, closeness of the case is not sufficient to bar a finding of

24 willfulness. *See id.* Similarly, in *Johns Hopkins*, the Federal Circuit noted that a prior verdict in

25 favor of the defendant was not significantly probative of defendant's willfulness during the early

26    [6] In *Knorr-Bremse*, the Federal Circuit held that there is no legal duty upon an infringer to
consult with counsel and it is inappropriate to draw an adverse inference from such failure.
27 383 F.3d at 1345. However, a defendant still has an affirmative duty of due care and failure
to investigate the scope of the patent and form a good faith belief of invalidity or
28 noninfringement weighs in favor of willfulness. *Stryker Corp.*, 96 F.3d at 1414.

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1    stages of its infringing activity. *Johns Hopkins Univ. v. CellPro, Inc.,* 152 F.3d 1342, 1364 (Fed.

2    Cir. 1998) (district court properly excluded evidence of first jury verdict because it had no

3    bearing upon willfulness on date defendant received notice of the patents). Further, in order for

4    closeness to favor an infringer, the issue determined "close" must related back to the infringer's

5    decision. *Datascope Corp. v. SMEC, Inc.,* 879 F.2d 820, 829 (Fed. Cir. 1989) (*noting Dickey-*

6    *John Corp.,* 710 F.2d at 348 (a close question of obviousness will not save defendants from

7    flagrant disregard of the patent laws)). Thus, the later evaluation of claim construction in this

8    case or the rulings on the summary judgment motions or appeals should not be attributed to

9    defendants or relate back to 1993.

10   Dated:  November 2, 2006                      FENWICK & WEST LLP

11

12                                                By:  _____s/Darryl M. Woo_____
                                                         Darryl M. Woo

13

14                                                Attorneys for Plaintiff and Counterdefendant
                                                  ASYST TECHNOLOGIES, INC.

15

16

17

18

19

20

21

22

23

24

25

26

27

28

FENWICK & WEST LLP
ATTORNEYS AT LAW
SAN FRANCISCO