**E-Filed 11/14/06**

NOT FOR CITATION

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| ASYST TECHNOLOGIES, INC., | Case Number C 98-20451 JF |
| Plaintiff, | ORDER[1] (1) GRANTING PARTIAL SUMMARY JUDGMENT THAT DEFENDANTS DID NOT WILLFULLY INFRINGE; (2) DENYING PARTIAL SUMMARY JUDGMENT WITH RESPECT TO PRE-SUIT DAMAGES; AND (3) DENYING SUMMARY JUDGMENT OF INVALIDITY |
| v. | |
| EMPAK, INC., et al., | |
| Defendants. | |
| | [re:  doc. nos. 809, 813 and 815] |

Defendants Jenoptik AG, Jenoptik Infab, Inc., Emtrak, Inc. and Meissner + Wurst GmbH (collectively, "Jenoptik") have filed three motions for summary judgment or partial summary judgment: (1) a motion for partial summary judgment that Jenoptik did not willfully infringe the remaining asserted claims of the patent-in-suit; (2) a motion for partial summary judgment that Plaintiff Asyst Technologies, Inc. ("Asyst") cannot recover pre-suit damages; and (3) a motion for summary judgment of invalidity.  The Court has considered the briefing of the parties as well

---

[1] This order is not designated for publication and may not be cited.

1   as the oral arguments presented at the hearing on September 8, 2006.  For the reasons discussed

2   below, the Court will grant partial summary judgment on the issue of willful infringement, and

3   will deny summary judgment on the issues of pre-suit damages and invalidity.

4                                        **I. WILLFULNESS**

5          Jenoptik seeks partial summary judgment with respect to Asyst's allegation that Jenoptik

6   willfully breached the remaining asserted claims of the patent-in-suit, United States Patent No.

7   5,097,421 ("the '421 patent").  Those claims are independent claim 2 and dependent claims 11-

8   14.

9          "Summary judgment is as appropriate in a patent case as it is in any other case," and

10  should be granted when "the pleadings, depositions, answers to interrogatories, and admissions

11  on file, together with the affidavits, if any, show that there is no genuine issue as to any material

12  fact and that the moving party is entitled to a judgment as a matter of law."  *C.R. Bard, Inc. v.*

13  *Advanced Cardiovascular Systems, Inc.*, 911 F.2d 670, 672 (Fed. Cir. 1990).

14         To prevail on its willfulness allegation, Asyst must show that Jenoptik engaged in

15  "egregious and reckless conduct."  *Union Carbide Chems. & Plastics Tech. Corp. v. Shell Oil*

16  *Co.*, 425 F.3d 1366, 1381 (Fed. Cir. 2005).  Asyst must make this showing by clear and

17  convincing evidence based on the totality of the circumstances.  *SRI Int'l, Inc. v. Advanced Tech.*

18  *Labs., Inc.*, 127 F.3d 1462, 1465 (Fed. Cir. 1997).  Among the circumstances that may be

19  relevant are whether the infringer relied upon advice of counsel, the reasonableness of any such

20  reliance, the closeness or complexity of the legal and factual issues presented, and commercial

21  factors such as an attempt to design around the patent.  *Id.*  The existence of a substantial defense

22  to infringement likewise may be considered as part of the totality of the circumstances.  *Knorr-*

23  *Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1347 (Fed. Cir.

24  2004).

25         Jenoptik points to an absence in the record of evidence sufficient to demonstrate

26  egregious or reckless conduct by clear and convincing evidence.  Approximately eight years ago,

27  Jenoptik propounded an interrogatory seeking the factual bases for Asyst's allegation of

28  willfulness.  In its response, Asyst (1) referenced a letter it sent Defendant Meissner + Wurst

                                                2

1   GmbH ("Meissner + Wurst") on June 8, 1993, which asserted Asyst's ownership of the '421

2   patent and two others and provided a general statement of United States patent law, and (2)

3   asserted that Defendants had "taken no reasonable steps to avoid infringement of the Asyst

4   patents as evidenced by the deposition testimony of Bedford Eugene Hardee." The relevance of

5   Asyst's letter to Meissner + Wurst is unclear, as Asyst never asserted infringement claims against

6   Meissner + Wurst, but rather claimed that Meissner + Wurst breached fiduciary duties to Asyst,

7   misappropriated Asyst's technology and engaged in unfair business practices (Asyst ultimately

8   dismissed those claims). Asyst argues that the Hardee deposition demonstrates that Defendants

9   are a group of companies under common ownership, such that the knowledge of Meissner +

10  Wurst should be imputed to the companies that actually were sued for patent infringement. Asyst

11  argues further that the Hardee deposition demonstrates that Defendants redesigned their system

12  with full knowledge that there was a risk that the system might violate Asyst's patents. However,

13  at the time of Asyst's interrogatory response, Hardee had been deposed for three days and

14  provided more than 500 pages of deposition testimony. Asyst's bare reference to Hardee's

15  deposition, with no citation to any particular portions thereof, was insufficient to put Jenoptik on

16  notice of the factual bases for Asyst's willfulness contention.

17        At the time Asyst provided the interrogatory response, it objected on the ground that the

18  interrogatory was premature and stated that it would supplement the response. However, Asyst

19  never did so. "A party is under a duty seasonably to amend a prior response to an interrogatory,

20  request for production, or request for admission if the party learns that the response is in some

21  material respect incomplete or incorrect and if the additional or corrective information has not

22  otherwise been made known to the other parties during the discovery process or in writing." Fed.

23  R. Civ. P. 26(e)(2). Asyst argues that, although it did not formally supplement its interrogatory

24  response, it was not required to do so under Rule 26(e)(2) because it provided additional

25  information to Jenoptik during the discovery process and in the context of motion practice. In

26  particular, Asyst points to its July 2003 opposition to Jenoptik's motion for summary judgment

27  of noninfringement, and to the July 1998 deposition of a Jenoptik employee who indicated that

28  Jenoptik was aware of the danger of infringement. Jenoptik has not cited, and this Court has not

3

1    discovered, any authority for the proposition that the exception to the supplementation obligation

2    imposes on Jenoptik the burden to pick out particular filings and depositions during the eight

3    years this case has been litigated and infer from them that Asyst had factual bases for its

4    willfulness contention other than those disclosed in its interrogatory response.  Accordingly,

5    while Rule 26(e)(2) makes clear that Asyst could have met its obligation by means other than a

6    formal supplementation, the Court concludes that Asyst had to give some indication that the

7    additional materials related to Asyst's willfulness contention.

8          The Court concludes as a matter of law that, based upon the facts set forth in the

9    interrogatory response Asyst did provide, no reasonable trier of fact could conclude that Jenoptik

10   acted egregiously or recklessly.  Even assuming for purposes of discussion that knowledge of

11   Asyst's June 1993 letter to Meissner + Wurst could be imputed to the other defendants,

12   knowledge of the patents-in-suit coupled with an ultimate finding of infringement are insufficient

13   to support a finding of willfulness.  *See Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1332

14   (Fed. Cir. 2004).  Asyst's blanket citation to the Hardee deposition is insufficient to make up for

15   this evidentiary shortfall.

16         Apparently anticipating that the Court might find its interrogatory response is insufficient

17   to support a finding of willfulness, Asyst requests leave to supplement the response.  However,

18   as another district court has put it, "[w]hile supplementation of interrogatory answers may be

19   allowed under some circumstances, it should not be allowed after the filing of dispositive

20   motions and on the eve of trial in the absence of extraordinary circumstances."  *Net 2 Press, Inc.*

21   *v. 58 Dix Avenue Corp.*, 266 F.Supp.2d 146, 161 (D. Me. 2003).  Asyst offers no reasonable

22   explanation for its failure to supplement its interrogatory response or otherwise give Jenoptik

23   adequate notice of the bases for its willfulness allegation.  Asyst could have provided Jenoptik

24   with the bases for its willfulness position any number of times during the past eight years.  Asyst

25   has not pointed to any change in the law or the facts that would justify supplementation at this

26   late date.  Moreover, while Asyst argues that allowing supplementation would not prejudice

27   Jenoptik, Jenoptik clearly would be prejudiced by having to defend against willfulness

28   allegations disclosed for the first time after the close of discovery and virtually upon the eve of

4

1   trial.  As Jenoptik points out, many of the fact witnesses that would be relevant to Asyst's

2   proposed new allegations no longer work for Jenoptik and reside outside this Court's

3   jurisdiction.  Just as the Court concluded that it would be fundamentally unfair to permit Jenoptik

4   to change its infringement contentions eight years into the litigation, so too would it be

5   fundamentally unfair to permit Asyst to change its willfulness contentions.

6        Even if the Court were inclined to permit Asyst to supplement its interrogatory response,

7   it appears on this record that Jenoptik nonetheless would be entitled to summary judgment on the

8   willfulness issue.  Asyst relies heavily on its current assertion that Jenoptik deliberately

9   redesigned its system to move its ceiling-mounted IRTs to the workstations in order to make

10  Jenoptik's system work more like the patented system.  However, the remaining claims of the

11  '421 patent – claims 2 and 11-14 – do not specify the location of the second two-way

12  communication means.  Accordingly, even if Jenoptik did copy this feature, such copying does

13  not weigh in favor of finding willful infringement of claims 2 and 11-14.  Asyst also bases its

14  argument upon its current assertion that Jenoptik could not reasonably have relied upon the

15  opinions of its counsel, which stated that Jenoptik's system did not infringe Asyst's patents.

16  Asyst claims that the legal opinions of non-infringement were unsupported, conclusory and/or

17  prepared solely in anticipation of litigation, and that a reasonable jury could find as much if given

18  the opportunity.  However, because Asyst has never before challenged the opinions of Jenoptik's

19  counsel, there has been no discovery into the circumstances surrounding the preparation of these

20  opinions or the reliance on the opinions by Jenoptik officials.  Absent such evidence, the Court

21  concludes that no reasonable jury could simply discard the opinions, particularly in light of the

22  fact that this Court twice has ruled that Jenoptik's system was not infringing and that the Federal

23  Circuit, while disagreeing, specifically found that the question upon which this Court based its

24  first ruling for Jenoptik on claim 2 was "close."  *See Asyst Tech., Inc. v. Empak, Inc.*, 268 F.3d

25  1364, 1375-76 (Fed. Cir. 2001).

26        Accordingly, the Court will grant Jenoptik's motion for partial summary judgment on the

27  issue of willfulness.

28

5

**II. PRE-SUIT DAMAGES**

Jenoptik seeks partial summary judgment that Asyst may not recover damages for infringement occurring prior to the filing of this lawsuit.  A patent holder may recover damages for infringement only after (1) giving constructive notice to the public by marking its products with the patent number, or (2) giving actual notice of the infringement to the accused infringer. 35 U.S.C. § 287(a).  The filing of an infringement action is sufficient for actual notice.  *Id.* Jenoptik asserts that Asyst did not give either constructive or actual notice prior to the filing of the instant lawsuit.

**A.    Actual Notice**

Asyst claims that it gave Defendants actual notice in two 1993 letters, one from Asyst's patent counsel to Defendant Meissner + Wurst, and the other from Asyst's patent counsel to Jenoptik GmbH.  Jenoptik argues that letters to Meissner + Wurst and Jenoptik GmbH could not have provided actual notice to the other defendants in this action.  Asyst argues that letters to these two defendants was sufficient to give actual notice to all defendants, because the defendants in essence acted as one company.  Putting this issue aside for the moment, the Court concludes as a matter of law that the two 1993 letters were insufficient to provide actual notice of the infringement even to their recipients.

> For purposes of section 287(a), notice must be of "the infringement," not merely notice of the patent's existence or ownership. Actual notice requires the affirmative communication of a specific charge of infringement by a specific accused product or device.

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed. Cir. 1994).  A letter that merely notifies the recipient of the sender's ownership of a particular patent and generally advises against infringement is not sufficient to constitute actual notice under this standard.  *Id.*

The June 8, 1993 letter to Meissner + Wurst stated that (1) Asyst had information indicating that Meissner + Wurst was entering the market for SMIF pods; (2) Asyst had a substantial patent portfolio in the area of SMIF pods and related technologies; and (3) Asyst believed that three of its patents would be "of significant interest" to Meissner + Wurst (the letter listed the '421 patent and two others).  The letter also set forth a definition of patent infringement

6

1   under United States patent law.

2   The September 9, 1993 letter to Jenoptik GmbH stated that (1) Asyst had information

3   indicating that Jenoptik was entering the market for SMIF pods; (2) Asyst had a substantial

4   patent portfolio in the area of SMIF pods and related technologies; and (3) Asyst believed that

5   certain of its patents, listed at Appendix A of the letter, would be "of significant interest" to

6   Jenoptik GmbH. The letter also set forth a definition of patent infringement under United States

7   patent law at Appendix B.

8   Neither letter gave *any* indication that Asyst believed that Meissner + Wurst or Jenoptik

9   GmbH was infringing Asyst's patents. Neither letter identified any particular product of

10  Meissner + Wurst or Jenoptik GmbH. To the contrary, both letters appear to be the precise type

11  of "informational" letter that the *Amsted* decision held insufficient under § 287(a). Asyst points

12  out that the letter in *Amsted* was an open letter to the industry as a whole, while here the letters in

13  question were sent to two of the defendants in particular. This fact does not, in the Court's view,

14  alter the analysis. The 1993 letters in essence told the recipients, "we understand that you are

15  entering the SMIF pod field, we have patents in that field, don't infringe our patents." This kind

16  of generalized warning does not suffice for actual notice under § 287(a).

17  Asyst points to evidence that Defendants understood the 1993 letters to be charges of

18  infringement, and argues that this evidence creates at least a triable issue of material fact as to the

19  sufficiency of the letters under § 287(a). However, the law is clear that "[t]he correct approach to

20  determining notice under section 287 must focus on the action of the patentee, not the knowledge

21  or understanding of the infringer." *Amsted*, 24 F.3d at 187. "[W]hether or not the alleged

22  infringer subjectively believed that the patentee's letter was a charge of infringement has no

23  bearing on the adequacy of notice." *Gart v. Logitech*, 254 F.3d 1334, 1346 (Fed. Cir. 2001).

24  Thus Defendants' response to the 1993 letters is irrelevant for purposes of determining whether

25  those letters provided actual notice under § 287(a).

26  **B.   Constructive Notice**

27  Asyst claims that it has continuously and consistently marked the Smart Tag component

28  of its patented system since April 1994. Jenoptik asserts that no reasonable trier of fact could

7

1  find for Asyst on this issue based upon the evidence in the record.

2          A patent holder may provide constructive notice of its patents by marking its products

3  with the word "patent" or the abbreviation "pat." along with the patent number.  35 U.S.C. §

4  287(a).  In order to satisfy the marking statute, the patent holder must show by a preponderance

5  of evidence that substantially all of the patented products being distributed were marked, and that

6  once marking was begun, the marking was substantially consistent and continuous.  *Nike , Inc. v.*

7  *Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1446 (Fed. Cir. 1998).

8          Asyst has presented evidence from which a reasonable trier of fact could find in its favor

9  on this issue.  Anthony Bonara, Asyst's Senior Vice President and Chief Technical Officer, was

10  disclosed as Asyst's Rule 30(b)(6) witness with respect to marking.  During his deposition,

11  Bonara testified extensively with respect to Asyst's marking practices.  Specifically, Bonara

12  testified that Asyst marks its products with a patent "pending" designation when it first ships

13  those products, and converts the labels to a patent "issued" designation once Asyst becomes

14  aware that a patent is going to issue.  Bonara Depo, 11:16 - 14:3.  He further testified that Asyst

15  marked Smart Tags with a patent "pending" designation beginning in 1990, but began marking

16  Smart Tags with the actual patent number after the patents issued.  *Id.*  Bonara stated that he

17  believed that the change occurred during the 1993-94 time frame, that he believed the Smart Tag

18  currently was marked with the actual patent number, and that once the change to marking with an

19  actual patent number was made, it was Asyst's practice to so mark all future products in the same

20  manner.  *Id.*

21          Jenoptik asserts that Bonara's deposition testimony is equivocal, highlighting portions of

22  the testimony in which Bonara used phrases such as that he "believed" Asyst began marking

23  Smart Tags with the actual patent number in the 1993-94 time frame, and that it was his

24  "assumption" that Asyst followed its standard practice of marking all Smart Tags with the patent

25  number thereafter.  Bonara Depo, 13:24-14:3.  While these portions of Bonara's testimony do

26  appear somewhat equivocal, the equivocations go to the weight of Bonara's testimony, not its

27  admissibility.

28          Moreover, as Asyst points out, Jenoptik complained about the adequacy of Bonara's

8

1   testimony shortly after the deposition, and the parties agreed that Asyst would provide a

2   supplemental interrogatory response in lieu of further deposition of Bonara.  In that supplemental

3   response, Asyst stated unequivocally that "[F]rom April 1994 on, Asyst has consistently marked

4   its Smart Tags with label's [sic] bearing the '166 and '421 patent numbers."  Asyst's Suppl.

5   Resp. To Interrog. No. 23.  Asyst's response states that examples of such labels are depicted by

6   ATI 079911 and 079915.  Jenoptik asserts that the labels in question contain serial numbers

7   revealing the date of the product, because the serial numbers are encoded in the form of the week

8   (WW) and year (YY).  Jenoptik argues that ATI 079915 bears the serial number 2597, meaning

9   the twenty-fifth week of 1997, or mid-June 1997, after this lawsuit was filed.  Jenoptik claims

10  that ATI 079915 thus does not provide evidence of proper pre-suit labeling.  In response, Asyst

11  asserts that the dates in the serial numbers represent weeks of the *fiscal year*, rather than the

12  calendar year.  The twenty-fifth week of the fiscal year would be September 1996, prior to the

13  filing of this lawsuit.

14          Asyst also presents the declarations of two employees, Dan Fritschen (a senior director of

15  product development) and Kirk Garrison (an operations manager), both of whom state that Asyst

16  consistently marked its Smart Tags with patent numbers beginning in April 1994.  Garrison's

17  declaration is accompanied by examples of properly marked Smart Tags from June 1995, January

18  1996 and December 1996.  Asyst objects to the declarations of Fritschen and Garrison on the

19  ground that they were not employed at Asyst in 1994, and objects to the labels attached to the

20  Garrison declaration on the ground that they were not previously produced.  The fact that

21  Fritschen and Garrison were not employed by Asyst in 1994 affects the weight of their testimony,

22  but given their positions at Asyst they do have sufficient personal knowledge to testify as to

23  Asyst's marking practices and their understanding of how Asyst marked beginning in 1994.  This

24  is particularly true with respect to Garrison, whose statements are supported by documentary

25  evidence of proper marking in the 1995-1996 time frame.  With respect to Jenoptik's objection to

26  this documentary evidence, it appears that the labels were recently discovered.  Under these

27  circumstances, the Court is not prepared to exclude the labels absent a sufficient showing of

28  prejudice, which Jenoptik has not made.

Case No. C 98-20451 JF
ORDER (1) GRANTING PARTIAL SUMMARY JUDGMENT OF NO WILLFUL INFRINGEMENT ETC.
(JFLC2)

In summary, while Jenoptik has highlighted a number of weaknesses in Asyst's evidence of consistent and continuous marking of its Smart Tags since 1994, the Court concludes that these weaknesses go to the weight of the evidence rather than its admissibility. The evidence as a whole is sufficient to create a triable issue of material fact as to whether Asyst's marking of its Smart Tags was adequate to provide constructive notice as required under § 287(a). Accordingly, the Court will deny Jenoptik's motion for partial summary judgment on the issue of pre-suit damages.

## III. INVALIDITY

Jenoptik seeks leave to amend its answer to assert the defense that the '421 patent is invalid for double patenting. Jenoptik also seeks leave to amend its invalidity contentions to assert that the '421 patent is invalid for obviousness and anticipation in light of United States Patent No. 4,588,880 ("Hesser"). Finally, Jenoptik seeks summary judgment of invalidity based upon its new double patenting defense and based upon obviousness and anticipation in light of Hesser.

The Federal Circuit has held that a change in claim construction may be sufficient to entitle the alleged infringer to raise new invalidity challenges. *See Johns Hopkins University v. CellPro, Inc.*, 152 F.3d 1342 (Fed. Cir. 1998). In *Johns Hopkins*, the district court construed certain claim terms post-trial and, based upon those new constructions, granted judgment of infringement as a matter of law but also granted a new trial regarding validity. In light of the new claim construction, the alleged infringer attempted to introduce a new prior art reference to demonstrate invalidity for obviousness or anticipation. The district court refused to allow the new reference on the ground that the alleged infringer had failed to list the reference prior to trial. The Federal Circuit held that the district court's refusal to allow the new reference was an abuse of discretion because the district court's new claim construction had "changed the rules of the game." *Id.* at 1357. Specifically, the Federal Circuit held that when the district court rendered its new claim construction, new prior art became potentially relevant to the validity of the claims. *Id.*

Similarly, in the present case, the Federal Circuit effected a significant change in claim

10

construction on the last appeal.  This Court had held that the structure in the specification of the '421 patent corresponding to the "sensing means" included local microcomputer 20, and had granted summary judgment of noninfringement on the ground that Jenoptik's accused system does not contain that structure or its equivalent.  The Federal Circuit held that the local microcomputer was not structure corresponding to the "sensing means" limitation, and that the only structure corresponding to the "sensing means" limitation is the communication means. *Asyst Tech., Inc. v. Emtrak, Inc.*, 402 F.3d 1188, 1196-97 (Fed. Cir. 2005).  This change in construction meant that in order to establish invalidity, Jenoptik no longer would have to show that prior art disclosed a local processor.  Based upon this change in construction, Jenoptik now believes that it can prevail upon new invalidity defenses.

After reviewing the procedural history of the case, the Court is satisfied that the Federal Circuit's change in claim construction "changed the rules of the game" as contemplated in *Johns Hopkins* and thus that Jenoptik should be permitted to raise new invalidity defenses and contentions based upon that change.  Asyst argues that Jenoptik could have raised its defenses and contentions earlier, and that it will be prejudiced if Jenoptik is permitted to raise new defenses and contentions now.  However, as this Court previously recognized, Jenoptik explicitly notified Asyst and the Court of its desire to raise new invalidity defenses based upon new prior art at the June 3, 2005 Case Management Conference following remand from the Federal Circuit. In particular, counsel for Jenoptik stated that, "in doing that, in changing that claim construction it now brings some other issues into play in regard to the validity because pieces of prior art that did not disclose those additional structures may not balance --." Hrg. Trans. 6/3/05 7:20 - 8:1. The Court cut counsel off, and indicated that it would prefer to proceed first with infringement motions and then take up issues of invalidity if necessary.  *Id.* at 8:2-20.  Asyst thus had notice as of June 2005 that Jenoptik believed that new prior art would be relevant to the invalidity question.  Asyst has not identified any particular prejudice it will suffer if Jenoptik in fact is permitted to amend its invalidity defenses and contentions.  Accordingly, the Court will permit the requested amendments.

## A.     Anticipation In Light Of Hesser

A patent claim is anticipated if "each limitation of the claim is found in a single reference, either expressly or inherently." *Atofina v. Great Lakes Chem. Corp.*, 441 F.3d 991, 999 (Fed. Cir. 2006).  "Inherent anticipation requires that the missing descriptive material is necessarily present, not merely probably or possibly present, in the prior art." *Trintec Indus., Inc. v. Top-U.S.A. Corp.*, 295 F.3d 1292, 1295 (Fed. Cir. 2002).  It is not sufficient that the missing limitation is so similar to a limitation actually disclosed in the reference that one of ordinary skill in the art would see the substitution as obvious; "obviousness is not inherent anticipation." *Id.* at 1296.

Here, Jenoptik contends that Hesser discloses each and every element of claims 2 and 11-14 of the '421 patent except for the multiplexer (the "selection means").  Instead of a multiplexor, Hesser discloses a bus.  Jenoptik argues that because one of ordinary skill in the art would know that Hesser's bus could be replaced by a multiplexer, claims 2 and 11-14 of the '421 patent were inherently anticipated by Hesser.  However, as noted above, inherent anticipation requires that the missing element be "necessarily" present in the reference, and that this element is not met simply because one skilled in the art would see as obvious the substitution of the missing element for the element actually disclosed in the reference. *See Trintec*, 295 F.3d at 1296.  Accordingly, Jenoptik has failed to demonstrate anticipation in light of Hesser.

## B.     Obviousness In Light Of Hesser

A patent claim is invalid "if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art."  35 U.S.C. § 103(a).  Several factual inquiries underlie the ultimate legal determination of obviousness:  the scope and content of the prior art, the level of ordinary skill in the field of the invention, the differences between the claimed invention and the prior art, and any objective evidence of non-obviousness such as long-felt need, and commercial success. *SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp.*, 225 F.3d 1349, 1355 (Fed. Cir. 2000).  "Because an issued patent is presumed valid, there must be clear and convincing evidence supporting the obviousness determination." *Id.*  A single

12

1    prior art reference may be sufficient to render a claim obvious.  *Id.* at 1356.  However, there must

2    be a suggestion or motivation to modify the teachings of that reference to the claimed invention.

3    *Id.*  "This suggestion or motivation may be derived from the prior art reference itself, from the

4    knowledge of one of ordinary skill in the art, or from the nature of the problem to be solved."  *Id.*

5         Similarly, in order for a claim to be found invalid based upon a combination of

6    references, there must be a motivation to combine.  *Beckson Marine, Inc. v. NFM, Inc.*, 292 F.3d

7    718, 727 (Fed. Cir. 2002).  The Federal Circuit "has identified three possible sources for a

8    motivation to combine references: the nature of the problem to be solved, the teachings of the

9    prior art, and the knowledge of persons of ordinary skill in the art."  *Id.*

10        As stated above, Jenoptik contends that Hesser discloses each and every element of

11   claims 2 and 11-14 of the '421 patent except for the multiplexer (Hesser instead discloses a bus).

12   Assuming without deciding that Jenoptik is correct in this contention,[2] the Court concludes that

13   there is a triable issue of material fact as to whether one of ordinary skill in the art would have

14   been motivated to modify Hesser by substituting a multiplexer for the bus.  While Jenoptik's

15   expert opines that a person of ordinary skill in the art would be familiar with multiplexers and

16   would be motivated to substitute a multiplexer for Hesser's bus, *see* Alpert Decl. ¶¶ 23, 39,

17   Asyst's expert offers a contrary conclusion, *see* Faillace Report at 13; Faillace Decl. ¶¶ 41-42,

18   51.  Accordingly, Jenoptik has failed to establish that any reasonable trier of fact would be

19   compelled on this record to find obviousness by clear and convincing evidence.

20   **C.    Double Patenting**

21        The doctrine of nonstatutory double patenting, also referred to as obviousness-type

22   double patenting, is a judge-made doctrine developed to preclude patentees from obtaining a later

23   patent on an obvious variation of an earlier patent and thus improperly extending the life of the

24   earlier patent.  *In re Berg*, 140 F.3d 1428, 1431-32 (Fed. Cir. 1998).  Under the "one-way" test, it

25   must be determined whether the later patent's claims are obvious in light of the earlier patent's

26   claims.  *Id.* at 32.  Under the "two-way" test, it must also be determined whether the earlier

27

28
         ────────────────────
         [2] Asyst contends that Hesser fails to disclose other elements of claims 2 and 11-14.

Case No. C 98-20451 JF
ORDER (1) GRANTING PARTIAL SUMMARY JUDGMENT OF NO WILLFUL INFRINGEMENT ETC.
(JFLC2)

1   patent's claims are obvious in light of the later patent's claims. *Id.* The purpose of the "two-

2   way" test is to "prevent rejections for obviousness-type double patenting when the applicants

3   filed first for a basic invention and later for an improvement, but, through no fault of the

4   applicants, the PTO decided the applications in reverse order of filing, rejecting the basic

5   application although it would have been allowed if the applications had been decided in the order

6   of their filing." *Id.* The "two-way" test is appropriate only when the PTO is *solely* responsible

7   for the delay that caused the second-filed application to issue prior to the first-filed application.

8   *Eli Lilly & Co. v. Barr Labs, Inc.*, 251 F.3d 955, 968 n.7 (Fed. Cir. 2001).

9          Jenoptik contends that every element of claims 2 and 11-14 of Asyst's '421 patent are

10  disclosed in claims 8 and 11 of Asyst's earlier issued '166 patent, and thus that under the "one-

11  way" test claims 2 and 11-14 are invalid for double patenting. Asyst contends that the "two-

12  way" test is appropriate in this case, because the PTO examined its patent applications out of

13  order and issued the '166 patent first after delaying prosecution of the '421 patent for more than

14  two years. Jenoptik contends that the delay in prosecution of the '421 patent is attributable to

15  Asyst, and thus that the "two-way" test is not appropriate. The Court agrees with Jenoptik. The

16  file history shows that Asyst's own prosecution errors caused the bulk of the delay in prosecution

17  of the '421 patent. Accordingly, the Court will apply the "one-way" test here.

18         Under the one-way test, if the scope of the later patent's claims and the earlier patent's

19  claims are not identical, "the court must ask whether the former defines merely an obvious

20  variation of the latter." *Berg*, 140 F.3d at 1432. This determination is a question of law, which

21  the Court resolves by construing the claims at issue and comparing them. *Georgia-Pacific Corp.*

22  *by United States Gypsum Co.*, 195 F.3d 1322, 1326 (Fed. Cir. 2000).

23         Independent claim 2 of the '421 patent reads in its entirety as follows:

24         2. An inventory management system comprising:

25         (1) At least one transportable container for transporting articles, said at least one
           container including mounted thereon,

26

27                (a) first two-way communication means,

28                (b) first microcomputer means for receiving and processing digital
                  information communicated with said first two-way communication

14

means, and

> (c) storage means for storing digital information processed by said microcomputer means;

(2) a plurality of respective sensing means for sensing the presence of said at least one transportable container, each respective sensing means including respective second two-way communication means adapted for two-way communication with said first two-way communication means;

(3) selection means for selecting between respective sensor means of said plurality;

(4) central processor means coupled to said selection means for receiving digital information from and for providing digital information to respective two-way communication means of respective sensor means of said plurality.

It is undisputed that limitations 1, 1(a), 1(b) and 1(c) of claim 2 of the '421 patent are disclosed in claim 8 of the '166 patent. It likewise is undisputed that all additional limitations of dependent claims 11-14 of the '421 patent are disclosed in claim 8 of the '166 patent. The parties' dispute focuses on whether limitations 2, 3 and 4 of the '421 patent are disclosed in the '166 patent. Jenoptik claims that all of these limitations are disclosed in a single limitation of the '166 patent: "a storage station including means ... for providing communication between the data processing means provided on the transportable container and the central processing unit." Jenoptik defines the function of the '166 limitation as "to provide communication between the data processing means provided on the transportable container and the central processing unit." Jenoptik argues that the structures that perform this function in the '166 patent are essentially identical to the structures that perform the functions of limitations 2, 3 and 4 of the '421 patent. Specifically, Jenoptik argues that the structures making up the communication "path" in the '166 patent include a transmitter and receiver (the structure corresponding to limitation 2 of the '421 patent), a multiplexer (the structure corresponding to limitation 3 of the '421 patent) and a central control processor such as an IBM personal computer (the structure corresponding to limitation 4 of the '421 patent).

While Jenoptik's argument has considerable merit, the Court concludes that ultimately it goes too far. In order for a means-plus-function limitation to be literally found in a reference, the reference "must disclose the recited function identically." *Transclean Corp. v. Bridgewood*

15

1  *Services, Inc.*, 290 F.3d 1364, 1372 (Fed. Cir. 2002) (addressing presence of limitation in

2  reference in context of anticipation analysis).  Jenoptik has not demonstrated that claim 8 of the

3  '166 patent discloses the identical *functions* of limitations 2, 3 and 4 of claim 2 of the '421

4  patent.  For example, the '166 patent does not appear to disclose the functions of limitation 2 of

5  claim 2, which have been defined as "sensing the presence of at least one transportable

6  container" and "to transmit and receive communications between the sensing means and the first

7  two-way communication means."  Jenoptik argues that these functions are rolled into the more

8  broadly defined function of "providing communication" set forth in claim 8 of the '166 patent.

9  However, because the functions of limitation 2 of claim 2 are not disclosed identically in claim 8,

10  the Court concludes that limitation 2 of claim 2 is not present in claim 8.

11      Accordingly, and acknowledging explicitly that it is a close call, the Court will deny

12  Jenoptik's motion for summary judgment of invalidity for double patenting.

13                              **IV. ORDER**

14  (1)  Jenoptik's motion for partial summary judgment on the issue of willfulness is
          GRANTED;

15

16  (2)  Jenoptik's motion for partial summary judgment on the issue of pre-suit damages
          is DENIED; and

17  (3)  Jenoptik's motion for summary judgment of invalidity for anticipation,
          obviousness and nonstatutory double patenting is DENIED.

23  DATED:  11/14/06

24                              _____

25                              JEREMY FOGEL
                                United States District Judge

16

Case No. C 98-20451 JF
ORDER (1) GRANTING PARTIAL SUMMARY JUDGMENT OF NO WILLFUL INFRINGEMENT ETC.
(JFLC2)

1  Copies of Order served on:

2

3  Joseph Stephen Belichick     jbelichick@fenwick.com

4  David Leon Bilsker     bilskerd@howrey.com, fabianj@howrey.com

5  Henry C. Bunsow     bunsowh@howrey.com, lim@howrey.com

6  Michael J. Sacksteder     msacksteder@fenwick.com

7  David Douglas Schumann     dschumann@fenwick.com, ncarroll@fenwick.com

8  Daniel T. Shvodian     shvodiand@howrey.com, HockinL@howrey.com; cranes@howrey.com

9  James F. Valentine     valentinej@howrey.com, hockinl@howrey.com

10  Darryl M. Woo     dwoo@fenwick.com, anolen@fenwick.com; vschmitt@fenwick.com

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 98-20451 JF
ORDER (1) GRANTING PARTIAL SUMMARY JUDGMENT OF NO WILLFUL INFRINGEMENT ETC.
(JFLC2)