

FILED

JAN 31 – 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

## Jury Instruction No. 1

## Duties Of Jury To Find Facts And Follow Law

Members of the jury, now that you have heard all the evidence and the arguments of the attorneys, it is my duty to instruct you on the law which applies to this case. A copy of these instructions will be available in the jury room for you to consult if you find it necessary.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. You must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath promising to do so at the beginning of the case.

In following my instructions, you must follow all of them and not single out some and ignore others; they are all equally important. You must not read into these instructions or into anything the court may have said or done any suggestion as to what verdict you should return – that is a matter entirely up to you.

## Jury Instruction No. 2

## What Is Evidence

The evidence from which you are to decide what the facts are consists of:

    (1)    the sworn testimony of any witness;

    (2)    the exhibits which have been received into evidence; and

    (3)    any facts to which the lawyers have agreed or stipulated.

## Jury Instruction No. 3

## What Is Not Evidence

The following things are not evidence, and you must not consider them as evidence in deciding the facts of this case:

(1) statements and arguments of the attorneys;

(2) questions and objections of the attorneys;

(3) testimony that I instruct you to disregard; and

(4) anything you may see or hear when the court is not in session even if what you see or hear is done or said by one of the parties or by one of the witnesses.

## Jury Instruction No. 4

## Direct And Circumstantial Evidence

Evidence may be direct or circumstantial. Direct evidence is direct proof of a fact, such as testimony by a witness about what the witness personally saw or heard or did. Circumstantial evidence is proof of one or more facts from which you could find another fact. You should consider both kinds of evidence. The law makes no distinction between the weight to be given to either direct or circumstantial evidence. It is for you to decide how much weight to give to any evidence.

## Jury Instruction No. 5

## Credibility Of Witnesses

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)     the opportunity and ability of the witness to see or hear or know the things testified to;

(2)     the witness' memory;

(3)     the witness' manner while testifying;

(4)     the witness' interest in the outcome of the case and any bias or prejudice;

(5)     whether other evidence contradicted the witness' testimony;

(6)     the reasonableness of the witness' testimony in light of all the evidence; and

(7)     any other factors that bear on believability.

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify.

## Jury Instruction No. 6

## Opinion Evidence, Expert Witnesses

You have heard testimony from persons who, because of education or experience, are permitted to state opinions and the reasons for those opinions.

Opinion testimony should be judged just like any other testimony. You may accept it or reject it, and give it as much weight as you think it deserves, considering the witnesses' education and experience, the reasons given for the opinions, and all the other evidence in the case.

## Jury Instruction No. 7

## Charts And Summaries Not Received In Evidence

Certain charts and summaries that have not been received in evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. They are not themselves evidence or proof of any facts. If they do not correctly reflect the facts or figures shown by the evidence in the case, you should disregard these charts and summaries and determine the facts from the underlying evidence.

## Jury Instruction No. 8

## Charts And Summaries In Evidence

Certain charts and summaries have been received into evidence to illustrate information brought out in the trial.  Charts and summaries are only as good as the underlying evidence that supports them.  You should, therefore, give them only such weight as you think the underlying evidence deserves.

## Jury Instruction No. 9

## Burden Of Proof – Preponderance Of Evidence

When a party has the burden of proof on any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim or affirmative defense is more likely true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

### Jury Instruction No. 10

### Burden Of Proof – Clear And Convincing Evidence

When a party has the burden of proof on any claim or affirmative defense by clear and convincing evidence, it means you must be persuaded by the evidence that it is highly probable that the claim or affirmative defense is true. The clear and convincing evidence standard is a heavier burden than the preponderance of the evidence standard.

You should base your decision on all of the evidence, regardless of which party presented it.

## Jury Instruction No. 11

## Summary Of Contentions

I will give you a summary of each side's contentions in this case. I will then tell you what each side must prove to win on each of its contentions. As I previously told you, Asyst seeks money damages from Jenoptik for allegedly infringing claims 2 and 11-14 of the '421 patent by making, exporting, using, selling, and offering for sale the IridNet System. Asyst also argues that Jenoptik has infringed the '421 patent by having sold the IridNet System overseas. Asyst further seeks to prove the amount of damages for the alleged infringement.

Jenoptik contends that the asserted claims are invalid. Jenoptik further denies that it has intentionally infringed the asserted claims of the patent by supplying products outside of the United States.

Your job is to decide whether the asserted claims of the '421 patent have been infringed by the overseas sales and whether any of the asserted claims of the patent are invalid. If you decide that any claim of the patent has been infringed by the overseas sales and is not invalid, you will then need to decide any money damages to be awarded to Asyst to compensate it for the infringement.

## Jury Instruction No. 12

## Summary Judgment of Infringement

The Court has already found that Jenoptik's IridNet System as installed at VLSI in San Jose, California infringes claims 2, 11, 12, 13 and 14 of the '421 patent.  You must accept this fact as true.

## Jury Instruction No. 13

## The Role Of The Claims Of A Patent

Before you can decide many of the issues in this case, you will need to understand the role of patent "claims."

The patent claims are the numbered sentences at the end of each patent. The claims are important because it is the words of the claims that define what a patent covers. The figures and text in the rest of the patent provide a description and/or examples of what the patent may cover, but it is the claims that define just how broad or narrow the patent's coverage actually is.

Each claim is effectively treated as if it was its own patent, and each claim can cover more or less than another claim. Therefore, what a patent covers depends, in turn, on what each of its claims cover. You will first need to understand what each claim covers in order to decide whether there is infringement of the patent or to decide whether the patent is invalid.

## Jury Instruction No. 14

## How A Claim Defines What It Covers

I will now explain how a claim defines what it covers.

A claim defines what it covers by setting forth, in words, a set of requirements. Each claim sets forth its requirements in a single sentence. If a device or a method meets those requirements, then it is covered by that claim.

For example, a claim that reads: "A product comprising a seat and legs" covers all products that have both a seat and legs. The word "comprising" in this claim is a special word in patent law meaning that the claim covers all products that have a seat and legs, regardless of whether they also have other features. For example, this claim would cover several different kinds of chairs, stools, and sofas, because there are several different kinds of chairs, stools, and sofas that have at least a seat and legs. The claims in this case are more complicated than this example, but the same principles apply.

There can be several claims in a patent. Each claim can provide narrower or broader coverage than another claim by setting forth more or less requirements. Therefore, the coverage of a patent is assessed claim-by-claim.

In patent law, the requirements of a claim are often referred to as "claim elements" or "claim limitations." When a thing (such as a product or a process) meets all of the requirements of a claim, the claim is said to "cover" that thing, and that thing is said to "fall within the scope of" that claim.

Sometimes the words in a patent claim are difficult to understand, and therefore it is difficult to understand what requirements those words impose. It is my job to explain to you the meaning of the words in the claims and the requirements those words impose, just as I explained the meaning of the word "comprising" in my example of the claim covering chairs, stools, and sofas. By understanding the meaning of the words in the claims and by understanding that the words in a claim set forth the requirements that

must be met in order to be covered by that claim, you will be able to understand the scope of coverage for each claim.

Once you understand what each claim covers, then you are prepared to decide the issues that are yours to decide, such as infringement and invalidity.

## Jury Instruction No. 15

## Interpretation Of Claims

I have interpreted the meaning of some of the language in the patent claims involved in this case. You must accept those interpretations as correct. For those words in the claim for which I have not provided you with a definition, you should apply their plain English meaning. My interpretation of the language should not be taken as an indication that I have a view regarding the issues of infringement and invalidity. The decisions regarding infringement and invalidity are yours to make.

I will now instruct you how those words are to be construed and understood when deciding the issues of infringement and invalidity. In Asyst's '421 patent, the claim terms have the following meanings:

| CLAIM 2 OF THE '421 PATENT | CLAIM CONSTRUCTION |
|---|---|
| An inventory management system comprising: | This is not a limitation of the claim and is not to be considered in determining infringement or validity. |
| "(1) at least one <u>transportable container</u> for transporting articles, said at least one container including mounted thereon . . ." | A container for holding one or more articles that may be moved or conveyed from one place to another. |
| "(a) <u>first two-way communication means</u>" | <u>Function</u>: "to transmit and receive communications between the transportable container and the workstation." <br><br> <u>Corresponding Structures</u>: "a transmitter such as light-emitting diode 44 and a receiver such as a photosensitive transistor 52." |
| "(b) <u>first microcomputer means</u> for receiving and processing digital information communicated with said first two-way communication means, and" | <u>Function</u>: "receiving and processing digital information communicated with the first two-way communication means." <br><br> <u>Corresponding Structure</u>: "a microcomputer 101 or other data processing means." |
| "(c) <u>storage means</u> for storing digital information processed | <u>Function</u>: "to store digital information processed by the first microcomputer means." |

| CLAIM 2 OF THE '421 PATENT | CLAIM CONSTRUCTION |
|---|---|
| by said microcomputer means" | Corresponding Structure:  "PROM (programmable read-only memory) or other stable storage device, such as EPROM (electrically programmable read-only memory), EEPROM (electrically erasable programmable read-only memory), ROM (read-only memory), and RAM (random access memory)." |
| "(2) a plurality of respective sensing means for sensing the presence of said at least one transportable container, each respective sensing means including respective second two-way communication means adapted for communication with said first two-way communication means" | Function:  "sensing the presence of at least one transportable container" <br><br> Corresponding Structure: "communication means 50-1," which has "a transmitter such as light-emitting diode and a receiver such as a photosensitive transistor or other photo detector" <br><br> Function:  "to transmit and receive communications between the sensing means and the first two-way communication means." <br><br> Corresponding Structures:  "a transmitter such as light-emitting diode and a receiver such as a photosensitive transistor or other photo detector." |
| "(3) selection means for selecting between respective sensor means of said plurality" | Function:  "selecting between respective sensor means." <br><br> Corresponding Structure:  "a single multiplexer." |
| "(4) central processor means coupled to said selection means for receiving digital information from and providing information to respective two-way communication means of respective sensor means of said plurality." | Function:  "to receive digital information from and to provide digital information to the two-way communication means of the sensor means." <br><br> Corresponding Structure:  "a central control processor, such as an IBM compatible personal computer." |

| CLAIM 11 OF THE '421 PATENT | CLAIM CONSTRUCTION |
|---|---|
| "a clock, mounted on said at least one transportable container for generating real time data" | The term "clock" has its plain and ordinary meaning. |

| CLAIM 12 OF THE '421 PATENT | CLAIM CONSTRUCTION |
|---|---|
| "display means, mounted on said at least one transportable container, for displaying data from said first microcomputer means" | Function:  "to display data from the first microcomputer means."<br><br>Corresponding Structure:  "a 'display 160, such as an LED or liquid crystal display' that is carried on the data card 40 on the transportable container." |

| CLAIM 13 OF THE '421 PATENT | CLAIM CONSTRUCTION |
|---|---|
| "sensor means, mounted in communication with said first microprocessor means, for sensing a condition of said at least one transportable container" | Function:  "to sense a condition of the transportable container."<br><br>Corresponding Structure:  A sensor that senses a condition of the container. |

| CLAIM 14 OF THE '421 PATENT | CLAIM CONSTRUCTION |
|---|---|
| "said first  and each respective second two-way communication means include means for optical transmission and reception of data" | Function:  "optical transmission and reception of data."<br><br>Corresponding Structures:  "a transmitter such as a light-emitting diode and a receiver such as a photosensitive transistor." |

## Jury Instruction No. 16

## Infringement – Burden Of Proof

I will now instruct you on the rules you must follow in deciding whether Asyst has proven that Jenoptik has infringed one or more of the asserted claims of the '421 patent.  To prove infringement of any claim, Asyst must persuade you that it is more likely than not that Jenoptik has infringed that claim.

### Jury Instruction No. 17

### Direct Infringement

A patent's claims define what is covered by the patent. A product or method directly infringes a patent if it is covered by at least one claim of the patent.

Deciding whether a claim has been directly infringed is a two-step process. The first step is to decide the meaning of the patent claim. I have already made this decision, and I have already instructed you as to the meaning of the asserted patent claims. The second step is to decide whether Jenoptik has made, used, sold, offered for sale or exported from the United States a product covered by a claim of the '421 patent. You, the jury, make this decision.

With one exception, you must consider each of the asserted claims of the patent individually, and decide whether any of Jenoptik's overseas sales of the IridNet System infringes that claim. The one exception to considering claims individually concerns dependent claims. A dependent claim includes all of the requirements of a particular independent claim, plus additional requirements of its own.

## Jury Instruction No. 18

## Means-Plus-Function Claim

The asserted claims of the '421 patent include means-plus-function limitations.

A means-plus-function claim limitation describes a means for performing a particular function. To prove that an accused product or a prior art reference includes a structure that is covered by a means-plus-function limitation, two things must be proven. First, that the accused product or prior art reference contains a structure that performs the identical function to the function recited in the means-plus-function limitation. Second, that the structure of the accused product or prior art reference that performs that function is either identical or equivalent to the corresponding structure disclosed in the specification of the asserted claim.

Whether or not the structure of the accused product or prior art reference is equivalent to the structure disclosed in the asserted patent is decided from the perspective of a person of ordinary skill in the field of the invention. The parties have agreed on the qualifications of such a person for the purposes of this case. I will describe that person to you later. A structure is equivalent if such an ordinary skilled person would consider the differences between the accused structure and the structure in the patent to be insubstantial.

**Jury Instruction No. 19**

**Infringement Based Upon Sales To Overseas Customers**

Asyst asserts that Jenoptik infringe claims of the '421 patent by exporting components from the United States to a foreign country that were assembled into a system that infringes the asserted claims.

The Court has already found that Jenoptik's IridNet System as installed in the VLSI semiconductor fabrication plant in the United States infringes claims 2, 11, 12, 13 and 14 of the '421 patent. You should find that Jenoptik's export of components for use in foreign semiconductor fabrication plants also infringed the asserted claims of the '421 patent if you find that (1) the components exported were a substantial portion of the invention of any one of claims 2, 11, 12, 13 or 14, and (2) Jenoptik intended to induce the combination of the exported components into a system that infringes the asserted claims of the '421 patent, for example, by encouraging or helping a customer to combine the components in that way. A "substantial portion" does not depend solely on the number of elements supplied by defendants and does not mean substantially all elements.

If you find that Jenoptik actively induced the combination of the exported components into a system that defendants knew or should have known would result in infringement, you should find that Jenoptik infringed the asserted claims of the '421 patent in the event that you find that Jenoptik supplied those components from the United States. You should find that Jenoptik infringed the asserted claims of the '421 patent under these circumstances, even if Jenoptik did not believe that the combination of components would infringe the asserted claims.

Alternatively, you should find that Jenoptik's export of components for use in foreign semiconductor fabrication plants infringed the asserted claims of the '421 patent even if you find that the components exported by Jenoptik are not a substantial portion of the invention of claims 2, 11, 12, 13 or 14, as long as you find that (1) Jenoptik knew or

should have known that the components it supplied were especially made or adapted for use in a system that infringes the asserted claims, (2) those components have no substantial non-infringing use, and (3) Jenoptik intended the exported components be combined into that system. It is not necessary for you to find that the exported components actually were combined into an infringing system, as long as you find that Jenoptik intended the exported components to be combined.

A component is "especially made or adapted for use in a system that infringes the asserted claims of the '421 patent" where defendants knew that the component was specially designed or made for a particular use and were aware of the patent which prohibited that use. If Jenoptik was aware of the asserted claims of the '421 patent at the time the components meeting this definition were exported, then Jenoptik should have known that the use of the components in the system infringed the '421 patent. Jenoptik will have infringed the asserted claims of the '421 patent even if it did not believe that the use of the components in the system infringed those claims.

## Jury Instruction No. 20

## Invalidity – Burden Of Proof

I will now instruct you on the rules you must follow in deciding whether Jenoptik has proven that any of claims 2, 11, 12, 13 or 14 of the '421 patent are invalid.  To prove invalidity of any patent claim, Jenoptik must persuade you that it is highly probable that the claim is invalid.

The law presumes the claims of a United States patent to be valid.  The fact that the PTO grants a patent, however, does not necessarily mean the patent claims, in fact, describe something new or not obvious.  For example, the PTO may not have had available to it all of the relevant prior art or all of the information that was presented to you about the prior art.  For this reason, a person accused of infringement has the right to argue in court that a patent claim is invalid by showing, by clear and convincing evidence, that the prior art invalidates a claim on the basis of obviousness.

## Jury Instruction No. 21

## Obviousness

A patent claim is invalid if the claimed invention would have been obvious to a person of ordinary skill in the field at the time the application was filed as of May 18, 1987. This means that even if all of the requirements of the claim cannot be found in a single prior art reference that would anticipate the claim or constitute a statutory bar to that claim, a person of ordinary skill in the field of factory automation who knew about all this prior art would have come up with the claimed invention. The claimed invention is not obvious unless there was something in the prior art or within the understanding of a person of ordinary skill in the field that would teach, suggest to, or motivate one of ordinary skill in the art to arrive at the claimed invention. If more than one piece of prior art is used in combination, a teaching, suggestion or motivation to combine the pieces of prior art must be present either in the prior art itself, or within the knowledge of one of ordinary skill in the art at the time of the invention. You must be careful not to determine obviousness using the benefit of hindsight. You should put yourself in the position of a person of ordinary skill in the field at the time the invention was made and you should not consider what is known today or what is learned from the teaching of the patent.

Your conclusion about the question whether a claim is obvious must be based on several factual decisions that you must make. First, you must decide the scope and content of the prior art. Second, you must decide what difference, if any, exists between the claim and the prior art. Third, you consider the level of ordinary skill in the field that someone would have had at the time the claimed invention was made. Finally, you must consider any evidence that has been presented with respect to the following:

(1)     commercial success due to the merits of the claimed invention;

(2)     a long felt need for the solution provided by the claimed invention;

(3)     acceptance by others of the claimed invention as shown by praise from others in the field or from the licensing of the claimed invention.

The presence of any of the above considerations may be an indication that a claimed invention would not have been obvious at the time this invention was made. Although you must consider any evidence of these considerations, the importance of any of them to your decision on whether the claimed invention would have been obvious is up to you.

## Jury Instruction No. 22

## Scope And Content Of Prior Art

You must determine whether the references relied upon by Jenoptik should be included in the prior art you use to decide the validity of claims 2, 11, 12, 13 and 14 of the '421 patent. In order to be considered as prior art to the '421 patent, these references must be reasonably related to the claimed invention of that patent. A reference is reasonably related if it is in the same field as the claimed invention or is from another field that a person of ordinary skill in the field would look to in trying to solve the problem the named inventor was trying to solve.

## Jury Instruction No. 23

## Difference Between Prior Art And Invention

In reaching your conclusion as to whether or not claims 2, 11, 12, 13 or 14 would have been obvious at the time the claimed invention was made, you should consider any difference or differences between references that you find to be prior art and the claimed requirements.

# Jury Instruction No. 24

## Level Of Ordinary Skill In The Art

Several times in my instructions I have referred to a person of ordinary skill in the art.

A person of ordinary skill in the art in May of 1987 would have a bachelors degree in computer science, electrical engineering or industrial engineering, or would have acquired through experience the knowledge and skills equivalent to the knowledge and skills required for such a degree, and would have three to five years of subsequent experience applying or extending this knowledge and these skills. Such a person would also have knowledge and experience concerning at least some of the following: electrical engineering, printed circuit boards, queuing theory, computer hardware, computer software communication protocols, real time process control, computer networks, and computer architecture.

## Jury Instruction No. 25

## Motivation To Combine

A motivation to combine the teachings of prior art may be found: (1) in the prior art references themselves; (2) in the knowledge of those of ordinary skill in the art that certain references, or disclosures in those references, are of special interest or importance in the field; or (3) from the nature of the problem to be solved, leading inventors to look to references relating to the possible solutions to that problem.

## Jury Instruction No. 26

## Damages – Burden Of Proof

I will instruct you about the measure of damages. By instructing you on damages, I am not suggesting which party should win on any issue. However, as I instructed you previously, the Court has already ruled that Jenoptik's IridNet System infringes claims 2, 11, 12, 13 and 14 of the '421 as to its sale to VLSI. Should you find the asserted claims are not invalid, you must determine the amount of money damages to be awarded to Asyst to compensate it for that infringement. If you find that Jenoptik's overseas sales of the IridNet System infringed any valid claim of the '421 patent, you must then determine the amount of money damages to be awarded to Asyst to compensate it for the infringement.

The amount of those damages must be adequate to compensate Asyst for the infringement. A damages award should put the Asyst in approximately the financial position it would have been in had the infringement not occurred, but in no event may the damages award be less than a reasonable royalty. You should keep in mind that the damages you award are meant to compensate the Asyst and not to punish an infringer.

Asyst has the burden to persuade you of the amount of its damages. You should award only those damages that Asyst more likely than not suffered. While Asyst is not required to prove its damages with mathematical precision, it must prove them with reasonable certainty. Asyst is not entitled to damages that are remote or speculative.

### Jury Instruction No. 27

### Date Of Commencement For Damages

Asyst can recover damages for infringement that occurred only after Asyst gave notice of its patent rights.  It is Asyst's burden to prove by the more likely than not standard that it gave notice.

Asyst can give notice to the public in general by placing the word "patent" or the abbreviation "PAT" with the number of the '421 patent on substantially all of the products it sold that included the patented invention.  This type of notice is effective from the date Asyst began to mark substantially all of its products that use the patented invention with that patent number.  If Asyst did not mark substantially all of its products that use the patented invention with the patent number in a substantially consistent and continuous manner, then Asyst did not provide notice in this way.

If you find that Asyst did not mark in this way, then Asyst can only recover damages for infringement that occurred after it sued Jenoptik on October 28, 1996.

## Jury Instruction No. 28

## Lost Profits – Generally

In this case, Asyst seeks to recover lost profits for Jenoptik's sales of the IridNet system, or in the alternative, at least a reasonable royalty on Jenoptik's sales.

To recover lost profits for infringing sales, Asyst must show that but for the infringement there is a reasonable probability that it would have made sales that Jenoptik made of the infringing product.  Asyst must show the share of Jenoptik's sales that it would have made if the infringing product had not been on the market.

## Jury Instruction No. 29

## Lost Profits – Factors To Consider

Asyst is entitled to lost profits only if it proves all of the following:

(1)    that there was a demand for the patented product;

(2)    that there were no noninfringing substitutes, or, if there were, the number of the sales made by Jenoptik that Asyst would have made despite the availability of other acceptable noninfringing substitutes;

(3)    that Asyst had the manufacturing and marketing capacity to make any infringing sales actually made by the infringer and for which Asyst seeks an award of lost profits; and

(4)    the amount of profit that Asyst would have made if Jenoptik had not infringed.

## Jury Instruction No. 30

## Absence Of Acceptable Noninfringement Substitutes

In determining whether Asyst lost sales due to infringement, you must consider whether or not, if Jenoptik's infringing product were not available, some or all of the people who bought from Jenoptik would have bought a different, noninfringing product from somebody else, rather than buy from Asyst.

In deciding whether or not people who bought from Jenoptik would have bought a noninfringing product, you should consider whether or not there was such a demand for the patented aspects of the infringing product that purchasers would not have bought a noninfringing product.

## Jury Instruction No. 31

## Lost Profits – Collateral Sales

In this case, Asyst is seeking profits from sales of SMIF products and services, which it contends would have been sold along with its patented SMART-Traveler System.  The SMIF products are called collateral products.

To recover lost profits on sales of such collateral products, Asyst must prove two things.  First, that it is more likely than not that Asyst would have sold the collateral products but for the infringement.  Second, a collateral product and the patented product together must be analogous to components of a single assembly or parts of a complete machine, or they must constitute a functional unit.

## Jury Instruction No. 32

## Lost Profits – Price Erosion

Asyst can recover additional damages if it can show to a reasonable probability that, if there had been no infringement, Asyst would have been able to charge higher prices for some of its products.  In that case, you may also award as additional damages the amount represented by the difference between the amount of profits that Asyst would have made by selling its product at the higher price and the amount of profits Asyst actually made by selling its product at the lower price that Asyst charged for its product. This type of damage is referred to as price erosion damage.

If you find that Asyst suffered price erosion, you may also use the higher price in determining Asyst's lost profits from sales lost because of the infringement.  In calculating a patentee's total losses from price erosion, you must take into account any drop in sales that would have resulted from a higher price.

## Jury Instruction No. 33

## Reasonable Royalty – Entitlement

If Asyst has not proved its claim for lost profits, or has proved its claim for lost profits for only a portion of the infringing sales, then Asyst should be awarded a reasonable royalty for all infringing sales for which it has not been awarded lost profits damages.

## Jury Instruction No. 34

## Reasonable Royalty – Definition

A royalty is a payment made to a patent holder in exchange for rights to make, use or sell the claimed invention. A reasonable royalty is the payment that would have resulted from a negotiation between a patent holder and the infringer taking place at the time when the infringing sales first began. In considering the nature of this negotiation, the focus is on what the expectations of the patent holder and infringer would have been had they entered into an agreement at that time and acted reasonably in their negotiations. However, you must assume that both parties believed the patent was valid and infringed. In addition, you must assume that patent holder and infringer were willing to enter into an agreement; your role is to determine what that agreement would have been. The test for damages is what royalty would have resulted from the hypothetical negotiation and not simply what either party would have preferred.

You may not limit or increase the royalty based on the actual profits Jenoptik made.

## Jury Instruction No. 35

## Duty To Deliberate

When you begin your deliberations, you should elect one member of the jury as your presiding juror. That person will preside over the deliberations and speak for you here in court.

You will then discuss the case with your fellow jurors to reach agreement if you can do so. Your verdict must be unanimous.

Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to the views of your fellow jurors.

Do not be afraid to change your opinion if the discussion persuades you that you should. Do not come to a decision simply because other jurors think it is right.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not change an honest belief about the weight and effect of the evidence simply to reach a verdict.

## Jury Instruction No. 36

## Use Of Notes

Some of you have taken notes during the trial. Whether or not you took notes, you should rely on your own memory of what was said. Notes are only to assist your memory. You should not be overly influenced by the notes.

## Jury Instruction No. 37

## Communications With Court

If it becomes necessary during your deliberations to communicate with me, you may send a note through the marshal, signed by your presiding juror or by one or more members of the jury.  No member of the jury should ever attempt to communicate with me except by a signed writing; and I will communicate with any member of the jury on anything concerning the case only in writing, or here in open court.  If you send out a question, I will consult with the parties before answering it, which may take some time.  You may continue your deliberations while waiting for the answer to any question.  Remember that you are not to tell anyone – including me – how the jury stands, numerically or otherwise, until after you have reached a unanimous verdict or have been discharged.  Do not disclose any vote count in any note to the court.

## Jury Instruction No. 38

## Return Of Verdict

A verdict form has been prepared for you.  After you have reached unanimous agreement on a verdict, your presiding juror will fill in the form that has been given to you, sign and date it, and advise the court that you are ready to return to the courtroom.