**E-filed 08/03/07**

NOT FOR CITATION

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| ASYST TECHNOLOGIES, INC.,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>EMPAK, INC., et al.,<br><br>　　　　　　Defendants. | Case Number C 98-20451 JF (EAI)<br><br>ORDER[1] GRANTING DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW THAT CLAIMS 2 AND 11-14 OF U.S. PATENT NO. 5,097,421 ARE INVALID DUE TO OBVIOUSNESS |

　　　Following a trial in which the jury returned a verdict finding claims 2 and 11-14 of U.S. Patent No. 5,097,421 ("the '421 patent") valid and infringed, Defendants Jenoptik AG, Jenoptik InFAB, Inc., et. al. ("Jenoptik") moved for judgment as a matter of law ("JMOL") that claims 2 and 11-14 of the '421 patent are invalid due to obviousness, or alternatively for a new trial. Jenoptik also filed post-trial motions challenging the damages award and the jury's findings under 35 U.S.C. § 271(f). Asyst filed a motion for entry of judgment.

　　　After the initial briefing on the motions, the United States Supreme Court decided *KSR Int'l Co. v. Teleflex, Inc.*, 127 S.Ct. 1727 (2007). *KSR* addressed the Federal Circuit's legal standard for determining obviousness, which was the standard this Court applied in deciding

---

[1] This disposition is not designated for publication and may not be cited.

1  previous dispositive motions in the instant case and in instructing the jury.  At the direction of the
2  Court, the parties submitted supplemental briefs addressing the effect of *KSR* on the jury verdict.
3  The Court held oral argument on the issue on June 29, 2007.
4      After carefully considering the evidence adduced at trial, reviewing the submissions of
5  the parties, and hearing argument from counsel regarding the issue of obviousness in light of
6  *KSR,* the Court will grant Jenoptik's motion for JMOL pursuant to Fed. R. Civ. P. 50(b), on the
7  basis that claims 2 and 11-14 of the '421 patent are invalid due to obviousness.  The Court also
8  will grant conditionally Jenoptik's motion for a new trial, pursuant to Fed. R. Civ. P. 50(c) and
9  Fed. R. Civ. P. 59, in the event that the order granting JMOL is vacated or reversed on appeal.  In
10 light of these determinations, Jenoptik's remaining motions will be terminated without prejudice
11 and Asyst's motion for entry of judgment will be denied as moot.

**I. BACKGROUND**

13     This case involves a patent directed to a method for tracking articles used in a
14 manufacturing facility.  During production of integrated circuits, various tools are used to process
15 silicon wafers in multiple stages such that one processed layer is added to the wafer at a time.
16 The layers of the wafer must be processed in an ultra-clean environment, and in a particular
17 sequence.  To maintain the requisite environment, wafer lots are placed in sealed transportable
18 containers that sometimes are referred to as "pods."[2]  Human operators move the transportable
19 containers from tool to tool for the processing of each wafer layer.  The transportable containers
20 do not always travel the same path from tool to tool, because the sequence of tools used is
21 dictated by the particular circuit design.  It is critical that a transportable container be placed at
22 the correct tool at the correct point in time; otherwise, the wafers contained therein may be
23 damaged irreparably.  The inventors of the '421 patent set out to address a problem regarding the
24 identification of articles in transportable containers.
25     Independent claim 2 of the '421 patent reads as follows:

---

[2] This order uses the terms "pod," "transportable container" and "container" interchangeably.

      2. An inventory management system comprising:

    (1) At least one transportable container for transporting articles, said at least one container including mounted thereon,

        (a) first two-way communication means,

        (b) first microcomputer means for receiving and processing digital information communicated with said first two-way communication means, and

        (c) storage means for storing digital information processed by said microcomputer means;

    (2) a plurality of respective sensing means for sensing the presence of said at least one transportable container, each respective sensing means including respective second two-way communication means adapted for two-way communication with said first two-way communication means;

    (3) selection means for selecting between respective sensor means of said plurality;

    (4) central processor means coupled to said selection means for receiving digital information from and for providing digital information to respective two-way communication means of respective sensor means of said plurality.

Claims 11-14 are dependent claims depending from independent claims 1 or 2 and adding further limitations.

      Asyst filed the instant action on October 28, 1996, alleging that Jenoptik was infringing two of Asyst's patents, the '421 patent and United States Patent No. 4,974,166 ("the '166 patent"). This Court granted summary judgment of noninfringement as to both patents in June 2000. Following appeal by Asyst, the Federal Circuit reversed and remanded for further proceedings. *Asyst Tech., Inc. v. Empak, Inc.*, 268 F.3d 1364, 1374-76 (Fed Cir. 2001). On August 8, 2002, this Court dismissed the claims and counterclaims relating to the '166 patent pursuant to the stipulation of the parties. This Court subsequently held a claim construction hearing[3] with respect to the '421 patent and on February 28, 2003 issued an order construing the claims of the '421 patent. On October 9, 2003, this Court again granted summary judgment of noninfringement. Following a second appeal by Asyst, the Federal Circuit affirmed the grant of

---

[3] The Court had not previously held a claim construction hearing, but rather had construed certain terms in connection with the parties' cross-motions for summary judgment.

3

summary judgment with respect to independent claim 1 of the '421 patent and its dependent claims, but reversed and remanded with respect to independent claim 2 of the '421 patent and its dependent claims 11-14. *Asyst Tech., Inc. v. Emtrak, Inc.*, 402 F.3d 1188, 1198 (Fed. Cir. 2005). The Federal Circuit also modified certain aspects of this Court's construction of the terms of claim 2. *Id.* at 1196-97.

The case subsequently was set for a jury trial. Prior to trial, Jenoptik filed three motions for summary judgment or partial summary judgment including a motion for partial summary judgment that Jenoptik did not willfully infringe the asserted claims of the '421 patent, a motion for partial summary judgment that Asyst could not recover pre-suit damages, and a motion for summary judgment of invalidity based on anticipation, obviousness, or double patenting of the asserted claims in light of the Federal Circuit's 2005 revisions to this Court's claim construction order. The Court granted the motion for partial summary judgment based on willfulness, denied the motion for partial summary judgment on the issue of pre-suit damages, and denied Jenoptik's motion for summary judgment of invalidity of the asserted claims. With respect to the issue of obviousness, the Court found based on the then-existing case law that "there [was] a triable issue of material fact as to whether one of ordinary skill in the art would have been motivated to modify Hesser by substituting a multiplexer for the bus." Order of November 14, 2006 at 13:13-14. Trial commenced on January 30, 2007. The jury returned a verdict finding claims 2 and 11-14 of the '421 patent valid and infringed. As it was instructed to do by the Court, the jury made special findings with respect to certain factual issues underlying the legal question of obviousness.

Both in its motion for summary judgment and at trial, Jenoptik alleged that a prior art patent, U.S. Patent No. 4,588,880 ("the Hesser patent") rendered the claims obvious to one of ordinary skill in the art given known technology at the time the application for the '421 patent was filed. The Hesser patent was granted more than one year before the filing date of the '421 patent. Like the '421 patent, it is directed to a method of tracking articles used in a manufacturing facility. It addresses the identical problem that bar codes contain static

information that cannot be updated throughout the manufacturing process. Like the '421 patent, the Hesser patent solves that problem by placing a microcomputer, memory, and an optical means for communication in an electronic tag mounted on a transportable container. The principal difference between the Hesser patent and the '421 patent is that Hesser uses a bus to connect a central computer to the devices that communicate with the tags on the containers, while the '421 patent uses a multiplexer.

Jenoptik argued that it would have been obvious to a person of ordinary skill in the art to substitute a multiplexer for a bus. While the Hesser patent was directed to factory automation utilizing a conveyor belt, and the '421 patent addresses a particular problem in the semiconductor industry where humans move articles from station to station, claim 2 of the '421 patent has been construed both by this Court and by the Federal Circuit as applicable to a factory automated process generally. Indeed, during prosecution of the '421 patent, the Hesser patent was identified as prior art by the United States Patent Office ("PTO") and examined in relation to certain claims, though not the claim that eventually resulted in issued claim 2. Claim 2 is currently the subject of a reexamination proceeding before the PTO based on the Hesser reference.

Despite the fact that the Hesser patent was considered to be prior art by the PTO, and the trial testimony of technical experts on both sides that it was relevant prior art, the jury determined that the Hesser patent was not relevant prior art for the purposes of the obviousness inquiry. The jury found that Jenoptik had infringed the asserted claims of the '421 patent and awarded Asyst $74.7 million in damages, including $31.5 million for lost sales made by Jenoptik and $43.2 million for price erosion.

At the close of Asyst's case, Jenoptik moved for a directed verdict under Fed. R. Civ. P. 50(a). The Court took that motion under submission. Following the verdict, Jenoptik renewed its Rule 50 motion, and also filed the instant motions for JMOL under Fed. R. Civ. P. 50(b) or for a new trial.

## II. JMOL STANDARD

A Rule 50(b) JMOL is proper when the evidence allows only one reasonable conclusion

5

Case No. C 98-20451 JF (EAI)
ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW THAT CLAIMS 2 AND 11-14 OF U.S. PATENT NO. 5,097,421 ARE INVALID DUE TO OBVIOUSNESS
(JFLC3)

as to the verdict. *Venegas v. Wagner*, 831 F.2d 1514, 1517 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and all reasonable inferences must be drawn in favor of that party. *Id.* A JMOL is improper if reasonable minds could differ over a verdict. *Id.* In assessing the motion, the trial judge is not vested with the power to weigh evidence and must issue a ruling of law. *Winarto v. Toshiba America Electronics Components, Inc.*, 274 F.3d 1276, 1283 (9th Cir. 2001); *Wilson v. United States*, 654 F.2d 728, 730 (9th Cir. 1981).

### III. STANDARD FOR A NEW TRIAL

A new trial may be granted "for any reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59. A motion for a new trial is directed to the sound discretion of the trial judge and is usually ordered when the trial judge deems that it is in the interests of justice to do so. *See* Federal Practice and Procedure, Wright & Miller, (1973) § 2803, pp. 31-35. A jury verdict ordinarily should be set aside only when the verdict is against the great weight of evidence or it is clear that the jury has reached an erroneous result. *Landes Const. Co., Inc. v. Royal Bank of Canada,* 833 F.2d 1365, 1371 (9th Cir. 1987); *Digidyne Corporation v. Data General Corp.*, 734 F.2d 1336, 1347 (9th Cir. 1984).

### IV. JENOPTIK'S POST-TRIAL MOTIONS

**A.    Validity**

Jenoptik argues that based on the evidence adduced at trial no reasonable jury could have found that claims 2 and 11-14 of the '421 patent were not obvious in light of Hesser and in view of known technology at the time of the filing of the '421 patent. Prior to the Supreme Court's decision in *KSR*, this Court observed in the context of Jenoptik's motion for summary judgment that obviousness was a close question, but that there was conflicting evidence as to whether Jenoptik had shown a motivation to combine the references. In light of *KSR*, the Court now concludes that Jenoptik's argument is well-taken.

A patentee's claims are presumed valid. *Gillette Co. v. S.C. Johnson & Sons*, Inc., 919 F.2d 720, 723 (Fed. Cir. 1990). Obviousness is a legal determination that may be submitted to

6

Case No. C 98-20451 JF (EAI)
ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW THAT CLAIMS 2 AND 11-14 OF U.S. PATENT NO. 5,097,421 ARE INVALID DUE TO OBVIOUSNESS
(JFLC3)

the jury with proper instructions. In determining obviousness, the court "must determine 'if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.'" *Dystar Textilfarben GmbH & Co. Deutschland KG v. C.H. Patrick Co.*, 464 F.3d 1356, 1360 (Fed. Cir. 2006) citing 35 U.S.C. § 103(a). Though obviousness is a question of law, it is based upon underlying factual inquires including (1) the scope and content of the prior art; (2) the differences between the claimed invention and the prior art; (3) the level of ordinary skill in the art; and (4) any relevant secondary considerations, including commercial success, long felt but unresolved needs, and failure of others. *Graham v. John Deere Co.*, 383 U.S. 1, 17 (1966).

In *KSR*, the Supreme Court held that the *Graham* factors still control an obviousness inquiry. *See Takeda Chem. Indus., Ltd. v. Alphapharm Pty., Ltd.*, No. 69-1329, slip. op. at 8 (Fed. Cir. June 28, 2007). However, it clarified the standard for determining when a patent that claims a combination of elements of prior art is obvious and invalid under 35 U.S.C. § 103. Prior to *KSR*, the Federal Circuit had held that to prevail on a claim of obviousness, a party challenging a patent was required to show that there was a teaching, showing or motivation to combine the prior art references and achieve the patented invention ("the TSM test"). The Federal Circuit did not require that the "TSM" be found expressly in the prior art references themselves; rather, it could be derived from any number of sources, including common knowledge, the prior art as a whole, or the nature of the problem itself. *Dystar*, 464 F.3d at 1361. The Supreme Court held that the Federal Circuit's application of the test was too narrow and did not adhere to the purpose underlying section 103, which is to disallow a potential patentee from claiming as its monopoly what was known already in the art, thus diminishing the resources available to those skilled in the art and unfairly stifling innovation. *KSR,* 127 S.Ct. at 1739.

The high court emphasized the need for caution in granting a patent in which prior art elements are combined with no change in function, observing that, "[t]he combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *Id.* It recognized that many inventions necessarily are combinations of what is already known, and that accordingly a defendant may not show obviousness merely by a showing that a claim is comprised of known elements. *Id.* at 1740. Rather, the Supreme Court required that lower courts determine, preferably explicitly, "whether there was an apparent reason to combine the known elements in the fashion claimed by the patent at issue." *Id.* at 1741. The determination "need not seek out precise teachings," but a court may "take account of the inferences and creative steps that person of ordinary skill in the art would employ." *Id.* at 1742.

In the instant case, the parties do not dispute who a person of ordinary skill in the art would be; the technical experts for both parties agreed such a person would have a bachelors' degree in computer science, electrical engineering, or industrial engineering. Nor do the parties dispute that there was sufficient testimony at trial to show that such a person would have known about multiplexers and when and how to use them.

In the context of the instant motion, the parties dispute whether Hesser is relevant prior art, whether if so it is significantly different from the claimed invention, and whether the evidence of secondary considerations presented to the jury was sufficient to support its finding that claims 2 and 11-14 of the '421 patent are not obvious.

### 1. Scope of the Prior Art

It is undisputed that the Hesser reference was publicly available before May 18, 1987, the filing date of the '421 patent. The parties dispute only whether the Hesser reference was within the *scope* of the prior art. Before *KSR*, a reference was within the scope of the prior art if it was "within the field of the inventor's endeavor" or was "reasonably pertinent to the problem with which the inventor was involved." *In re Deminski,* 796 F.2d 436, 442 (Fed. Cir. 1986); *In Re*

*Wood*, 599 F.2d 1032, 1036 (C.C.P.A. 1979). Asyst has argued repeatedly that the Hesser patent was not within the scope of the relevant prior art because the inventors of the '421 patent were trying to solve a problem with respect to tracking semiconductor wafers, and Hesser says nothing about wafer processing.

However, although the '421 patent bears the title, "Intelligent Wafer Carrier," the claims do not limit the invention to wafer processing. Consistent with its claim construction order as modified by the Federal Circuit in 2005, the Court expressly instructed the jury that the field of the invention is factory automation in general. Pursuant to that definition, a finding that Hesser is not within the scope of the prior art is incorrect as a matter of law. Hesser specifically addresses the problem of identifying articles in a transportable container—particularly the shortcomings of using bar codes on the sides of containers—and it solves that problem through the use of electronic tags mounted on the sides of the containers, exactly as the '421 patent does. During prosecution of the '421 patent, the examiners rejected certain claims of the '421 patent as obvious in light of the prior art, although it does not appear from the prosecution history that claim 2, which was drafted as original claim 24, was examined based on Hesser. As noted above, claim 2 currently is subject to a reexamination proceeding before the PTO in which Hesser explicitly is identified as raising substantial new questions of patentability.[4] The technical experts in the case both conceded that the relevant prior art included Hesser, and the same is true with respect to the other multiplexer references presented to the jury.

Asyst also argues that the '421 patent focused on saving battery life, a problem that Hesser did not address at all. However, the claims of the '421 patent are not limited to semiconductor fabs, clean environments, or use of batteries. While *KSR* affects the legal analysis

---

[4] Perhaps in light of the extraordinary duration of the instant litigation, both parties expressed the desire to proceed to trial rather than awaiting on the outcome of the reexamination proceeding of claim 2.

9

Case No. C 98-20451 JF (EAI)
ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW THAT CLAIMS 2 AND 11-14 OF U.S. PATENT NO. 5,097,421 ARE INVALID DUE TO OBVIOUSNESS
(JFLC3)

as to other aspects of the obviousness analysis, even prior to *KSR* no reasonable juror could have found that Hesser was not within the scope of the relevant prior art. *KSR* merely serves to strengthen that conclusion.

### 2. Differences between the Claimed Invention and Prior Art

Jenoptik argues, as it did before trial, that the only meaningful difference between claim 2 of the '421 patent and Hesser is that the '421 patent uses a multiplexer. Asyst contends that in addition two limitations of claim 2—the "sensing means" and the "selection means"—are not present in Hesser. Again, the record supports Jenoptik's position.

#### a. Sensing means

In its decision issued October 10, 2001, the Federal Circuit construed the "sensing means" limitation of the '421 patent to be that the communication means senses the presence of the transportable container when a signal is sent by a transmitter such as a light-emitting diode and received by a receiver such as a photosensitive transistor. *Asyst*, 268 F.3d at 1375-76; *see also Asyst,* 402 F.3d at 1197. Asyst argues that this limitation is not disclosed in Hesser, which describes a induction coil on the information carrier through which power is transmitted to the information carrier. Asyst contends that the coil is a different structure that performs differently from the infrared transmitter and receiver of the "sensing mens" in the asserted patent claims.[5]

It is undisputed, however, that Hesser discloses that the information carrier on the transportable container and the read-write tranducer station can communicate optically by use of an LED and a photosensitive diode or transistor. There also is no dispute that when the read-write transducer station receives a communication from the information carrier on the transportable container, it necessarily senses the presence of the transportable container.

---

[5] Jenoptik points out the "sensing means" in Hesser is not even located on the information carrier. Rather, the "sensing means" is located in the read-write transducer station that communicates with the information carrier.

10

Case No. C 98-20451 JF (EAI)
ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW THAT CLAIMS 2 AND 11-14 OF U.S. PATENT NO. 5,097,421 ARE INVALID DUE TO OBVIOUSNESS
(JFLC3)

At trial, Asyst's technical expert, Dr. Faillace, admitted that Hesser disclosed that the information carrier on the transportable container could communicate with the read-write transducer station optically through the use of LED's and photo transistors or diodes. Trial Tr. at 869:15-18, 968:11-16. Thus, Hesser discloses the identical structure of the sensing means identified by the Federal Circuit, separate and apart from the induction coil that Asyst argues is the part that performs the "sensing" in the Hesser patent. *See Asyst*, 402 F.3d at 1192. Accordingly, any implicit finding by the jury that Hesser does not meet the "sensing means" limitation of the '421 claims necessarily is incorrect.

        **b.**      **Selection means**

With respect to the "selection means," the '421 patent uses a multiplexer as the selection means while Hesser uses of a bus. The evidence at trial showed that multiplexers were well known to persons of skill in the art in 1987 as a means to connect a central computer to multiple peripheral devices to select among them for communication. The evidence also showed that the multiplexer in the '421 patent operated in a typical manner. Finally, the evidence showed that one of ordinary skill in the art would have been able to connect the central computer to the transducer stations disclosed by Hesser through the use of a multiplexer instead of a bus. Thus, as argued by Jenoptik, modifying the system in Hesser by using a multiplexer instead of a bus simply was the use of a known device performing its known and established function, and its implementation was within the skill of a person of ordinary skill in the art.

The Supreme Court held in *KSR* that "[w]hen a patent claims a structure already known in the prior art that is altered by the mere substitution of one element for another known in the field, the combination must do more than yield predictable results." 127 S.Ct. at 1739. The evidence at trial showed the use of a multiplexer did not yield unpredictable results but rather was a substitution of one known element for another. Jenoptik's technical expert, Dr. Alpert,

11

Case No. C 98-20451 JF (EAI)
ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW THAT CLAIMS 2 AND 11-14 OF U.S. PATENT NO. 5,097,421 ARE INVALID DUE TO OBVIOUSNESS
(JFLC3)

testified that there were numerous design factors that one of skill in the art would evaluate when deciding whether to use a bus or multiplexer. For example, if communication speed were an issue, one of ordinary skill in the art would employ a bus, which generated a faster communication speed, rather than a multiplexer, which generated slower communication speed. Trial Tr. at 1703:17-1711:7. Dr. Alpert explained that the decision whether to use a bus or multiplexer would depend on the specific installation demanded by the market. Asyst's use of a multiplexer, while a useful modification to meet the requirements of an implementation in a large production facility, is something that "would occur in the ordinary course without real innovation." *KSR*, 127 S.Ct. at 1741.

Asyst argues that all of the technical witnesses acknowledged that low battery life was a critically important problem to overcome in the development of the claimed invention. Anthony Bonora, Asyst's Chief Technical Officer, explained that the inventors chose a multiplexer to perform the selecting functions because they recognized that in the system they were contemplating, the multiplexer would allow the SmartTags to achieve greater battery life than a bus-based design. Trial Tr. 338:4-321:15. According to Asyst, this is because in a bus system design all of the tags on the transportable containers are awoken when a signal is sent, and thus battery life is shortened. Asyst argues none of the prior art references indicates that particular benefit of using a multiplexer in a system, and that indeed some of the references point away from using a multiplexer. Trial Tr. 676:25-677:9.

However, even accepting for the present purposes that use of a multiplexer does lengthen battery life, Asyst has not shown how this improvement is more than a predictable use of prior art elements according to their established functions. In other words, even if using a multiplexer extends battery life, Asyst does not explain how this benefit was not obvious. Asyst agrees that multiplexers were well-known to a person skilled in the art in 1987, and a person of ordinary

12

skill in the art would know to use a multiplexer. The evidence showed that substitution of a multiplexer for a bus was not uncommon, even if it was not necessarily easy or always advantageous. *Id.* Asyst does not offer a convincing explanation as to how the multiplexer in the '421 patent is performing in an unusual or unexpected manner.

Asyst presented evidence at trial that there was market demand for a system that could track containers in large production facilities. The use of a multiplexer to scale up the Hesser system for use in a large facility also was a known, predictable solution, and was within the technical grasp of person of skill in the art. The use of a multiplexer in the '421 patent appears a product not of innovation but of ordinary skill and common sense. It illustrates well the type of combination of known elements that the Supreme Court determined to be obvious in *KSR*. *See also Leapfrog Ent. Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1162 (Fed. Cir. 2007) ("Leapfrog presents no evidence that the inclusion of a reader in this type of device was uniquely challenging or difficult for one of ordinary skill in the art. Nor does Leapfrog present any evidence that the inclusion of a device commonly used in the field of electronics (a reader), and even in the narrower art of electronic children's toys, represented an unobvious step over the prior art.").

### 3. Secondary Considerations of Non-Obviousness

"Objective evidence such as commercial success, failure of others, long-felt need, and unexpected results must be considered before a conclusion on obviousness is reached." *Minnesota Min. and Mfg. Co. v. Johnson & Johnson Orthopaedics, Inc.*, 976 F.2d 1559, 1573 (Fed. Cir. 1992). In this case, the jury found that several secondary indicia of non-obviousness were present. Asyst's damages expert Daniel Burns testified that Asyst and Jenoptik together sold "about 40 or so of these systems, [and] each one of them, especially taken in conjunction with the products sold with it, the [Standardized Mechanical Interface] products, constitutes a fairly large commercial transaction. So together we're looking at a significant amount of money,

13

Case No. C 98-20451 JF (EAI)
ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW THAT CLAIMS 2 AND 11-14 OF U.S. PATENT NO. 5,097,421 ARE INVALID DUE TO OBVIOUSNESS
(JFLC3)

and in my view that constitutes demand and commercial success." Trial Tr. 1429:17-23. Mr. Bonora testified that both Asyst's SMART-Traveler System ("STS") and Jenoptik's IridNet System enjoyed commercial success. Trial Tr. 354:21-23. Mr. Bonora also testified that before Asyst developed the STS, there was no acceptable way of tracking a wafer lot during fabrication, a situation that resulted in significant cost to a manufacturer if a pod of wafers was processed incorrectly. Trial Tr. 309:10-316:16. Mr. Bonora and his co-inventors worked for more than four years to reduce their invention to practice, thus demonstrating a long-felt need for invention. Trial Tr. 286:8-15. Finally, Mr. Bonora testified that a leading magazine in the semiconductor field, Semiconductor International Magazine, honored STS with its "1995 Editor's Choice Best Products Award." Trial Tr. 363:11-15.

Jenoptik argues persuasively that Asyst failed to link this evidence of commercial success, long-felt need, and industry praise to *the claimed invention,* which as discussed above was directed not only to wafer fabrication but also to factory automation generally. "It is well settled 'that objective evidence [of] non-obviousness must be commensurate in scope with the claims which the evidence is offered to support." *In re Grasselli*, 713 F.2d 731, 743 (Fed. Cir. 1983). Here, while the STS was directed toward the semiconductor manufacturing field, the scope of the asserted claims of the '421 patent is the much broader field of manufacturing. Moreover, Asyst's evidence lacks a nexus to any part of the STS that is not disclosed in Hesser. *See Ormco Corp. v. Align Tech., Inc.*, 463 F.3d 1299, 1312 (Fed. Cir. 2006) (holding that "if the feature that creates the commercial success was known in the prior art, the success is not pertinent.").

Jenoptik also notes correctly that under Federal Circuit case law a strong showing of obviousness cannot be overcome based upon secondary considerations. *See Leapfrog*, 485 F.3d at 1162 ("The district court explicitly stated in its opinion that Leapfrog had provided substantial

14

evidence of commercial success, praise, and long-felt need, but that, given the strength of the prima facie obviousness showing, the evidence on secondary considerations was inadequate to overcome a final conclusion that claim 25 would have been obvious. We have no basis to disagree with the district court's conclusion."); *Motorola*, *Inc. v. Interdigital Tech. Corp.,* 121 F.3d 1461, 1472 (Fed. Cir. 1997) ("In reaching an obviousness determination, a trial court may conclude that a patent claim is obvious, even in the light of strong objective evidence tending to show non-obviousness."); *Ryko Mfg. Co. v. NuStar, Inc.*, 950 F.2d 714, 719 (Fed. Cir. 1991) (affirming a district's determination that the "secondary considerations did not carry sufficient weight to override a determination of obviousness based upon primary considerations.").

Indeed, the Federal Circuit recently reversed a district court's denial of JMOL with respect to obviousness even though evidence of secondary considerations had been presented at trial. *Pharmstem Therapeutics v. Viacell, Inc.*, 05-1490, slip op. at 38-40 (Fed. Cir. July 9, 2007). In *Pharmstem*, the inventors were recognized as pioneers in the industry. *Id.* at 38. However, the Federal Circuit noted that while this might be true, such recognition was not necessarily tied to the inventive contribution. *Id.* at 39. Similarly, in the instant case, the jury's findings regarding the secondary evidence of non-obviousness are insufficient to overcome the strong objective evidence of obviousness in the record.

**B.    Remaining Post-Trial Motions**

Jenoptik also has filed post-trial motions regarding non-infringement under § 271(f) and with respect to damages, and Asyst has filed a post-trial motion for entry of judgment. Because it will grant Jenoptik's motion for JMOL on the issue of invalidity, the Court does not reach the issues in Jenoptik's remaining post-trial motions. Asyst's motion for entry of judgment is moot.

**C.      Request for a New Trial based on Obviousness**

As set forth above, the standard for granting a new trial is more lenient than that applicable to a motion for JMOL. A new trial also is appropriate if a court improperly instructs a jury or fails to give adequate instructions and thereby taints the deliberation process. In view of the possibility that the instant decision to grant JMOL with respect to invalidity might be vacated or reversed on appeal, the Court also will grant Jenoptik's motion for a new trial on obviousness, both because as discussed previously the jury's finding with respect to Hesser was clearly erroneous and because the jury instructions on the issue of obviousness, while consistent with Federal Circuit precedent at the time of trial, were inconsistent with *KSR*.

**1.      Jury's Findings**

For reasons that are unclear from the record, the jury expressly found that Hesser was not relevant prior art.[6] As discussed above, this finding was contrary to all of the evidence at the trial, including the testimony of Asyst's own technical expert. The PTO examiners included Hesser in their original examination of the '421 patent (although not specifically with respect to claim 2), and the jury was told that claim 2 is currently in reexamination based on Hesser. This error in and of itself warrants a new trial.

**2.      Jury Instructions**

Ordinarily, a party may not challenge a jury instruction to which it did not object at trial unless there is an intervening change in law. *Brown v. M&M/Mars*, 883 F.2d 505, 512-13 (7th Cir. 1989). Here, the parties agreed to an instruction with respect to obviousness that included

---

[6] Specifically, the jury responded "No" to the question "Do you find that Jenoptik proved that is highly probable that the Hesser patent (U.S. Patent No. 4,588,880) is within the scope of the prior art relevant to the asserted claims of the '421 patent?" Special Jury Verdict Form, Question 1.

explicit direction that the jury could not find obviousness without an express showing of TSM. The instruction included the following statement:

> " . . . The claimed invention is not obvious unless there was something in the prior art or within the understanding of a person of ordinary skill in the field that would teach, suggest to, or motivate one of ordinary skill in the art to arrive at the claimed invention. If more than one piece of prior art is used in combination, a teaching, suggestion or motivation to combine the pieces of art must be present either in the prior art itself, or within the knowledge of one of ordinary skill in the art at the time of the invention."

*KSR* held evidence of that such a teaching is unnecessary in a determination of obviousness.

The jury was instructed as follows with respect to the motivation to combine:

> "A motivation to combine the teachings of prior art may be found:(1) in the prior are references themselves; (2) in the knowledge of those of ordinary skill in the art that certain references, or disclosures in those references, are of special interest or importance in the field,; or (3) from the nature of the problem to be solved, leading inventors to look to references relating to the possible solution to that problem."

*KSR* changed the law in this respect as well. The jury was not instructed that a claim may be found to be obvious if it is a combination of known elements operating in their known and established way, or that a claim can be found obvious if the combination was obvious to try. Given the evidence with respect to Hesser and the other multiplexer references, this omission clearly could have affected the jury's verdict. A new trial is warranted in order that the jury may be instructed as to the proper legal standard.

**D.   Damages or Remittitur**

The jury awarded damages totaling $74.7 million, including $31.5 million for lost sales made by Jenoptik and $43.2 million for price erosion. Jenoptik seeks JMOL that these awards are not supported by substantial evidence in the record, or alternatively a new trial on damages or remittitur. When a court concludes that a jury's damages award is excessive, even viewing all of the evidence in the light most favorable to the prevailing party, the court may grant a new trial or

condition denial of a new trial upon the prevailing party's acceptance of a reduced amount of damages that the court deems justified by the evidence. *Fenner v. Dependable Trucking Co., Inc.*, 716 F.2d 598, 603 (9th Cir. 1983). A remittitur should be the maximum amount of damages that can be sustained by the evidence in the record. *D&S Redi-Mix v. Sierra redi-Mix & Contracting Co.*, 692 F.2d 1245, 1249 (9th Cir. 1982).

Because of its decision to grant JMOL with respect to obviousness, the Court does not reach the issue of damages at this time. However, for the guidance of the parties, it would note that there are substantial legal questions with respect to the damages award, particularly in light of the fact that the jury's award was based on an "entire market value" theory of damages. Only a small portion of Asyst's damages may be attributed directly to the patented STS; the great majority of the damages awarded were based on sales of Asyst's unpatented Standardized Mechanical Interface ("SMIF") system. The evidence offered by Asyst's economic expert in support of considering the SMIF sales may well have been flawed. In the event that both the instant decision granting JMOL and the alternative ruling granting a new trial on obviousness are vacated or reversed, this Court will revisit the parties' arguments relating to damages, but its present inclination would be to grant a new trial or remittitur.

## IV. ORDER

The Court is mindful of the many years that the instant case has been in litigation and of the fact that on two previous occasions portions of its legal analysis have been reversed or modified by the Federal Circuit. In part because of that history, the Court denied Jenoptik's motion for summary judgment based on obviousness shortly before trial, concluding that it was better to err on the side of caution. Now, in light of *KSR*, and with sincere respect both for the travails of the parties and for the jury system in general, the Court concludes that it has no alternative but to issue the present order. Accordingly, for the reasons set forth above, the Court: (1) grants Jenoptik's motion for JMOL on the issue of obviousness; (2) conditionally grants Jenoptik a new trial on the issue of obviousness in the event the order granting JMOL is vacated or reversed on appeal; (3) terminates Jenoptik's remaining post-trial motions without prejudice; and (4) denies Asyst's post-trial motion.

DATED: August 3, 2007

_____
JEREMY FOGEL
United States District Judge

19

Case No. C 98-20451 JF (EAI)
ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW THAT CLAIMS 2 AND 11-14 OF U.S. PATENT NO. 5,097,421 ARE INVALID DUE TO OBVIOUSNESS
(JFLC3)


Copies of this Order have been served upon the following persons:

Counsel for Plaintiff:

Darryl M. Woo
Fenwick & West LLP
Silicon Valley Center
801 California Street
Mountain View, CA 94041-2008
Fax: (650) 938-5200

Counsel for Defendants:

Daniel T. Shvodian
James F. Valentine
David L. Bilsker
Howrey LLP
301 Ravenswood Avenue
Menlo Park, CA 94025-3434

Case No. C 98-20451 JF (EAI)
ORDER GRANTING DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW THAT CLAIMS 2 AND 11-14 OF U.S. PATENT NO. 5,097,421 ARE INVALID DUE TO OBVIOUSNESS
(JFLC3)